CONFORM

FILED 2009 SEP 30 AM 10: 51 CLERK U.S. DISTRICT COURT CENTRAL DIST. OF CALIF. LOS ANGELES

1  William K. Hanagami, SBN 119832
   THE HANAGAMI LAW FIRM
2  A PROFESSIONAL CORPORATION
   21700 OXNARD STREET, SUITE 1150
3  WOODLAND HILLS, CA 91367-7572
   (818) 716-8570 / (818) 716-8569 *FAX*
4  BillHanagami.@esquire.La
   Abram J. Zinberg, SBN 143399
5  412 OLIVE AVENUE, SUITE 528
   HUNTINGTON BEACH 92648
6  (714) 960-9917 / (714) 374-9802 *FAX*
   AbramZinberg@gmail.com
7  Attorneys for Plaintiff and Qui Tam Relator

8

9                     UNITED STATES DISTRICT COURT

10                   CENTRAL DISTRICT OF CALIFORNIA

11

12 | UNITED STATES OF AMERICA [UNDER       | CASE NO.: CV09-5013 JFW(JEMx)
13 | SEAL],
                                           | FIRST AMENDED COMPLAINT
14 |         Plaintiffs,                   | FOR VIOLATIONS OF FEDERAL
                                           | FALSE CLAIMS ACT AND
15 | vs.                                   | CALIFORNIA FALSE CLAIMS
                                           | ACT; REQUEST FOR JURY
16 | [UNDER SEAL],                         | TRIAL
17 |         Defendants.
                                           | [UNDER SEAL PER 31 U.S.C. §
18                                         | 3730(b)(2)]

19

20

21                          [UNDER SEAL]

22

CONFORM

William K. Hanagami, SBN 119832
THE HANAGAMI LAW FIRM
A PROFESSIONAL CORPORATION
21700 OXNARD STREET, SUITE 1150
WOODLAND HILLS, CA 91367-7572
(818) 716-8570 / (818) 716-8569 *FAX*
BillHanagami@esquire.la

Abram J. Zinberg, SBN 143399
412 OLIVE AVENUE, SUITE 528
HUNTINGTON BEACH 92648
(714) 960-9917 / (714) 374-9802 *FAX*
AbramZinberg@gmail.com

Attorneys for Plaintiff and Qui Tam Relator,
James M. Swoben

FILED
2009 SEP 30 AM 10: 53
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF CALIFORNIA, *ex rel* JAMES M. SWOBEN,<br><br>            Plaintiffs,<br><br>vs.<br><br>SCAN HEALTH PLAN, a California corporation, fka SENIOR CARE ACTION NETWORK; SENIOR CARE ACTION NETWORK, a business entity, form unknown; SCAN GROUP, a California corporation; SECURE HORIZONS, a business entity, form unknown; UNITED HEALTHCARE INSURANCE COMPANY, a Connecticut corporation; UNITED HEALTHCARE SERVICES, INC., a Minnesota corporation; UHIC, a business entity, form unknown; UNITEDHEALTH GROUP, a business entity, form unknown; UNITEDHEALTHCARE, a business entity, form unknown; UNITEDHEALTH, a business entity, form unknown; PACIFCARE HEALTH PLAN ADMINISTRATORS, INC., a corporation; PACIFICARE OF CALIFORNIA, a corporation; PACIFICARE LIFE AND HEALTH INSURANCE COMPANY, a corporation; and PACIFICARE HEALTH SYSTEMS, a corporation;<br><br>            Defendants. | CASE NO.: CV09-5013 JFW(JEMx)<br><br>FIRST AMENDED COMPLAINT FOR VIOLATIONS OF FEDERAL FALSE CLAIMS ACT AND CALIFORNIA FALSE CLAIMS ACT; REQUEST FOR JURY TRIAL<br><br>**[UNDER SEAL** PER 31 U.S.C. § 3730(b)(2)**]** |

-1-

FIRST AMENDED COMPLAINT

COMES NOW, Plaintiff and Qui Tam Relator James M. Swoben, individually and on behalf of the United States of America and the State of California, and alleges as follows:

## JURISDICTION AND VENUE

1. Plaintiff and Qui Tam Relator James M. Swoben (Swoben) files this action on behalf and in the name of the United States Government ("Government") seeking damages and civil penalties against the defendants for violations of 31 U.S.C. § 3729(a). Swoben also files this action on behalf and in the name of the State of California ("California") seeking damages and civil penalties against the defendants for violations of California Government Code § 12651(a).

