1 | William K. Hanagami, SBN 119832
2 | THE HANAGAMI LAW FIRM
A PROFESSIONAL CORPORATION
21700 OXNARD STREET, SUITE 1150
3 | WOODLAND HILLS, CA 91367-7572
(818) 716-8570 / (818) 716-8569 *FAX*
4 | BillHanagami@esquire.la

5 | Abram J. Zinberg, SBN 143399
412 OLIVE AVENUE, SUITE 528
6 | HUNTINGTON BEACH 92648
(714) 960-9917 / (714) 374-9802 *FAX*
7 | AbramZinberg@gmail.com

8 | Attorneys for Plaintiff and Qui Tam Relator

9

10 | UNITED STATES DISTRICT COURT

11 | CENTRAL DISTRICT OF CALIFORNIA

12

13 | UNITED STATES OF AMERICA [UNDER SEAL],

14 |                        Plaintiffs,

15 | vs.

16

17 | [UNDER SEAL],

18 |                        Defendants.

19

| | |
|---|---|
| UNITED STATES OF AMERICA [UNDER SEAL], | CASE NO.: CV09-5013 JFW(JEMx) |
| Plaintiffs, | [PROPOSED] REVISED SECOND AMENDED COMPLAINT FOR VIOLATIONS OF FEDERAL FALSE CLAIMS ACT AND [UNDER SEAL] |
| vs. | |
| [UNDER SEAL], | [**UNDER SEAL** PER 31 U.S.C. § 3730(b)(2)] |
| Defendants. | |

FILED
CLERK U.S. DISTRICT COURT

OCT 19 2010

CENTRAL DISTRICT
BY

2010 OCT 19 AM 11: 13
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

20

21

22 |                        [UNDER SEAL]

23

24

25

26

27

28

1 | William K. Hanagami, SBN 119832
**THE HANAGAMI LAW FIRM**
2 | **A PROFESSIONAL CORPORATION**
**21700 OXNARD STREET, SUITE 1150**
3 | **WOODLAND HILLS, CA 91367-7572**
**(818) 716-8570 / (818) 716-8569** *FAX*
4 | BillHanagami@esquire.la

5 | **Abram J. Zinberg, SBN 143399**
**412 OLIVE AVENUE, SUITE 528**
6 | **HUNTINGTON BEACH 92648**
**(714) 960-9917 / (714) 374-9802** *FAX*
7 | AbramZinberg@gmail.com

8 | Attorneys for Plaintiff and Qui Tam Relator,
James M. Swoben

9

## UNITED STATES DISTRICT COURT

10

## CENTRAL DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| 12  UNITED STATES OF AMERICA and STATE OF CALIFORNIA, *ex rel* JAMES M. SWOBEN, | CASE NO.: CV09-5013 JFW(JEMx) |
| 13 | |
| 14                  Plaintiffs, | [PROPOSED] SECOND AMENDED COMPLAINT FOR VIOLATIONS OF FEDERAL FALSE CLAIMS ACT AND CALIFORNIA FALSE CLAIMS ACT;  REQUEST FOR JURY TRIAL |
| 15  vs. | |
| 16  SCAN HEALTH PLAN, a California corporation, fka SENIOR CARE ACTION NETWORK; SENIOR CARE ACTION NETWORK, a business entity, form unknown; SCAN GROUP, a California corporation; SECURE HORIZONS, a business entity, form unknown; UNITED HEALTHCARE INSURANCE COMPANY, a Connecticut corporation; UNITED HEALTHCARE SERVICES, INC., a Minnesota corporation; UHIC, a business entity, form unknown; UNITEDHEALTH GROUP, a business entity, form unknown; UNITEDHEALTHCARE, a business entity, form unknown; UNITEDHEALTH, a business entity, form unknown; PACIFCARE HEALTH PLAN ADMINISTRATORS, INC., a corporation; PACIFICARE OF CALIFORNIA, a corporation; PACIFICARE LIFE AND HEALTH INSURANCE COMPANY, a corporation; and PACIFICARE HEALTH SYSTEMS, a corporation; | [**UNDER SEAL** PER 31 U.S.C. § 3730(b)(2)] |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28                  Defendants. | |

-1-

1    COMES NOW, Plaintiff and Qui Tam Relator James M. Swoben, individually and on

2  behalf of the United States of America and the State of California, and alleges as follows:

3

4                              JURISDICTION AND VENUE

5    1.    Plaintiff and Qui Tam Relator James M. Swoben (Swoben) files this action on

6  behalf and in the name of the United States Government ("Government") seeking damages and

7  civil penalties against the defendants for violations of 31 U.S.C. § 3729(a).  Swoben also files

8  this action on behalf and in the name of the State of California ("California") seeking damages

9  and civil penalties against the defendants for violations of California Government Code §

10  12651(a).

11    2.    This Court's jurisdiction over the claims for violations of 31 U.S.C. § 3729(a)

12  is based upon 31 U.S.C. § 3732(a).  This Court's jurisdiction over the claims for violations of

13  California Government Code § 12651(a) is based upon 31 U.S.C. § 3732(b).

14    3.    Venue is vested in this Court under 31 U.S.C. § 3732(a) because at least one of

15  the defendants transacts business in the Central District of California and many acts

16  constituting violations of 31 U.S.C. § 3729(a) occurred in the Central District of California.

17

18                                  THE PARTIES

19    4.    Swoben is a resident and citizen of the United States, the State of California, and

20  of this District.  Swoben brings this action of behalf of the Government under 31 U.S.C. §

21  3730(b) and on behalf of California under California Government Code § 12652(c).

22    5.    At all times relevant, the Government funded the Medicare program which

23  provides payment of healthcare services for, among others, those 65 years or older.  The

24  Government provided a Medicare option known as Medicare+Choice, now known as

25  Medicare Advantage, in which eligible Medicare beneficiaries could enroll with a managed

26  care organization (MCO) contracted with the Government for a capitated rate paid by the

27  Government that would provide at least those services provided to standard Medicare

28  beneficiaries.