2. This Court's jurisdiction over the claims for violations of 31 U.S.C. § 3729(a) is based upon 31 U.S.C. § 3732(a). This Court's jurisdiction over the claims for violations of California Government Code § 12651(a) is based upon 31 U.S.C. § 3732(b).

3. Venue is vested in this Court under 31 U.S.C. § 3732(a) because at least one of the defendants transacts business in the Central District of California and many acts constituting violations of 31 U.S.C. § 3729(a) occurred in the Central District of California.

## THE PARTIES

4. Swoben is a resident and citizen of the United States, the State of California, and of this District. Swoben brings this action of behalf of the Government under 31 U.S.C. § 3730(b) and on behalf of California under California Government Code § 12652(c).

5. At all times relevant, the Government funded the Medicare program which provides payment of healthcare services for, among others, those 65 years or older. The Government provided a Medicare option known as Medicare+Choice, now known as Medicare Advantage, in which eligible Medicare beneficiaries could enroll with a managed care organization (MCO) contracted with the Government for a capitated rate paid by the Government that would provide at least those services provided to standard Medicare beneficiaries.

FIRST AMENDED COMPLAINT

6. At all time relevant, California administered and partially funded the Medi-Cal program (the Medicaid program in California) in which eligible Medi-Cal beneficiaries could enroll with a MCO contracted with California for a capitated rate paid by Medi-Cal that would provide at least those services provided to standard Medi-Cal beneficiaries. The Government also partially funded the Medi-Cal program as part of the Government's Medicaid program.

7. Defendant SCAN Health Plan and SCAN Group are and were corporations formed under the laws of the State of California, and transacted business in, among other places, the Central District of California. SCAN Health Plan was formerly known and doing business as Senior Care Action Network. Defendant Senior Care Action Network is a business entity, form unknown, that transacted business in, among other places, the Central District of California. All defendants referenced in this paragraph are collectively referred in this Complaint as "SCAN."

8. At all times relevant, SCAN was and is a health maintenance organization (HMO) that provides health care services in Southern California to the elderly covered under Medicare. Between March 2004 and September 2006, Swoben was employed with SCAN.

9. Defendant United Healthcare Insurance Company is and was a corporation formed under the laws of the State of Connecticut, and transacted business in, among other places, the Central District of California. Defendant United Healthcare Services, Inc. is and was a corporation formed under the laws of the State of Minnesota, and transacted business in, among other places, the Central District of California. Defendants UHIC, UnitedHealth Group, UnitedHealthcare, UnitedHealth, and Secure Horizons are business entities, form unknown, that transacted business in, among other places, the Central District of California. Defendants Pacifcare Health Plan Administrators, Inc., Pacificare of California, Pacificare Life and Health Insurance Company, and Pacificare Health Systems are corporations formed under the laws of one or more states of the United States, and transacted business in, among other places, the Central District of California. All defendants referenced in this paragraph are collectively referred in this Complaint as "Secure Horizons."

///

## COMMON ALLEGATIONS

10. During or after about 1984, SCAN was awarded a contract by the Government to operate as a Social HMO Demonstration Project ("Social HMO contract"). The purpose of the Social HMO Demonstration Project was to explore the viability of preventing or delaying older-adult institutionalization in skilled-nursing facilities by providing such eligible individuals with a combination of healthcare and personal care services, including homemaker services, personal-care services, adult day care, respite care, and medical transportation. SCAN served, among other places, the California counties of Los Angeles, Riverside and San Bernardino. Under the terms of the Social HMO contract, SCAN agreed to provide such services to Medicare+Choice, now Medicare Advantage, beneficiaries for a monthly capitated payment paid by the Government. Plaintiff is informed and believes that during and after 2001, the Government paid SCAN an additional monthly capitated rate of approximately $800 per nursing home certifiable (NHC) beneficiary. Plaintiff is informed and believes that the Social HMO contract ended on or about December 31, 2007.