SECOND AMENDED COMPLAINT

6. At all time relevant, California administered and partially funded the Medi-Cal program (the Medicaid program in California) in which eligible Medi-Cal beneficiaries could enroll with a MCO contracted with California for a capitated rate paid by Medi-Cal that would provide at least those services provided to standard Medi-Cal beneficiaries. The Government also partially funded the Medi-Cal program as part of the Government's Medicaid program.

7. Defendant SCAN Health Plan and SCAN Group are and were corporations formed under the laws of the State of California, and transacted business in, among other places, the Central District of California. SCAN Health Plan was formerly known and doing business as Senior Care Action Network. Defendant Senior Care Action Network is a business entity, form unknown, that transacted business in, among other places, the Central District of California. All defendants referenced in this paragraph are collectively referred in this Complaint as "SCAN."

8. At all times relevant, SCAN was and is a health maintenance organization (HMO) that provides health care services in Southern California to the elderly covered under Medicare. Between March 2004 and September 2006, Swoben was employed with SCAN.

9. Defendant United Healthcare Insurance Company is and was a corporation formed under the laws of the State of Connecticut, and transacted business in, among other places, the Central District of California. Defendant United Healthcare Services, Inc. is and was a corporation formed under the laws of the State of Minnesota, and transacted business in, among other places, the Central District of California. Defendants UHIC, UnitedHealth Group, UnitedHealthcare, UnitedHealth, and Secure Horizons are business entities, form unknown, that transacted business in, among other places, the Central District of California. Defendants Pacifcare Health Plan Administrators, Inc., Pacificare of California, Pacificare Life and Health Insurance Company, and Pacificare Health Systems are corporations formed under the laws of one or more states of the United States, and transacted business in, among other places, the Central District of California. All defendants referenced in this paragraph are collectively referred in this Complaint as "Secure Horizons."

/ / /

-3-

SECOND AMENDED COMPLAINT

## COMMON ALLEGATIONS

10.     During or after about 1984, SCAN was awarded a contract by the Government to operate as a Social HMO Demonstration Project ("Social HMO contract"). The purpose of the Social HMO Demonstration Project was to explore the viability of preventing or delaying older-adult institutionalization in skilled-nursing facilities by providing such eligible individuals with a combination of healthcare and personal care services, including homemaker services, personal-care services, adult day care, respite care, and medical transportation. SCAN served, among other places, the California counties of Los Angeles, Riverside and San Bernardino. Under the terms of the Social HMO contract, SCAN agreed to provide such services to Medicare+Choice, now Medicare Advantage, beneficiaries for a monthly capitated payment paid by the Government. Plaintiff is informed and believes that during and after 2001, the Government paid SCAN an additional monthly capitated rate of approximately $800 per nursing home certifiable (NHC) beneficiary. Plaintiff is informed and believes that the Social HMO contract ended on or about December 31, 2007.

11.     During or about 2001, California awarded a contract to SCAN (the "Medi-Cal contract") to provide home and community-based long-term care to Medi-Cal beneficiaries that were 65 years of age or older and eligible for Medicare Parts A and B. The purpose of this contract was to keep senior citizens out of long-term placement in skilled-nursing facilities. The Medi-Cal contract was extended or renewed until about December 31, 2007. Plaintiff is informed and believes that SCAN received a monthly capitated rate of approximately $3,300 per Medi-Cal beneficiary from Medi-Cal.

12.     The services SCAN undertook and provided under its Social HMO contract with the Government contract were included in the scope of services SCAN was to provide under its Medi-Cal contract.

13.     SCAN provided services to numerous patients that were beneficiaries under both the Medicare Social HMO contract and the Medi-Cal contract ("dual eligible beneficiaries"). During or about 2006, Swoben discovered that although SCAN undertook and provided such dual eligible beneficiaries the care and services that were covered and paid for by the

-4-

1 Government under the Medicare Social HMO contract, SCAN continued to bill for and receive
2 capitated monthly payments of approximately $3,300 per beneficiary from Medi-Cal without
3 reduction in payment for the care and services SCAN undertook and provided under the
4 Medicare Social HMO contract.

5       14.    Under applicable law, Medicare is primary and Medi-Cal secondary in
6 connection with the care and services undertook and rendered by SCAN to the dual eligible
7 beneficiaries. Plaintiff is informed and believes that by law, or the terms of SCAN's contracts
8 with the Government or California, SCAN was required to not bill, and/or not retain payments
9 from, Medi-Cal for undertaking the services rendered to the dual eligible beneficiaries to the
10 extent such services were covered and paid for under the Medicare Social HMO contract.
11 Plaintiff is informed and believes that Medi-Cal's overpayments for dual eligible NHC
12 beneficiaries amount to at least $800 per NHC beneficiary between 2001 and 2007 amounting
13 to more than $200 million.

14       15.    SCAN was required to periodically provide Medicare and Medi-Cal cost reports
15 and other financial reports and information reflecting SCAN's true cost to furnish the services
16 to be provided under the Medicare Social HMO contract and Medi-Cal contract, respectively.
17 The purpose of such requirement was, among other things, so that Medicare and Medi-Cal
18 could determine if the capitated rate paid to SCAN under the Medicare Social HMO contract
19 or Medi-Cal contract, respectively, was excessive in light of SCAN's costs to furnish services
20 under such contract. If SCAN's costs of furnishing such services under the Medicare Social
21 HMO contract or Medi-Cal contract were significantly lower than the capitated rate paid to
22 SCAN by Medicare or Medi-Cal, respectively, the capitated rate for future years would have
23 been lowered accordingly.