11. During or about 2001, California awarded a contract to SCAN (the "Medi-Cal contract") to provide home and community-based long-term care to Medi-Cal beneficiaries that were 65 years of age or older and eligible for Medicare Parts A and B. The purpose of this contract was to keep senior citizens out of long-term placement in skilled-nursing facilities. The Medi-Cal contract was extended or renewed until about December 31, 2007. Plaintiff is informed and believes that SCAN received a monthly capitated rate of approximately $3,300 per Medi-Cal beneficiary from Medi-Cal.

12. The services SCAN undertook and provided under its Social HMO contract with the Government contract were included in the scope of services SCAN was to provide under its Medi-Cal contract.

13. SCAN provided services to numerous patients that were beneficiaries under both the Medicare Social HMO contract and the Medi-Cal contract ("dual eligible beneficiaries"). During or about 2006, Swoben discovered that although SCAN undertook and provided such dual eligible beneficiaries the care and services that were covered and paid for by the

1  Government under the Medicare Social HMO contract, SCAN continued to bill for and receive capitated monthly payments of approximately $3,300 per beneficiary from Medi-Cal without reduction in payment for the care and services SCAN undertook and provided under the Medicare Social HMO contract.

14. Under applicable law, Medicare is primary and Medi-Cal secondary in connection with the care and services undertook and rendered by SCAN to the dual eligible beneficiaries. Plaintiff is informed and believes that by law, or the terms of SCAN's contracts with the Government or California, SCAN was required to not bill, and/or not retain payments from, Medi-Cal for undertaking the services rendered to the dual eligible beneficiaries to the extent such services were covered and paid for under the Medicare Social HMO contract. Plaintiff is informed and believes that Medi-Cal's overpayments for dual eligible NHC beneficiaries amount to at least $800 per NHC beneficiary between 2001 and 2007 amounting to more than $200 million.

15. SCAN's fraudulent billing practices included submitting cost reports and other financial reports and information to Medi-Cal that failed to disclose SCAN's receipts of monies from the Medicare Social HMO contract. SCAN's utilization of such fraudulent cost reports and other financial reports caused Medi-Cal to overpay SCAN for services it already undertook by virtue of the Medicare Social HMO contract, and concealed such overpayments. At all times relevant, SCAN was aware that such overpayments by Medi-Cal were due and owing to Medi-Cal, but SCAN continued to conceal said overpayments through the use of cost reports and other financial reports that concealed the payments made under the Medicare Social HMO contract.

16. SCAN knew that its cost reports, loss ratio reports, and other financial reports submitted to Medi-Cal were fraudulent as evidenced by the fact that its outside actuaries refused to sign and approve such submissions.

/ / /

/ / /

## FIRST CLAIM FOR RELIEF

(Violation of 31 U.S.C. § 3729(a) against SCAN)

[Double Billing]

17. Plaintiff realleges and incorporates by reference paragraphs 1 through 16, inclusive, of this complaint as though fully set forth at length.

18. At all times mentioned, SCAN routinely and repeatedly violated 31 U.S.C. § 3729(a)(1) by knowingly presenting and/or causing to present to agents, contractors or employees of the Government false and fraudulent billings for payment and approval.

19. At all times mentioned, SCAN routinely and repeatedly violated 31 U.S.C. § 3729(a)(2) by knowingly making, using, and/or causing to make or use false records and statements to get false and excessive billings paid or approved by Medicare and Medi-Cal.

20. At all times mentioned, SCAN routinely and repeatedly violated 31 U.S.C. § 3729(a)(4) by improperly retaining and concealing the excessive capitated payments SCAN received for dual eligible beneficiaries.