24       16.    SCAN's fraudulent billing practices included failing to submit cost reports and
25 other financial reports and information to Medi-Cal that disclosed SCAN's true cost (in light
26 of SCAN's receipt of monies from the Medicare Social HMO contract) of the services to be
27 provided under the Medi-Cal contract, or alternatively, submitting cost reports and other
28 financial reports and information to Medi-Cal that failed to disclose, among other things,

-5-

1   SCAN's receipts of monies from the Medicare Social HMO contract. SCAN's utilization of

2   such fraudulent practices and concealments caused Medi-Cal to overpay SCAN for services

3   it already undertook by virtue of, among other things, the Medicare Social HMO contract, and

4   concealed such overpayments. At all times relevant, SCAN was aware that such overpayments

5   by Medi-Cal were due and owing to Medi-Cal, but SCAN continued to conceal said

6   overpayments.

7       17.    SCAN knew that its cost reports, loss ratio reports, and other financial reports

8   submitted to Medi-Cal were fraudulent as evidenced by the fact that its outside actuaries

9   refused to sign and approve such submissions. Further SCAN knew or should have known

10  that it had the ability to provide Medi-Cal the true costs of the services to be provided under

11  the Medi-Cal contract, but failed to do so because SCAN knew that its capitated rates would

12  be reduced if such information was provided to Medi-Cal.

13

14                          FIRST CLAIM FOR RELIEF

15                  (Violation of 31 U.S.C. § 3729(a) against SCAN)

16      18.    Plaintiff realleges and incorporates by reference paragraphs 1 through 17,

17  inclusive, of this complaint as though fully set forth at length.

18      19.    At all times mentioned, SCAN routinely and repeatedly violated 31 U.S.C. §

19  3729(a)(1) by knowingly presenting and/or causing to present to agents, contractors or

20  employees of the Government false and fraudulent billings for payment and approval.

21      20.    At all times mentioned, SCAN routinely and repeatedly violated 31 U.S.C. §

22  3729(a)(2) by knowingly making, using, and/or causing to make or use false records and

23  statements to get false and excessive billings paid or approved by Medicare and Medi-Cal.

24      21.    At all times mentioned, SCAN routinely and repeatedly violated 31 U.S.C. §

25  3729(a)(4) by improperly retaining and concealing the excessive capitated payments SCAN

26  received.

27      22.    At all times mentioned, SCAN routinely and repeatedly violated 31 U.S.C. §

28  3729(a)(7) by knowingly making, using and/or causing to make or use false records and

SECOND AMENDED COMPLAINT

1 statements to conceal, avoid, or decrease its obligation to return to the Medi-Cal program the

2 excessive capitated payments SCAN received.

3      23.   Swoben is informed and believes, and upon such information and belief alleges,

4 that as a result of SCAN's concealments and use of false records and statements, Medi-Cal

5 paid in excess of $200 million more than it would have if SCAN had properly and truthfully

6 billed and reported, and revealed the excessive payments received.

7      24.   As a result of SCAN's conduct, SCAN is liable to the Government for three

8 times the amount of damages sustained by the Government as a result of the false and

9 fraudulent billing, reporting and concealment practices alleged above.

10      25.   As a result of SCAN's conduct, 31 U.S.C. § 3729(a) provides that SCAN is

11 liable to the Government for civil penalties between $5,000 and $10,000 for each such false

12 and fraudulent billing, reporting and concealment.

13      26.   Swoben is also entitled to recover his attorneys fees, costs and expenses from

14 the SCAN pursuant to 31 U.S.C. § 3730(d).

15

16 **SECOND CLAIM FOR RELIEF**

17 (Violation of <u>California Government Code</u> § 12651(a) against SCAN)

18      27.   Plaintiff realleges and incorporates by reference paragraphs 1 through 26,

19 inclusive, of this complaint as though fully set forth at length.

20      28.   At all times mentioned, SCAN routinely and repeatedly violated <u>California</u>

21 <u>Government Code</u> § 12651(a)(1) by knowingly presenting and/or causing to present to

22 California employees, agents and/or contractors false and fraudulent billings for payment and

23 approval.

24      29.   At all times mentioned, defendants routinely and repeatedly violated <u>California</u>

25 <u>Government Code</u> § 12651(a)(2) by knowingly making, using, and/or causing to make or use

26 false records and statements to get false and excessive billings paid or approved by Medi-Cal.

27      30.   At all times mentioned, SCAN routinely and repeatedly violated <u>California</u>

28 <u>Government Code</u> § 12651(a)(4) by improperly retaining and concealing the excessive

-7-

SECOND AMENDED COMPLAINT

1  capitated payments SCAN received.

2      31.   At all times mentioned, SCAN routinely and repeatedly violated <u>California</u>

3  <u>Government Code</u> § 12651(a)(7) by knowingly making, using and/or causing to make or use

4  false records and statements to conceal, avoid, or decrease its obligation to return to the Medi-

5  Cal program the excessive capitated payments SCAN received.

6      32.   Swoben is informed and believes, and upon such information and belief alleges,

7  that as a result of SCAN's concealments and use of false records and statements, Medi-Cal

8  paid in excess of $200 million more than it would have if SCAN had properly and truthfully

9  billed and reported, and revealed the excessive payments received.

10      33.   As a result of SCAN's conduct, SCAN is liable to California for up to three

11  times the amount of damages sustained by California as a result of the false and fraudulent

12  billing, reporting and concealment practices alleged above.

13      34.   As a result of SCAN's conduct, <u>California Government Code</u> §12651(a)

14  provides that defendants are liable to California for civil penalties of up to $10,000 for each

15  such false and fraudulent billing, reporting and concealment.

16      35.   Swoben is also entitled to recover his attorneys fees, costs and expenses from

17  SCAN pursuant to <u>California Government Code</u> § 12652(g)(8).

18

19  <u>THIRD CLAIM FOR RELIEF</u>

20  (Violation of 31 U.S.C. § 3729(a) against all defendants)

21  [Up-Coding]

22      36.   Plaintiff realleges and incorporates by reference paragraphs 1 through 17,

23  inclusive, of this complaint as though fully set forth at length.