21. At all times mentioned, SCAN routinely and repeatedly violated 31 U.S.C. § 3729(a)(7) by knowingly making, using and/or causing to make or use false records and statements to conceal, avoid, or decrease its obligation to return to the Medi-Cal program the excessive capitated payments SCAN received for dual eligible beneficiaries.

22. Swoben is informed and believes, and upon such information and belief alleges, that as a result of SCAN's concealments and use of false records and statements, Medi-Cal paid in excess of $200 million more than it would have if SCAN had properly and truthfully billed and reported, and revealed the excessive payments received for, dual eligible beneficiaries.

23. As a result of SCAN's conduct, SCAN is liable to the Government for three times the amount of damages sustained by the Government as a result of the false and fraudulent billing, reporting and concealment practices alleged above.

24. As a result of SCAN's conduct, 31 U.S.C. § 3729(a) provides that SCAN is liable to the Government for civil penalties between $5,000 and $10,000 for each such false

1 | and fraudulent billing, reporting and concealment.

2 | 25. Swoben is also entitled to recover his attorneys fees, costs and expenses from
3 | the SCAN pursuant to 31 U.S.C. § 3730(d).

## SECOND CLAIM FOR RELIEF

(Violation of California Government Code § 12651(a) against SCAN)

[Double Billing]

26. Plaintiff realleges and incorporates by reference paragraphs 1 through 25, inclusive, of this complaint as though fully set forth at length.

27. At all times mentioned, SCAN routinely and repeatedly violated California Government Code § 12651(a)(1) by knowingly presenting and/or causing to present to California employees, agents and/or contractors false and fraudulent billings for payment and approval.

28. At all times mentioned, defendants routinely and repeatedly violated California Government Code § 12651(a)(2) by knowingly making, using, and/or causing to make or use false records and statements to get false and excessive billings paid or approved by Medi-Cal.

29. At all times mentioned, SCAN routinely and repeatedly violated California Government Code § 12651(a)(4) by improperly retaining and concealing the excessive capitated payments SCAN received for dual eligible beneficiaries.

30. At all times mentioned, SCAN routinely and repeatedly violated California Government Code § 12651(a)(7) by knowingly making, using and/or causing to make or use false records and statements to conceal, avoid, or decrease its obligation to return to the Medi-Cal program the excessive capitated payments SCAN received for dual eligible beneficiaries.

31. Swoben is informed and believes, and upon such information and belief alleges, that as a result of SCAN's concealments and use of false records and statements, Medi-Cal paid in excess of $200 million more than it would have if SCAN had properly and truthfully billed and reported, and revealed the excessive payments received for, dual eligible beneficiaries.

32. As a result of SCAN's conduct, SCAN is liable to California for up to three times the amount of damages sustained by California as a result of the false and fraudulent billing, reporting and concealment practices alleged above.

33. As a result of SCAN's conduct, California Government Code §12651(a) provides that defendants are liable to California for civil penalties of up to $10,000 for each such false and fraudulent billing, reporting and concealment.

34. Swoben is also entitled to recover his attorneys fees, costs and expenses from SCAN pursuant to California Government Code § 12652(g)(8).

### THIRD CLAIM FOR RELIEF

(Violation of 31 U.S.C. § 3729(a) against all defendants)

[Up-Coding]

35. Plaintiff realleges and incorporates by reference paragraphs 1 through 16, inclusive, of this complaint as though fully set forth at length.

36. At all times relevant, SCAN and Secure Horizons, were and/or operated health maintenance organizations that had HMO contracts with Medicare and Medi-Cal. At all times relevant, SCAN and Secure Horizons, as did other HMOs, submitted diagnoses codes of their respective HMO patients to the Government and California. The diagnosis codes were used to develop risk scores that were used to adjust the following year's capitated payment rates paid by the Government and California. The risk scores compensated an HMO with a population of patients with more severe illnesses than normal through higher capitation rates the following year. Likewise, an HMO with a population of patients with less severe illnesses than normal would see a downward adjustment of its capitation rates the following year because it was servicing a healthier than normal population of patients.