24      37.   At all times relevant, SCAN and Secure Horizons, were and/or operated health

25  maintenance organizations that had HMO contracts with Medicare and Medi-Cal. At all times

26  relevant, SCAN and Secure Horizons, as did other HMOs, submitted diagnoses codes of their

27  respective HMO patients to the Government and California. The diagnosis codes were used

28  to develop risk scores that were used to adjust the following year's capitated payment rates

-8-

SECOND AMENDED COMPLAINT

1    paid by the Government and California. The risk scores compensated an HMO with a
2    population of patients with more severe illnesses than normal through higher capitation rates
3    the following year. Likewise, an HMO with a population of patients with less severe illnesses
4    than normal would see a downward adjustment of its capitation rates the following year
5    because it was servicing a healthier than normal population of patients.

6        38.    Although Secure Horizons had previously submitted diagnoses codes of its
7    patients to the Government and California, during or about 2005, Secure Horizons retained
8    coding companies to review the medical charts of tens of thousands of its patients with severe
9    illnesses. Although Secure Horizons provided such coding companies with the lists of patients
10   whose charts were to be reviewed, Secure Horizons concealed from the coding companies
11   what diagnosis codes had been previously submitted to the Government and California.

12       39.    Although SCAN had previously submitted diagnoses codes of its patients to the
13   Government and California, during or about 2006, SCAN retained coding companies to review
14   the medical charts of approximately 10,000 of its patients with severe illnesses. Although
15   SCAN provided such coding companies with the lists of patients whose charts were to be
16   reviewed, SCAN concealed from the coding companies what diagnosis codes had been
17   previously submitted to the Government and California.

18       40.    The coding companies conducted their review of the medical charts of tens of
19   thousands of SCAN and Secure Horizon patients, determined the diagnosis codes that were
20   supported by proper documentation of the reviewed medical charts, and provided their results
21   to SCAN and Secure Horizons, respectively. The coding companies' review resulted in (a)
22   diagnosis codes that were supported by proper documentation of the reviewed medical charts
23   that had been previously submitted to the Government and California, and (b) new diagnosis
24   codes that were supported by proper documentation of the reviewed medical charts that had
25   not been previously submitted to the Government and California. The results of the coding
26   companies' review did not include a number of diagnosis codes of the reviewed medical charts
27   that had been previously submitted to the Government and California because such diagnosis
28   codes were not supported by proper documentation of the reviewed medical charts.

SECOND AMENDED COMPLAINT

41.     SCAN and Secure Horizons made no effort to advise the Government and California of the diagnosis codes for the reviewed medical charts that were not supported, and made no effort to withdraw from the Government and California the previously submitted diagnosis codes that were not supported by proper documentation of the reviewed medical charts.

42.     SCAN and Secure Horizons improperly conceived, planned and conducted the coding companies' reviews by not causing the previously submitted diagnosis codes that were unsupported by the coding companies' reviews to be corrected and withdrawn from the Government and California.  Rather, the procedures and methods developed and used by SCAN and Secure Horizons was biased in favor of "up coding" the patients' diagnoses because the previously submitted diagnoses that were not unsupported by the coding companies' reviews were not corrected and withdrawn from the Government and California. SCAN and Secure Horizons did so with the knowledge and intent that the coding companies' review would only increase, and not decrease, the number of diagnoses, and thus their respective risk scores in order to increase future capitated payments paid by the Government and California.

43.     During or about 2005 or 2006, SCAN and Secure Horizons submitted to the Government and California the diagnosis codes determined by the coding companies' review, knowing that the effect of such submissions would only increase the number of diagnoses, and thus artificially inflate their respective risk scores.

44.     As a result of the acts and concealments of SCAN and Secure Horizons, their respective capitated payments paid by the Government and California became inflated due to the artificially high risk scores.

45.     At all times mentioned, SCAN and Secure Horizons routinely and repeatedly violated 31 U.S.C. § 3729(a)(1) by knowingly presenting and/or causing to present to agents, contractors or employees of the Government false and fraudulent billings for payment and approval during and after 2004.

/ / /

-10-

46.     At all times mentioned, SCAN and Secure Horizons routinely and repeatedly violated 31 U.S.C. § 3729(a)(2) by knowingly making, using, and/or causing to make or use false records and statements to get false and excessive billings paid or approved under the Medicare and Medi-Cal contracts during and after 2004.

47.     At all times mentioned, SCAN and Secure Horizons routinely and repeatedly violated 31 U.S.C. § 3729(a)(4) by improperly retaining and concealing the unsupported diagnosis codes and inflated risk scores that inflated the capitated payments they received under the Medicare and Medi-Cal contracts during and after 2004.

48.     At all times mentioned, SCAN and Secure Horizons routinely and repeatedly violated 31 U.S.C. § 3729(a)(7) by knowingly making, using and/or causing to make or use false records and statements to conceal, avoid, or decrease its obligation to return to the Medicare and Medi-Cal programs the inflated capitated payments they received during and after 2004.

49.     Swoben is informed and believes, and upon such information and belief alleges, that as a result of the concealments and use of false records and statements, Medicare and Medi-Cal paid more than they would have if SCAN and Secure Horizons had properly and truthfully billed and reported, and revealed and withdrawn the diagnosis codes that were not supported by their medical charts.

50.     As a result of their conduct, defendants are liable to the Government for three times the amount of damages sustained by the Government as a result of the false and fraudulent billing, reporting and concealment practices alleged above.

51.     As a result of defendants' conduct, 31 U.S.C. § 3729(a) provides that defendants are liable to the Government for civil penalties between $5,000 and $10,000 for each such false and fraudulent billing, reporting and concealment.

52.     Swoben is also entitled to recover his attorneys fees, costs and expenses from defendants pursuant to 31 U.S.C. § 3730(d).