37. Although Secure Horizons had previously submitted diagnoses codes of its patients to the Government and California, during or about 2005, Secure Horizons retained coding companies to review the medical charts of tens of thousands of its patients with severe illnesses. Although Secure Horizons provided such coding companies with the lists of patients

-8-

1  whose charts were to be reviewed, Secure Horizons concealed from the coding companies
2  what diagnosis codes had been previously submitted to the Government and California.

3  38.  Although SCAN had previously submitted diagnoses codes of its patients to the
4  Government and California, during or about 2006, SCAN retained coding companies to review
5  the medical charts of approximately 10,000 of its patients with severe illnesses. Although
6  SCAN provided such coding companies with the lists of patients whose charts were to be
7  reviewed, SCAN concealed from the coding companies what diagnosis codes had been
8  previously submitted to the Government and California.

9  39.  The coding companies conducted their review of the medical charts of tens of
10 thousands of SCAN and Secure Horizon patients, determined the diagnosis codes that were
11 supported by proper documentation of the reviewed medical charts, and provided their results
12 to SCAN and Secure Horizons, respectively. The coding companies' review resulted in (a)
13 diagnosis codes that were supported by proper documentation of the reviewed medical charts
14 that had been previously submitted to the Government and California, and (b) new diagnosis
15 codes that were supported by proper documentation of the reviewed medical charts that had
16 not been previously submitted to the Government and California. The results of the coding
17 companies' review did not include a number of diagnosis codes of the reviewed medical charts
18 that had been previously submitted to the Government and California because such diagnosis
19 codes were not supported by proper documentation of the reviewed medical charts.

20 40.  SCAN and Secure Horizons made no effort to advise the Government and
21 California of the diagnosis codes for the reviewed medical charts that were not supported, and
22 made no effort to withdraw from the Government and California the previously submitted
23 diagnosis codes that were not supported by proper documentation of the reviewed medical
24 charts.

25 41.  SCAN and Secure Horizons improperly conceived, planned and conducted the
26 coding companies' reviews by not causing the previously submitted diagnosis codes that were
27 unsupported by the coding companies' reviews to be corrected and withdrawn from the
28 Government and California. Rather, the procedures and methods developed and used by

-9-

FIRST AMENDED COMPLAINT

1  SCAN and Secure Horizons was biased in favor of "up coding" the patients' diagnoses
2  because the previously submitted diagnoses that were not unsupported by the coding
3  companies' reviews were not corrected and withdrawn from the Government and California.
4  SCAN and Secure Horizons did so with the knowledge and intent that the coding companies'
5  review would only increase, and not decrease, the number of diagnoses, and thus their
6  respective risk scores in order to increase future capitated payments paid by the Government
7  and California.

8      42.    During or about 2005 or 2006, SCAN and Secure Horizons submitted to the
9  Government and California the diagnosis codes determined by the coding companies' review,
10 knowing that the effect of such submissions would only increase the number of diagnoses, and
11 thus artificially inflate their respective risk scores.

12     43.    As a result of the acts and concealments of SCAN and Secure Horizons, their
13 respective capitated payments paid by the Government and California became inflated due to
14 the artificially high risk scores.

15     44.    At all times mentioned, SCAN and Secure Horizons routinely and repeatedly
16 violated 31 U.S.C. § 3729(a)(1) by knowingly presenting and/or causing to present to agents,
17 contractors or employees of the Government false and fraudulent billings for payment and
18 approval during and after 2004.

19     45.    At all times mentioned, SCAN and Secure Horizons routinely and repeatedly
20 violated 31 U.S.C. § 3729(a)(2) by knowingly making, using, and/or causing to make or use
21 false records and statements to get false and excessive billings paid or approved under the
22 Medicare and Medi-Cal contracts during and after 2004.

23     46.    At all times mentioned, SCAN and Secure Horizons routinely and repeatedly
24 violated 31 U.S.C. § 3729(a)(4) by improperly retaining and concealing the unsupported
25 diagnosis codes and inflated risk scores that inflated the capitated payments they received
26 under the Medicare and Medi-Cal contracts during and after 2004.