/ / /

/ / /

FOURTH CLAIM FOR RELIEF

(Violation of California Government Code § 12651(a) against all defendants)

[Up-Coding]

53.    Plaintiff realleges and incorporates by reference paragraphs 1 through 17, inclusive, and 36 through 51, inclusive, of this complaint as though fully set forth at length.

54.    At all times mentioned, SCAN and Secure Horizons routinely and repeatedly violated California Government Code § 12651(a)(1) by knowingly presenting and/or causing to present to California employees, agents and/or contractors false and fraudulent billings for payment and approval during and after 2004.

55.    At all times mentioned, SCAN and Secure Horizons routinely and repeatedly violated  California Government Code § 12651(a)(2) by knowingly making, using, and/or causing to make or use false records and statements to get false and excessive billings paid or approved under the Medi-Cal contract during and after 2004.

56.    At all times mentioned, SCAN and Secure Horizons routinely and repeatedly violated California Government Code § 12651(a)(4) by improperly retaining and concealing the unsupported diagnosis codes and inflated risk scores that inflated the capitated payments they received  under the Medi-Cal contract during and after 2004.

57.    At all times mentioned, SCAN and Secure Horizons routinely and repeatedly violated California Government Code § 12651(a)(7) by knowingly making, using and/or causing to make or use false records and statements to conceal, avoid, or decrease their obligation to return to the Medi-Cal program the inflated the capitated payments they received under the Medicare and Medi-Cal contracts during and after 2004.

58.    Swoben is informed and believes, and upon such information and belief alleges, that as a result of SCAN's and Secure Horizons' concealments and use of false records and statements, Medi-Cal paid more than it would have if defendants had properly and truthfully billed and reported, and revealed and withdrawn the diagnosis codes that were not supported by their medical charts.

59.    As a result of their conduct, defendants are liable to California for three times

-12-

SECOND AMENDED COMPLAINT

1    the amount of damages sustained by California as a result of the false and fraudulent billing,

2    reporting and concealment practices alleged above.

3        60.    As a result of their conduct, California Government Code § 12651(a) provides

4    that defendants are liable to California for civil penalties of up to $10,000 for each such false

5    and fraudulent billing, reporting and concealment.

6        61.    Swoben is also entitled to recover his attorneys fees, costs and expenses from

7    defendants pursuant to California Government Code § 12652(g)(8).

8

9                         FIFTH CLAIM FOR RELIEF

10                  (Violation of 31 U.S.C. § 3729(a) against SCAN)

11                                [PACE]

12       62.    Plaintiff realleges and incorporates by reference paragraphs 1 through 17,

13   inclusive, of this complaint as though fully set forth at length.

14       63.    SCAN's Medi-Cal contract was initially for the period of July 1, 2001 through

15   June 30, 2004, and was extended or renewed a number of times until about December 31,

16   2007.

17       64.    California Welfare & Institutions Code §14598(c) provides that the SCAN

18   Medi-Cal contract could not be renewed after June 30, 2004. Further, SCAN was ineligible

19   to receive funds after June 30, 2004 under the Medi-Cal contract because SCAN was not a

20   PACE[1] organization as defined under 42 C.F.R. 460.6 because SCAN did not have an

21   agreement with the Government's Centers of Medicare and Medicaid Services (CMS) and

22   California for participation in the PACE program. Accordingly, SCAN's requests for

23   capitation payments from Medi-Cal for the period July 1, 2004 through December 1, 2007

24   were fraudulent because SCAN was not a PACE organization.

25       65.    At all times mentioned, SCAN routinely and repeatedly violated 31 U.S.C. §

26   3729(a)(1) by knowingly presenting and/or causing to present to agents, contractors or

27   employees of the Government false and fraudulent billings for payment and approval for the

28   _____

[1]PACE means "Programs of All-Inclusive Care for the Elderly." (See, 42 C.F.R. 460.6.)

1    period July 1, 2004 through December 1, 2007.

2          66.   At all times mentioned, SCAN routinely and repeatedly violated 31 U.S.C. §

3    3729(a)(2) by knowingly making, using, and/or causing to make or use false records and

4    statements to get false and excessive billings paid or approved under the Medi-Cal contract

5    for the period July 1, 2004 through December 1, 2007.

6          67.   At all times mentioned, SCAN routinely and repeatedly violated 31 U.S.C. §

7    3729(a)(4) by improperly retaining and concealing the unauthorized capitated payments SCAN

8    received under the Medi-Cal contract for the period July 1, 2004 through December 1, 2007.

9          68.   At all times mentioned, SCAN routinely and repeatedly violated 31 U.S.C. §

10   3729(a)(7) by knowingly making, using and/or causing to make or use false records and

11   statements to conceal, avoid, or decrease its obligation to return to the Medi-Cal program the

12   unauthorized capitated payments SCAN received under the Medi-Cal contract for the period

13   July 1, 2004 through December 1, 2007.

14         69.   Swoben is informed and believes, and upon such information and belief alleges,

15   that as a result of SCAN's concealments and use of false records and statements, Medi-Cal

16   paid more than it would have if SCAN had properly and truthfully billed and reported, and

17   revealed that it was ineligible to receive payments under the Medi-Cal contract because SCAN

18   was not a PACE organization.

19         70.   As a result of SCAN's conduct, SCAN is liable to the Government for three

20   times the amount of damages sustained by the Government as a result of the false and

21   fraudulent billing, reporting and concealment practices alleged above.

22         71.   As a result of SCAN's conduct, 31 U.S.C. § 3729(a) provides that SCAN is

23   liable to the Government for civil penalties between $5,000 and $10,000 for each such false

24   and fraudulent billing, reporting and concealment.

25         72.   Swoben is also entitled to recover his attorneys fees, costs and expenses from

26   the SCAN pursuant to 31 U.S.C. § 3730(d).