27     47.    At all times mentioned, SCAN and Secure Horizons routinely and repeatedly
28 violated 31 U.S.C. § 3729(a)(7) by knowingly making, using and/or causing to make or use

false records and statements to conceal, avoid, or decrease its obligation to return to the Medicare and Medi-Cal programs the inflated capitated payments they received during and after 2004.

48. Swoben is informed and believes, and upon such information and belief alleges, that as a result of the concealments and use of false records and statements, Medicare and Medi-Cal paid more than they would have if SCAN and Secure Horizons had properly and truthfully billed and reported, and revealed and withdrawn the diagnosis codes that were not supported by their medical charts.

49. As a result of their conduct, defendants are liable to the Government for three times the amount of damages sustained by the Government as a result of the false and fraudulent billing, reporting and concealment practices alleged above.

50. As a result of defendants' conduct, 31 U.S.C. § 3729(a) provides that defendants are liable to the Government for civil penalties between $5,000 and $10,000 for each such false and fraudulent billing, reporting and concealment.

51. Swoben is also entitled to recover his attorneys fees, costs and expenses from defendants pursuant to 31 U.S.C. § 3730(d).

### FOURTH CLAIM FOR RELIEF
(Violation of California Government Code § 12651(a) against all defendants)
[Up-Coding]

52. Plaintiff realleges and incorporates by reference paragraphs 1 through 16, inclusive, and 36 through 51, inclusive, of this complaint as though fully set forth at length.

53. At all times mentioned, SCAN and Secure Horizons routinely and repeatedly violated California Government Code § 12651(a)(1) by knowingly presenting and/or causing to present to California employees, agents and/or contractors false and fraudulent billings for payment and approval during and after 2004.

54. At all times mentioned, SCAN and Secure Horizons routinely and repeatedly violated California Government Code § 12651(a)(2) by knowingly making, using, and/or

causing to make or use false records and statements to get false and excessive billings paid or approved under the Medi-Cal contract during and after 2004.

55. At all times mentioned, SCAN and Secure Horizons routinely and repeatedly violated California Government Code § 12651(a)(4) by improperly retaining and concealing the unsupported diagnosis codes and inflated risk scores that inflated the capitated payments they received under the Medi-Cal contract during and after 2004.

56. At all times mentioned, SCAN and Secure Horizons routinely and repeatedly violated California Government Code § 12651(a)(7) by knowingly making, using and/or causing to make or use false records and statements to conceal, avoid, or decrease their obligation to return to the Medi-Cal program the inflated the capitated payments they received under the Medicare and Medi-Cal contracts during and after 2004.

57. Swoben is informed and believes, and upon such information and belief alleges, that as a result of SCAN's and Secure Horizons' concealments and use of false records and statements, Medi-Cal paid more than it would have if defendants had properly and truthfully billed and reported, and revealed and withdrawn the diagnosis codes that were not supported by their medical charts.

58. As a result of their conduct, defendants are liable to California for three times the amount of damages sustained by California as a result of the false and fraudulent billing, reporting and concealment practices alleged above.

59. As a result of their conduct, California Government Code § 12651(a) provides that defendants are liable to California for civil penalties of up to $10,000 for each such false and fraudulent billing, reporting and concealment.

60. Swoben is also entitled to recover his attorneys fees, costs and expenses from defendants pursuant to California Government Code § 12652(g)(8).

///

///

## FIFTH CLAIM FOR RELIEF

(Violation of 31 U.S.C. § 3729(a) against SCAN)

[PACE]

61. Plaintiff realleges and incorporates by reference paragraphs 1 through 16, inclusive, of this complaint as though fully set forth at length.

62. SCAN's Medi-Cal contract was initially for the period of July 1, 2001 through June 30, 2004, and was extended or renewed a number of times until about December 31, 2007.