27   / / /

28   / / /

-14-

SECOND AMENDED COMPLAINT

### SIXTH CLAIM FOR RELIEF

(Violation of <u>California Government Code</u> § 12651(a) against SCAN)

[PACE]

73.     Plaintiff realleges and incorporates by reference paragraphs 1 through 17, inclusive, of this complaint as though fully set forth at length.

74.     SCAN's Medi-Cal contract was initially for the period of July 1, 2001 through June 30, 2004, and was extended or renewed a number of times until about December 31, 2007.

75.     <u>California Welfare & Institutions Code</u> §14598(c) provides that the SCAN Medi-Cal contract could not be renewed after June 30, 2004. Further, SCAN was ineligible to receive funds after June 30, 2004 under the Medi-Cal contract because SCAN was not a PACE[2] organization as defined under 42 C.F.R. 460.6 because SCAN did not have an agreement with the Government's Centers of Medicare and Medicaid Services (CMS) and California for participation in the PACE program. Accordingly, SCAN's requests for capitation payments from Medi-Cal for the period July 1, 2004 through December 1, 2007 were fraudulent because SCAN misrepresented that it had complied with all applicable laws and regulations in connection with such payments, even though SCAN was not a PACE organization.

76.     At all times mentioned, SCAN routinely and repeatedly violated <u>California Government Code</u> § 12651(a)(1) by knowingly presenting and/or causing to present to California employees, agents and/or contractors false and fraudulent billings for payment and approval for the period July 1, 2004 through December 1, 2007.

77.     At all times mentioned, SCAN routinely and repeatedly violated <u>California Government Code</u> § 12651(a)(2) by knowingly making, using, and/or causing to make or use false records and statements to get false and excessive billings paid or approved under the Medi-Cal contract for the period July 1, 2004 through December 1, 2007.

/ / /

---

[2]PACE means "Programs of All-Inclusive Care for the Elderly." (*See,* 42 C.F.R. 460.6.)

78.    At all times mentioned, SCAN routinely and repeatedly violated <u>California Government Code</u> § 12651(a)(4) by improperly retaining and concealing the unauthorized capitated payments SCAN received under the Medi-Cal contract for the period July 1, 2004 through December 1, 2007.

79.    At all times mentioned, SCAN routinely and repeatedly violated <u>California Government Code</u> § 12651(a)(7) by knowingly making, using and/or causing to make or use false records and statements to conceal, avoid, or decrease its obligation to return to the Medi-Cal program the unauthorized capitated payments SCAN received under the Medi-Cal contract for the period July 1, 2004 through December 1, 2007.

80.    Swoben is informed and believes, and upon such information and belief alleges, that as a result of SCAN's concealments and use of false records and statements, Medi-Cal paid more than it would have if SCAN had properly and truthfully billed and reported, and revealed that it was ineligible to receive payments under the Medi-Cal contract because SCAN was not a PACE organization.

81.    As a result of SCAN's conduct, SCAN is liable to California for three times the amount of damages sustained by California as a result of the false and fraudulent billing, reporting and concealment practices alleged above.

82.    As a result of SCAN's conduct, <u>California Government Code</u> § 12651(a) provides that SCAN is liable to California for civil penalties of up to $10,000 for each such false and fraudulent billing, reporting and concealment.

83.    Swoben is also entitled to recover his attorneys fees, costs and expenses from the SCAN pursuant to <u>California Government Code</u> § 12652(g)(8).


<u>SEVENTH CLAIM FOR RELIEF</u>

(Violation of 31 U.S.C. § 3729(a) against SCAN)

[False Diagnosis Reporting]

84.    Plaintiff realleges and incorporates by reference paragraphs 1 through 17, inclusive, of this complaint as though fully set forth at length.

-16-

85.     At all times relevant, SCAN was and/or operated a health maintenance organization that had HMO contracts with Medicare and Medi-Cal.  At all times relevant, SCAN, as did other HMOs, submitted diagnoses codes of its HMO patients to the Government and California.  The diagnosis codes were used to develop risk scores that were used to adjust the following year's capitated payment rates paid by the Government and California.  The risk scores compensated an HMO with a population of patients with more severe illnesses than normal through higher capitation rates the following year.  Likewise, an HMO with a population of patients with less severe illnesses than normal would see a downward adjustment of its capitation rates the following year because it was servicing a healthier than normal population of patients.

86.     Under applicable Medicare and Medi-Cal regulations, HMOs can only submit diagnosis codes to the Government and California, respectively, that are supported by properly documented chart notes.

87.     During or about 2005, Medicare conducted a review of about 200 of SCAN's 2003 medical charts of its Medicare patients, and determined that about 40% (more than twice the norm in the industry) of the reviewed chart notes did not support the 2003 diagnosis codes previously supplied to Medicare.  As a result, Medicare disallowed the diagnosis codes of the 200 reviewed charts that were not supported by properly documented chart notes.  During 2003, SCAN had more than 90,000 Medicare patients.

88.     The procedures utilized by SCAN to document chart notes and diagnoses, and submit diagnosis codes to the Government and California remained the same between and including 2003 and 2006.  SCAN did not take any corrective action to reduce its error rate (the percentage of submitted diagnosis codes unsupported by properly documented chart notes) during that time.

89.     Based upon the results of Medicare 2005 review, Plaintiff is informed and believes, and upon such information and belief alleges, that 40% of the 2004 and 2005 diagnosis codes SCAN submitted to the Government and California were not supported by properly documented chart notes as SCAN utilized the same procedures to document chart

-17-

1  notes and submit diagnosis codes to the Government and California.   In spite of the
2  excessively high error rate, SCAN took no action to review the 2004 and 2005 diagnosis codes
3  submitted to the Government and California, <u>and</u> failed to either (a) ensure that the diagnosis
4  codes were supported by properly documented chart notes, or (b) withdraw the 2004 and 2005
5  diagnosis codes that were not supported by properly documented chart notes.