63. <u>California Welfare & Institutions Code</u> §14598(c) provides that the SCAN Medi-Cal contract could not be renewed after June 30, 2004. Further, SCAN was ineligible to receive funds after June 30, 2004 under the Medi-Cal contract because SCAN was not a PACE[1] organization as defined under 42 C.F.R. 460.6 because SCAN did not have an agreement with the Government's Centers of Medicare and Medicaid Services (CMS) and California for participation in the PACE program. Accordingly, SCAN's requests for capitation payments from Medi-Cal for the period July 1, 2004 through December 1, 2007 were fraudulent because SCAN was not a PACE organization.

64. At all times mentioned, SCAN routinely and repeatedly violated 31 U.S.C. § 3729(a)(1) by knowingly presenting and/or causing to present to agents, contractors or employees of the Government false and fraudulent billings for payment and approval for the period July 1, 2004 through December 1, 2007.

65. At all times mentioned, SCAN routinely and repeatedly violated 31 U.S.C. § 3729(a)(2) by knowingly making, using, and/or causing to make or use false records and statements to get false and excessive billings paid or approved under the Medi-Cal contract for the period July 1, 2004 through December 1, 2007.

66. At all times mentioned, SCAN routinely and repeatedly violated 31 U.S.C. § 3729(a)(4) by improperly retaining and concealing the unauthorized capitated payments SCAN received under the Medi-Cal contract for the period July 1, 2004 through December 1, 2007.

---

[1] PACE means "Programs of All-Inclusive Care for the Elderly." (*See*, 42 C.F.R. 460.6.)

67. At all times mentioned, SCAN routinely and repeatedly violated 31 U.S.C. § 3729(a)(7) by knowingly making, using and/or causing to make or use false records and statements to conceal, avoid, or decrease its obligation to return to the Medi-Cal program the unauthorized capitated payments SCAN received under the Medi-Cal contract for the period July 1, 2004 through December 1, 2007.

68. Swoben is informed and believes, and upon such information and belief alleges, that as a result of SCAN's concealments and use of false records and statements, Medi-Cal paid more than it would have if SCAN had properly and truthfully billed and reported, and revealed that it was ineligible to receive payments under the Medi-Cal contract because SCAN was not a PACE organization.

69. As a result of SCAN's conduct, SCAN is liable to the Government for three times the amount of damages sustained by the Government as a result of the false and fraudulent billing, reporting and concealment practices alleged above.

70. As a result of SCAN's conduct, 31 U.S.C. § 3729(a) provides that SCAN is liable to the Government for civil penalties between $5,000 and $10,000 for each such false and fraudulent billing, reporting and concealment.

71. Swoben is also entitled to recover his attorneys fees, costs and expenses from the SCAN pursuant to 31 U.S.C. § 3730(d).

## SIXTH CLAIM FOR RELIEF

(Violation of California Government Code § 12651(a) against SCAN)

[PACE]

72. Plaintiff realleges and incorporates by reference paragraphs 1 through 16, inclusive, of this complaint as though fully set forth at length.

73. SCAN's Medi-Cal contract was initially for the period of July 1, 2001 through June 30, 2004, and was extended or renewed a number of times until about December 31, 2007.

///

74. <u>California Welfare & Institutions Code</u> §14598(c) provides that the SCAN Medi-Cal contract could not be renewed after June 30, 2004. Further, SCAN was ineligible to receive funds after June 30, 2004 under the Medi-Cal contract because SCAN was not a PACE[2] organization as defined under 42 C.F.R. 460.6 because SCAN did not have an agreement with the Government's Centers of Medicare and Medicaid Services (CMS) and California for participation in the PACE program. Accordingly, SCAN's requests for capitation payments from Medi-Cal for the period July 1, 2004 through December 1, 2007 were fraudulent because SCAN misrepresented that it had complied with all applicable laws and regulations in connection with such payments, even though SCAN was not a PACE organization.

75. At all times mentioned, SCAN routinely and repeatedly violated <u>California Government Code</u> § 12651(a)(1) by knowingly presenting and/or causing to present to California employees, agents and/or contractors false and fraudulent billings for payment and approval for the period July 1, 2004 through December 1, 2007.

76. At all times mentioned, SCAN routinely and repeatedly violated <u>California Government Code</u> § 12651(a)(2) by knowingly making, using, and/or causing to make or use false records and statements to get false and excessive billings paid or approved under the Medi-Cal contract for the period July 1, 2004 through December 1, 2007.