6     90.    Plaintiff is informed and believes, and upon such information and belief alleges,
7  that 40% of the diagnosis codes SCAN submitted to the Government and California for 2006
8  and beyond were not supported by properly documented chart notes as SCAN utilized the
9  same procedures to document chart notes and submit diagnosis codes to the Government and
10  California that were in place during 2003.

11     91.    As a result of SCAN's submission of diagnosis codes to the Government and
12  California since 2004, 40% of which are invalid because they were not supported by properly
13  documented chart notes, failure to ensure that the diagnosis codes were supported by properly
14  documented chart notes, and failure to withdraw the 2004 and 2005 diagnosis codes that were
15  not supported by properly documented chart notes, the Government and California were
16  induced to and did pay capitation rates to SCAN that were excessively high.

17     92.    During each year in question, SCAN's authorized officer or representative
18  submitted to the Government and California an attestation that SCAN had truthfully submitted
19  all required information to the Government and California, respectively, and had complied
20  with all applicable laws and Medicare and Medi-Cal regulations.

21     93.    At all times mentioned, SCAN routinely and repeatedly violated 31 U.S.C. §
22  3729(a)(1) by knowingly presenting and/or causing to present to agents, contractors or
23  employees of the Government false and fraudulent billings for payment and approval by
24  Medicare and Medi-Cal for the period 2004 through and including 2007.

25     94.    At all times mentioned, SCAN routinely and repeatedly violated 31 U.S.C. §
26  3729(a)(2) by knowingly making, using, and/or causing to make or use false records and
27  statements to get false and excessive billings paid or approved by Medicare and Medi-Cal for
28  the period 2004 through and including 2007.

-18-

SECOND AMENDED COMPLAINT

1    95.    At all times mentioned, SCAN routinely and repeatedly violated 31 U.S.C. §
2  3729(a)(4) by improperly retaining and concealing the excessive capitated payments SCAN
3  received from Medicare and Medi-Cal for the period 2004 through and including 2007.

4    96.    At all times mentioned, SCAN routinely and repeatedly violated 31 U.S.C. §
5  3729(a)(7) by knowingly making, using and/or causing to make or use false records and
6  statements to conceal, avoid, or decrease its obligation to return to the Medicare and Medi-Cal
7  programs the excessive capitated payments SCAN received from the Government and
8  California for the period 2004 through and including 2007.

9    97.    As a result of SCAN's conduct, SCAN is liable to the Government for three
10 times the amount of damages sustained by the Government as a result of the false and
11 fraudulent billing, reporting and concealment practices alleged above.

12   98.    As a result of SCAN's conduct, 31 U.S.C. § 3729(a) provides that SCAN is
13 liable to the Government for civil penalties between $5,000 and $10,000 for each such false
14 and fraudulent billing, reporting and concealment.

15   99.    Swoben is also entitled to recover his attorneys fees, costs and expenses from
16 the SCAN pursuant to 31 U.S.C. § 3730(d).

17

18                         EIGHTH CLAIM FOR RELIEF
19        (Violation of California Government Code § 12651(a) against SCAN)
20                        [False Diagnosis Reporting]

21   100.   Plaintiff realleges and incorporates by reference paragraphs 1 through 17,
22 inclusive, of this complaint as though fully set forth at length.

23   101.   At all times relevant, SCAN was and/or operated a health maintenance
24 organization that had HMO contracts with Medicare and Medi-Cal. At all times relevant,
25 SCAN, as did other HMOs, submitted diagnoses codes of its HMO patients to the Government
26 and California. The diagnosis codes were used to develop risk scores that were used to adjust
27 the following year's capitated payment rates paid by the Government and California. The risk
28 scores compensated an HMO with a population of patients with more severe illnesses than

-19-

1  normal through higher capitation rates the following year. Likewise, an HMO with a

2  population of patients with less severe illnesses than normal would see a downward adjustment

3  of its capitation rates the following year because it was servicing a healthier than normal

4  population of patients.

5       102.   Under applicable Medicare and Medi-Cal regulations, HMOs can only submit

6  diagnosis codes to the Government and California, respectively, that are supported by properly

7  documented chart notes.

8       103.   During or about 2005, Medicare conducted a review of about 200 of SCAN's

9  2003 medical charts of its Medicare patients, and determined that about 40% (more than twice

10  the norm in the industry) of the reviewed chart notes did not support the 2003 diagnosis codes

11  previously supplied to Medicare. As a result, Medicare disallowed the diagnosis codes of the

12  200 reviewed charts that were not supported by properly documented chart notes. During

13  2003, SCAN had more than 19,000 Medi-Cal patients.

14       104.   The procedures utilized by SCAN to document chart notes and diagnoses, and

15  submit diagnosis codes to the Government and California, remained the same between and

16  including 2003 and 2006. SCAN did not take any corrective action to reduce its error rate (the

17  percentage of submitted diagnosis codes unsupported by properly documented chart notes)

18  during that time.

19       105.   Based upon the results of Medicare 2005 review, Plaintiff is informed and

20  believes, and upon such information and belief alleges, that 40% of the 2004 and 2005

21  diagnosis codes SCAN submitted to California were not supported by properly documented

22  chart notes as SCAN utilized the same procedures to document chart notes and submit

23  diagnosis codes to the Government and California. In spite of the excessively high error rate,

24  SCAN took no action to review the 2004 and 2005 diagnosis codes submitted to California,

25  and failed to either (a) ensure that the diagnosis codes were supported by properly documented

26  chart notes, or (b) withdraw the 2004 and 2005 diagnosis codes that were not supported by

27  properly documented chart notes.

28       106.   Plaintiff is informed and believes, and upon such information and belief alleges,

-20-

1    that 40% of the diagnosis codes SCAN submitted to California for 2006 and beyond were not

2    supported by properly documented chart notes as SCAN utilized the same procedures to

3    document chart notes and submit diagnosis codes to the Government and California that were

4    in place during 2003.