77. At all times mentioned, SCAN routinely and repeatedly violated <u>California Government Code</u> § 12651(a)(4) by improperly retaining and concealing the unauthorized capitated payments SCAN received under the Medi-Cal contract for the period July 1, 2004 through December 1, 2007.

78. At all times mentioned, SCAN routinely and repeatedly violated <u>California Government Code</u> § 12651(a)(7) by knowingly making, using and/or causing to make or use false records and statements to conceal, avoid, or decrease its obligation to return to the Medi-Cal program the unauthorized capitated payments SCAN received under the Medi-Cal contract for the period July 1, 2004 through December 1, 2007.

---

[2]PACE means "Programs of All-Inclusive Care for the Elderly." (*See,* 42 C.F.R. 460.6.)

79. Swoben is informed and believes, and upon such information and belief alleges, that as a result of SCAN's concealments and use of false records and statements, Medi-Cal paid more than it would have if SCAN had properly and truthfully billed and reported, and revealed that it was ineligible to receive payments under the Medi-Cal contract because SCAN was not a PACE organization.

80. As a result of SCAN's conduct, SCAN is liable to California for three times the amount of damages sustained by California as a result of the false and fraudulent billing, reporting and concealment practices alleged above.

81. As a result of SCAN's conduct, California Government Code § 12651(a) provides that SCAN is liable to California for civil penalties of up to $10,000 for each such false and fraudulent billing, reporting and concealment.

82. Swoben is also entitled to recover his attorneys fees, costs and expenses from the SCAN pursuant to California Government Code § 12652(g)(8).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and Qui Tam Relator James M. Swoben prays for relief as follows:

### FOR THE FIRST CLAIM FOR RELIEF

1. Treble the Government's damages according to proof;
2. Civil penalties according to proof;
3. A relator's award of up to 30% of the amounts recovered by or on behalf of the Government;

### FOR THE SECOND CLAIM FOR RELIEF

4. Treble the State of California's damages according to proof;
5. Civil penalties according to proof;
6. A relator's award of up to 50% of the amounts recovered by or on behalf of the State of California;

///

## FOR THE THIRD CLAIM FOR RELIEF

7. Treble the Government's damages according to proof;
8. Civil penalties according to proof;
9. A relator's award of up to 30% of the amounts recovered by or on behalf of the Government;

## FOR THE FOURTH CLAIM FOR RELIEF

10. Treble the State of California's damages according to proof;
11. Civil penalties according to proof;
12. A relator's award of up to 50% of the amounts recovered by or on behalf of the State of California;

## FOR THE FIFTH CLAIM FOR RELIEF

13. Treble the Government's damages according to proof;
14. Civil penalties according to proof;
15. A relator's award of up to 30% of the amounts recovered by or on behalf of the Government;

## FOR THE SIXTH CLAIM FOR RELIEF

16. Treble the State of California's damages according to proof;
17. Civil penalties according to proof;
18. A relator's award of up to 50% of the amounts recovered by or on behalf of the State of California;

///
///

FOR ALL CLAIMS FOR RELIEF

19. Attorneys fees, expenses, and costs; and

20. Such other and further relief as the Court deems just and proper.

ABRAM J. ZINBERG, ESQ.

THE HANAGAMI LAW FIRM
A Professional Corporation

Dated: September 30, 2009     By: /s/ William K. Hanagami
                                  William K. Hanagami
                                  Attorneys for Plaintiff and Qui Tam Relator,
                                  James M. Swoben

REQUEST FOR JURY TRIAL

Plaintiff and Qui Tam Relator James M. Swoben hereby requests a trial by jury.

ABRAM J. ZINBERG, ESQ.

THE HANAGAMI LAW FIRM
A Professional Corporation

Dated: September 30, 2009     By: /s/ William K. Hanagami
                                  William K. Hanagami
                                  Attorneys for Plaintiff and Qui Tam Relator,
                                  James M. Swoben

Complaint.P02.wpd