5        107.   As a result of SCAN's submission of diagnosis codes to the Government and

6    California since 2004, 40% of which are invalid because they were not supported by properly

7    documented chart notes, failure to ensure that the diagnosis codes were supported by properly

8    documented chart notes, and failure to withdraw the 2004 and 2005 diagnosis codes that were

9    not supported by properly documented chart notes, California was induced to and did pay

10    capitation rates to SCAN that were excessively high.

11        108.   During each year in question, SCAN's authorized officer or representative

12    submitted to the Government and California an attestation that SCAN had truthfully submitted

13    all required information to the Government and California, respectively, and had complied

14    with all applicable laws and Medicare and Medi-Cal regulations.

15        109.   At all times mentioned, SCAN routinely and repeatedly violated California

16    Government Code § 12651(a)(2) by knowingly making, using, and/or causing to make or use

17    false records and statements to get false and excessive billings paid or approved by Medi-Cal

18    for the 2004 through and including 2007.

19        110.   At all times mentioned, SCAN routinely and repeatedly violated California

20    Government Code § 12651(a)(4) by improperly retaining and concealing the excessive

21    capitated payments SCAN received from Medi-Cal for the period 2004 through and including

22    2007.

23        111.   At all times mentioned, SCAN routinely and repeatedly violated California

24    Government Code § 12651(a)(7) by knowingly making, using and/or causing to make or use

25    false records and statements to conceal, avoid, or decrease its obligation to return to the Medi-

26    Cal program the excessive capitated payments SCAN received from Medi-Cal for the period

27    2004 through and including 2007.

28    / / /

112.   Swoben is informed and believes, and upon such information and belief alleges, that as a result of SCAN's concealments and use of false records and statements, Medi-Cal paid more than it would have if SCAN had properly and truthfully disclosed the diagnoses supported by properly documented chart notes.

113.   As a result of SCAN's conduct, SCAN is liable to California for three times the amount of damages sustained by California as a result of the false and fraudulent billing, reporting and concealment practices alleged above.

114.   As a result of SCAN's conduct, <u>California Government Code</u> § 12651(a) provides that SCAN is liable to California for civil penalties of up to $10,000 for each such false and fraudulent billing, reporting and concealment.

115.   Swoben is also entitled to recover his attorneys fees, costs and expenses from the SCAN pursuant to <u>California Government Code</u> § 12652(g)(8).

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff and <u>Qui</u> <u>Tam</u> Relator James M. Swoben prays for relief as follows:

FOR THE FIRST CLAIM FOR RELIEF

1.   Treble the Government's damages according to proof;

2.   Civil penalties according to proof;

3.   A relator's award of up to 30% of the amounts recovered by or on behalf of the Government;

FOR THE SECOND CLAIM FOR RELIEF

4.   Treble the State of California's damages according to proof;

5.   Civil penalties according to proof;

6.   A relator's award of up to 50% of the amounts recovered by or on behalf of the State of California;

FOR THE THIRD CLAIM FOR RELIEF

7.   Treble the Government's damages according to proof;

-22-

SECOND AMENDED COMPLAINT

8. Civil penalties according to proof;

9. A relator's award of up to 30% of the amounts recovered by or on behalf of the Government;

### FOR THE FOURTH CLAIM FOR RELIEF

10. Treble the State of California's damages according to proof;

11. Civil penalties according to proof;

12. A relator's award of up to 50% of the amounts recovered by or on behalf of the State of California;

### FOR THE FIFTH CLAIM FOR RELIEF

13. Treble the Government's damages according to proof;

14. Civil penalties according to proof;

15. A relator's award of up to 30% of the amounts recovered by or on behalf of the Government;

### FOR THE SIXTH CLAIM FOR RELIEF

16. Treble the State of California's damages according to proof;

17. Civil penalties according to proof;

18. A relator's award of up to 50% of the amounts recovered by or on behalf of the State of California;

### FOR THE SEVENTH CLAIM FOR RELIEF

19. Treble the Government's damages according to proof;

20. Civil penalties according to proof;

21. A relator's award of up to 30% of the amounts recovered by or on behalf of the Government;

### FOR THE EIGHTH CLAIM FOR RELIEF

22. Treble the State of California's damages according to proof;

23. Civil penalties according to proof;

24. A relator's award of up to 50% of the amounts recovered by or on behalf of the State of California;

-23-

SECOND AMENDED COMPLAINT

<u>PROOF OF SERVICE</u>

STATE OF CALIFORNIA          )
                             )
COUNTY OF LOS ANGELES        )

I the undersigned, certify and declare that I am over the age of 18 years, employed in the County of Los Angeles, State of California, and not a party to the above-entitled cause.

On October 18, 2010, I served a true copy of:

**[PROPOSED] SECOND AMENDED COMPLAINT FOR VIOLATIONS OF FEDERAL FALSE CLAIMS ACT AND CALIFORNIA FALSE CLAIMS ACT; REQUEST FOR JURY TRIAL**

by depositing it in the United States Mail in a sealed envelope with the postage thereon fully prepaid addressed to the following:

John Lee                                          Attorneys for United States of America
OFFICE OF THE UNITED STATES ATTORNEY
300 N. Los Angeles Street, Room 7516
Los Angeles, CA 90012
                                                  Attorneys for State of California
Lora Fox Martin
DEPARTMENT OF JUSTICE
Bureau of Medi-Cal Fraud & Elder Abuse
1455 Frazee Road, Suite 315
San Diego, CA 92108
                                                  Co-Counsel for Plaintiff and Relator,
Abram J. Zinberg                                  James M. Swoben
412 Olive Avenue, Suite 528
Huntington Beach, CA 92648

Executed on October 18, 2010 at Los Angeles, California.

I hereby certify that I am a member of the Bar of this Court at whose direction the service was made.

I hereby certify under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

William K. Hanagami