William K. Hanagami, SBN 119832
THE HANAGAMI LAW FIRM
A PROFESSIONAL CORPORATION
21700 OXNARD STREET, SUITE 1150
WOODLAND HILLS, CA 91367-7572
(818) 716-8570 / (818) 716-8569 *FAX*
BillHanagami@esquire.la

Abram J. Zinberg, SBN 143399
412 OLIVE AVENUE, SUITE 528
HUNTINGTON BEACH 92648
(714) 960-9917 / (714) 374-9802 *FAX*
AbramZinberg@gmail.com

Attorneys for Plaintiff and Qui Tam Relator

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA [UNDER SEAL], <br><br> Plaintiffs, <br><br> vs. <br><br> [UNDER SEAL], <br><br> Defendants. | CASE NO.: CV09-5013 JFW(JEMx) <br><br> THIRD AMENDED COMPLAINT FOR VIOLATIONS OF FEDERAL FALSE CLAIMS ACT AND [UNDER SEAL] <br><br> [**UNDER SEAL** PER 31 U.S.C. § 3730(b)(2)] |

[UNDER SEAL]

William K. Hanagami, SBN 119832
THE HANAGAMI LAW FIRM
A PROFESSIONAL CORPORATION
21700 OXNARD STREET, SUITE 1150
WOODLAND HILLS, CA 91367-7572
(818) 716-8570 / (818) 716-8569 *FAX*
BillHanagami@esquire.la

Abram J. Zinberg, SBN 143399
412 OLIVE AVENUE, SUITE 528
HUNTINGTON BEACH 92648
(714) 960-9917 / (714) 374-9802 *FAX*
AbramZinberg@gmail.com

Attorneys for Plaintiff and Qui Tam Relator,
James M. Swoben

FILED
CLERK, U.S. DISTRICT COURT

NOV 2 3 2011
2:40

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF CALIFORNIA, *ex rel* JAMES M. SWOBEN,<br><br>Plaintiffs,<br><br>vs.<br><br>SCAN HEALTH PLAN, a California corporation, fka SENIOR CARE ACTION NETWORK; SENIOR CARE ACTION NETWORK, a business entity, form unknown; SCAN GROUP, a California corporation; SECURE HORIZONS, a business entity, form unknown; UNITED HEALTHCARE INSURANCE COMPANY, a Connecticut corporation; UNITED HEALTHCARE SERVICES, INC., a Minnesota corporation; UHIC, a business entity, form unknown; UNITEDHEALTH GROUP, a business entity, form unknown; UNITEDHEALTHCARE, a business entity, form unknown; UNITEDHEALTH, a business entity, form unknown; PACIFCARE HEALTH PLAN ADMINISTRATORS, INC., a corporation; PACIFICARE OF CALIFORNIA, a corporation; PACIFICARE LIFE AND HEALTH INSURANCE COMPANY, a corporation; and PACIFICARE HEALTH SYSTEMS, a corporation; WELLPOINT, a business entity, form unknown; AETNA, a business entity, form unknown; HEALTH NET, a business | CASE NO.: CV09-5013 JFW(JEMx)<br><br>THIRD AMENDED COMPLAINT FOR VIOLATIONS OF FEDERAL FALSE CLAIMS ACT AND CALIFORNIA FALSE CLAIMS ACT;  REQUEST FOR JURY TRIAL<br><br>[**UNDER SEAL** PER 31 U.S.C. § 3730(b)(2)] |

-1-

THIRD AMENDED COMPLAINT

entity, form unknown; HEALTHCARE PARTNERS, a business entity, form unknown; HEALTHCARE PARTNERS MEDICAL GROUP, a business entity, form unknown; and HEALTHCARE PARTNERS INDEPENDENT PHYSICIAN ASSOCIATION, a business entity, form unknown,

Defendants.

COMES NOW, Plaintiff and <u>Qui Tam</u> Relator James M. Swoben, individually and on behalf of the United States of America and the State of California, and alleges as follows:

## JURISDICTION AND VENUE

1. Plaintiff and <u>Qui Tam</u> Relator James M. Swoben (Swoben) files this action on behalf and in the name of the United States Government ("Government") seeking damages and civil penalties against the defendants for violations of 31 U.S.C. § 3729(a). Swoben also files this action on behalf and in the name of the State of California ("California") seeking damages and civil penalties against the defendants for violations of <u>California Government Code</u> § 12651(a).

2. This Court's jurisdiction over the claims for violations of 31 U.S.C. § 3729(a) is based upon 31 U.S.C. § 3732(a). This Court's jurisdiction over the claims for violations of <u>California Government Code</u> § 12651(a) is based upon 31 U.S.C. § 3732(b).

3. Venue is vested in this Court under 31 U.S.C. § 3732(a) because at least one of the defendants transacts business in the Central District of California and many acts constituting violations of 31 U.S.C. § 3729(a) occurred in the Central District of California.

## THE PARTIES

4. Swoben is a resident and citizen of the United States, the State of California, and of this District. Swoben brings this action of behalf of the Government under 31 U.S.C. § 3730(b) and on behalf of California under <u>California Government Code</u> § 12652(c).

-2-

THIRD AMENDED COMPLAINT

5.      At all times relevant, the Government funded the Medicare program which provides payment of healthcare services for, among others, those 65 years or older.  The Government provided a Medicare option known as Medicare+Choice, now known as Medicare Advantage, in which eligible Medicare beneficiaries could enroll with a managed care organization (MCO) contracted with the Government for a capitated rate paid by the Government that would provide at least those services provided to standard Medicare beneficiaries.

6.      At all time relevant, California administered and partially funded the Medi-Cal program (the Medicaid program in California) in which eligible Medi-Cal beneficiaries could enroll with a MCO contracted with California for a capitated rate paid by Medi-Cal that would provide at least those services provided to standard Medi-Cal beneficiaries.  The Government also partially funded the Medi-Cal program as part of the Government's Medicaid program.

7.      Defendant SCAN Health Plan and SCAN Group are and were corporations formed under the laws of the State of California, and transacted business in, among other places, the Central District of California.  SCAN Health Plan was formerly known and doing business as Senior Care Action Network.  Defendant Senior Care Action Network is a business entity, form unknown, that transacted business in, among other places, the Central District of California.  All defendants referenced in this paragraph are collectively referred in this Complaint as "SCAN."

8.      At all times relevant, SCAN was and is a health maintenance organization (HMO) that provides health care services in Southern California to the elderly covered under Medicare.  Between March 2004 and September 2006, Swoben was employed with SCAN.

9.      Defendant United Healthcare Insurance Company is and was a corporation formed under the laws of the State of Connecticut, and transacted business in, among other places, the Central District of California.  Defendant United Healthcare Services, Inc. is and was a corporation formed under the laws of the State of Minnesota, and transacted business in, among other places, the Central District of California. Defendants UHIC, UnitedHealth Group, UnitedHealthcare, UnitedHealth, and Secure Horizons are business entities, form

-3-

1  unknown, that transacted business in, among other places, the Central District of California.
2  Defendants Pacifcare Health Plan Administrators, Inc., Pacifcare of California, Pacifcare
3  Life and Health Insurance Company, and Pacificare Health Systems are corporations formed
4  under the laws of one or more states of the United States, and transacted business in, among
5  other places, the Central District of California.  All defendants referenced in this paragraph
6  are collectively referred in this Complaint as "Secure Horizons."

7       10.    Defendants Wellpoint, Aetna, and Health Net are business entities, form
8  unknown, that transacted business in, among other places, the Central District of California.
9  Defendants SCAN, Secure Horizons, Wellpoint, Aetna, and Health Net are collectively
10  referred in this Complaint as "defendant HMOs."

11       11.    Defendants HealthCare Partners, HealthCare Partners Medical Group, and
12  HealthCare Partners Independent Physician Association are business entities, form unknown,
13  that transacted business in, among other places, the Central District of California.  Defendants
14  HealthCare Partners, HealthCare Partners Medical Group, and HealthCare Partners
15  Independent Physician Association are collectively referred in this Complaint as "HealthCare
16  Partners."

17
18                                          __COMMON ALLEGATIONS__

19       12.    During or after about 1984, SCAN was awarded a contract by the Government
20  to operate as a Social HMO Demonstration Project ("Social HMO contract").  The purpose
21  of the Social HMO Demonstration Project was to explore the viability of preventing or
22  delaying older-adult institutionalization in skilled-nursing facilities by providing such eligible
23  individuals with a combination of healthcare and personal care services, including homemaker
24  services, personal-care services, adult day care, respite care, and medical transportation.
25  SCAN served, among other places, the California counties of Los Angeles, Riverside and San
26  Bernardino.  Under the terms of the Social HMO contract, SCAN agreed to provide such
27  services to Medicare+Choice, now Medicare Advantage, beneficiaries for a monthly capitated
28  payment paid by the Government.  Plaintiff is informed and believes that during and after

THIRD AMENDED COMPLAINT

1  2001, the Government paid SCAN an additional monthly capitated rate of approximately $800
2  per nursing home certifiable (NHC) beneficiary. Plaintiff is informed and believes that the
3  Social HMO contract ended on or about December 31, 2007.

4      13.    During or about 2001, California awarded a contract to SCAN (the "Medi-Cal
5  contract") to provide home and community-based long-term care to Medi-Cal beneficiaries
6  that were 65 years of age or older and eligible for Medicare Parts A and B. The purpose of
7  this contract was to keep senior citizens out of long-term placement in skilled-nursing
8  facilities. The Medi-Cal contract was extended or renewed until about December 31, 2007.
9  Plaintiff is informed and believes that SCAN received a monthly capitated rate of
10  approximately $3,300 per Medi-Cal beneficiary from Medi-Cal.

11      14.    The services SCAN was to provide under its Medi-Cal contract were included
12  in the services SCAN undertook and provided under its Social HMO contract with the
13  Government.

14      15.    SCAN provided services to numerous patients that were beneficiaries under both
15  the Medicare Social HMO contract and the Medi-Cal contract ("dual eligible beneficiaries").
16  During or about 2006, Swoben discovered that although SCAN undertook and provided such
17  dual eligible beneficiaries the care and services that were covered and paid for by the
18  Government under the Medicare Social HMO contract, SCAN continued to bill for and receive
19  capitated monthly payments of approximately $3,300 per beneficiary from Medi-Cal without
20  reduction in payment for the care and services SCAN undertook and provided under the
21  Medicare Social HMO contract.

22      16.    Under applicable law, Medicare is primary and Medi-Cal secondary in
23  connection with the care and services undertook and rendered by SCAN to the dual eligible
24  beneficiaries. Plaintiff is informed and believes that by law, or the terms of SCAN's contracts
25  with the Government or California, SCAN was required to not bill, and/or not retain payments
26  from, Medi-Cal for undertaking the services rendered to the dual eligible beneficiaries to the
27  extent such services were covered and paid for under the Medicare Social HMO contract.
28  Plaintiff is informed and believes that Medi-Cal's overpayments for dual eligible NHC

-5-

THIRD AMENDED COMPLAINT

beneficiaries amount to at least $800 per NHC beneficiary between 2001 and 2007 amounting to more than $200 million.

17.     SCAN was required to periodically provide Medicare and Medi-Cal cost reports and other financial reports and information reflecting SCAN's true cost to furnish the services to be provided under the Medicare Social HMO contract and Medi-Cal contract, respectively. The purpose of such requirement was, among other things, so that Medicare and Medi-Cal could determine if the capitated rate paid to SCAN under the Medicare Social HMO contract or Medi-Cal contract, respectively, was excessive in light of SCAN's costs to furnish services under such contract.  If SCAN's costs of furnishing such services under the Medicare Social HMO contract or Medi-Cal contract were significantly lower than the capitated rate paid to SCAN by Medicare or Medi-Cal, respectively, the capitated rate would be lowered accordingly.

18.     SCAN's fraudulent billing practices included failing to submit cost reports and other financial reports and information to Medi-Cal that disclosed SCAN's true cost (in light of SCAN's receipt of monies from the Medicare Social HMO contract) of the services to be provided under the Medi-Cal contract, or alternatively, submitting cost reports and other financial reports and information to Medi-Cal that failed to disclose, among other things, SCAN's receipts of monies from the Medicare Social HMO contract.  SCAN's utilization of such fraudulent practices and concealments caused Medi-Cal to overpay SCAN for services it already undertook by virtue of, among other things, the Medicare Social HMO contract, and concealed such overpayments. At all times relevant, SCAN was aware that such overpayments by Medi-Cal were due and owing to Medi-Cal, but SCAN continued to conceal said overpayments.

19.     SCAN knew that its cost reports, loss ratio reports, and other financial reports submitted to Medi-Cal were fraudulent as evidenced by the fact that its outside actuaries refused to sign and approve such submissions.  Further SCAN knew or should have known that it had the ability to provide Medi-Cal the true costs of the services to be provided under the Medi-Cal contract, but failed to do so because SCAN knew that its capitated rates would

be reduced if such information was provided to Medi-Cal.

## FIRST CLAIM FOR RELIEF

### (Violation of 31 U.S.C. § 3729(a) against SCAN)

20.     Plaintiff realleges and incorporates by reference paragraphs 1 through 19, inclusive, of this complaint as though fully set forth at length.

21.     At all times mentioned, SCAN routinely and repeatedly violated 31 U.S.C. § 3729(a)(1) by knowingly presenting and/or causing to present to agents, contractors or employees of the Government false and fraudulent billings for payment and approval.

22.     At all times mentioned, SCAN routinely and repeatedly violated 31 U.S.C. § 3729(a)(2) by knowingly making, using, and/or causing to make or use false records and statements to get false and excessive billings paid or approved by Medicare and Medi-Cal.

23.     At all times mentioned, SCAN routinely and repeatedly violated 31 U.S.C. § 3729(a)(4) by improperly retaining and concealing the excessive capitated payments SCAN received.

24.     At all times mentioned, SCAN routinely and repeatedly violated 31 U.S.C. § 3729(a)(7) by knowingly making, using and/or causing to make or use false records and statements to conceal, avoid, or decrease its obligation to return to the Medi-Cal program the excessive capitated payments SCAN received.

25.     Swoben is informed and believes, and upon such information and belief alleges, that as a result of SCAN's concealments and use of false records and statements, Medi-Cal paid in excess of $200 million more than it would have if SCAN had properly and truthfully billed and reported, and revealed the excessive payments received.

26.     As a result of SCAN's conduct, SCAN is liable to the Government for three times the amount of damages sustained by the Government as a result of the false and fraudulent billing, reporting and concealment practices alleged above.

27.     As a result of SCAN's conduct, 31 U.S.C. § 3729(a) provides that SCAN is liable to the Government for civil penalties between $5,000 and $10,000 for each such false

1  and fraudulent billing, reporting and concealment.

2        28.   Swoben is also entitled to recover his attorneys fees, costs and expenses from

3  the SCAN pursuant to 31 U.S.C. § 3730(d).

4

5  SECOND CLAIM FOR RELIEF

6  (Violation of California Government Code § 12651(a) against SCAN)

7        29.   Plaintiff realleges and incorporates by reference paragraphs 1 through 28,

8  inclusive, of this complaint as though fully set forth at length.

9        30.   At all times mentioned, SCAN routinely and repeatedly violated California

10  Government Code § 12651(a)(1) by knowingly presenting and/or causing to present to

11  California employees, agents and/or contractors false and fraudulent billings for payment and

12  approval.

13        31.   At all times mentioned, defendants routinely and repeatedly violated California

14  Government Code § 12651(a)(2) by knowingly making, using, and/or causing to make or use

15  false records and statements to get false and excessive billings paid or approved by Medi-Cal.

16        32.   At all times mentioned, SCAN routinely and repeatedly violated California

17  Government Code § 12651(a)(4) by improperly retaining and concealing the excessive

18  capitated payments SCAN received.

19        33.   At all times mentioned, SCAN routinely and repeatedly violated California

20  Government Code § 12651(a)(7) by knowingly making, using and/or causing to make or use

21  false records and statements to conceal, avoid, or decrease its obligation to return to the Medi-

22  Cal program the excessive capitated payments SCAN received.

23        34.   Swoben is informed and believes, and upon such information and belief alleges,

24  that as a result of SCAN's concealments and use of false records and statements, Medi-Cal

25  paid in excess of $200 million more than it would have if SCAN had properly and truthfully

26  billed and reported, and revealed the excessive payments received.

27        35.   As a result of SCAN's conduct, SCAN is liable to California for up to three

28  times the amount of damages sustained by California as a result of the false and fraudulent

-8-

1  billing, reporting and concealment practices alleged above.

2      36.    As a result of SCAN's conduct, <u>California Government Code</u> §12651(a)

3  provides that defendants are liable to California for civil penalties of up to $10,000 for each

4  such false and fraudulent billing, reporting and concealment.

5      37.    Swoben is also entitled to recover his attorneys fees, costs and expenses from

6  SCAN pursuant to <u>California Government Code</u> § 12652(g)(8).

7

8  <u>THIRD CLAIM FOR RELIEF</u>

9  (Violation of 31 U.S.C. § 3729(a) against SCAN and Secure Horizons)

10  [Up-Coding]

11      38.    Plaintiff realleges and incorporates by reference paragraphs 1 through 19,

12  inclusive, of this complaint as though fully set forth at length.

13      39.    At all times relevant, SCAN and Secure Horizons, were and/or operated health

14  maintenance organizations that had HMO contracts with Medicare and Medi-Cal. At all times

15  relevant, SCAN and Secure Horizons, as did other HMOs, submitted diagnoses codes of their

16  respective HMO patients to the Government and California. The diagnosis codes were used

17  to develop risk scores that were used to adjust the capitated payment rates paid by the

18  Government and California. The risk scores compensated an HMO with a population of

19  patients with more severe illnesses than normal through higher capitation rates. Likewise, an

20  HMO with a population of patients with less severe illnesses than normal would see a

21  downward adjustment of its capitation rates because it was servicing a healthier than normal

22  population of patients. SCAN and Secure Horizons were allowed an 18 month period in

23  which to make retrospective corrections to their data submissions of the Government and

24  California.

25      40.    Under applicable Medicare and Medi-Cal regulations, defendants can only

26  submit diagnosis codes to the Government and California, respectively, that are supported by

27  properly documented chart notes.

28      41.    Beginning in or about 2005 and continuing thereafter, Secure Horizons retained

-9-

coding companies to perform a retrospective review of the medical charts of tens of thousands of its patients with severe illnesses.  Although Secure Horizons provided such coding companies with the lists of patients whose charts were to be reviewed, Secure Horizons concealed from the coding companies what diagnosis codes had been previously submitted to the Government and California.

42.  Beginning in or about 2005 and continuing thereafter, SCAN retained coding companies to perform a retrospective review of the medical charts of approximately 10,000 of its patients with severe illnesses.  Although SCAN provided such coding companies with the lists of patients whose charts were to be reviewed, SCAN concealed from the coding companies what diagnosis codes had been previously submitted to the Government and California.

43.  The coding companies conducted their review of the medical charts of tens of thousands of SCAN and Secure Horizon patients, determined the diagnosis codes that were supported by proper documentation of the reviewed medical charts, and provided their results to SCAN and Secure Horizons, respectively.  The coding companies' review resulted in (a) diagnosis codes that were supported by proper documentation of the reviewed medical charts that had been previously submitted to the Government and California, and (b) new diagnosis codes that were supported by proper documentation of the reviewed medical charts that had not been previously submitted to the Government and California.  Because SCAN and Secure Horizons concealed from the coding companies what diagnosis codes had been previously submitted to the Government and California, the results of the coding companies' review did not identify the diagnosis codes unsupported by proper documentation of the reviewed medical charts that had been previously submitted to the Government and California.

44.  SCAN and Secure Horizons made no effort to advise the Government and California of the diagnosis codes for the reviewed medical charts that were not supported, and made no effort to withdraw from the Government and California the previously submitted diagnosis codes that were not supported by proper documentation of the reviewed medical charts.

45. Further, the defendants had a duty to have compliance programs in place to monitor and detect attempts to artificially increase risk scores and capitated payments.

46. SCAN and Secure Horizons improperly conceived, planned and conducted the coding companies' reviews by not causing the previously submitted diagnosis codes that were unsupported by the coding companies' reviews to be corrected and withdrawn from the Government and California. Rather, the procedures and methods developed and used by SCAN and Secure Horizons were biased in favor of "up coding" the patients' diagnoses because the previously submitted diagnoses that were not unsupported by the coding companies' reviews were not corrected and withdrawn from the Government and California. SCAN and Secure Horizons did so with the knowledge and intent that the coding companies' review would only increase, and not decrease, the number of diagnoses, and thus their respective risk scores in order to increase capitated payments paid by the Government and California.

47. During or about 2005 or 2006, SCAN and Secure Horizons submitted to the Government and California the diagnosis codes determined by the coding companies' review, knowing that the effect of such submissions would only increase the number of diagnoses, and thus artificially inflate their respective risk scores.

48. As a result of the acts and concealments of SCAN and Secure Horizons, their respective capitated payments paid by the Government and California became inflated due to the artificially high risk scores.

49. At all times mentioned, SCAN and Secure Horizons routinely and repeatedly violated 31 U.S.C. § 3729(a)(1) by knowingly presenting and/or causing to present to agents, contractors or employees of the Government false and fraudulent billings for payment and approval during and after 2004.

50. At all times mentioned, SCAN and Secure Horizons routinely and repeatedly violated 31 U.S.C. § 3729(a)(2) by knowingly making, using, and/or causing to make or use false records and statements to get false and excessive billings paid or approved under the Medicare and Medi-Cal contracts during and after 2004.

-11-

THIRD AMENDED COMPLAINT

51.     At all times mentioned, SCAN and Secure Horizons routinely and repeatedly violated 31 U.S.C. § 3729(a)(4) by improperly retaining and concealing the unsupported diagnosis codes and inflated risk scores that inflated the capitated payments they received under the Medicare and Medi-Cal contracts during and after 2004.

52.     At all times mentioned, SCAN and Secure Horizons routinely and repeatedly violated 31 U.S.C. § 3729(a)(7) by knowingly making, using and/or causing to make or use false records and statements to conceal, avoid, or decrease its obligation to return to the Medicare and Medi-Cal programs the inflated capitated payments they received during and after 2004.

53.     Swoben is informed and believes, and upon such information and belief alleges, that as a result of the concealments and use of false records and statements, Medicare and Medi-Cal paid more than they would have if SCAN and Secure Horizons had properly and truthfully billed and reported, and revealed and withdrawn the diagnosis codes that were not supported by their medical charts.

54.     As a result of their conduct, defendants are liable to the Government for three times the amount of damages sustained by the Government as a result of the false and fraudulent billing, reporting and concealment practices alleged above.

55.     As a result of defendants' conduct, 31 U.S.C. § 3729(a) provides that defendants are liable to the Government for civil penalties between $5,000 and $10,000 for each such false and fraudulent billing, reporting and concealment.

56.     Swoben is also entitled to recover his attorneys fees, costs and expenses from defendants pursuant to 31 U.S.C. § 3730(d).


## FOURTH CLAIM FOR RELIEF

(Violation of California Government Code § 12651(a) against SCAN and Secure Horizons)

[Up-Coding]

57.     Plaintiff realleges and incorporates by reference paragraphs 1 through 19, inclusive, and 39 through 56, inclusive, of this complaint as though fully set forth at length.

-12-

58.     At all times mentioned, SCAN and Secure Horizons routinely and repeatedly violated California Government Code § 12651(a)(1) by knowingly presenting and/or causing to present to California employees, agents and/or contractors false and fraudulent billings for payment and approval during and after 2004.

59.     At all times mentioned, SCAN and Secure Horizons routinely and repeatedly violated  California Government Code § 12651(a)(2) by knowingly making, using, and/or causing to make or use false records and statements to get false and excessive billings paid or approved under the Medi-Cal contract during and after 2004.

60.     At all times mentioned, SCAN and Secure Horizons routinely and repeatedly violated California Government Code § 12651(a)(4) by improperly retaining and concealing the unsupported diagnosis codes and inflated risk scores that inflated the capitated payments they received  under the Medi-Cal contract during and after 2004.

61.     At all times mentioned, SCAN and Secure Horizons routinely and repeatedly violated California Government Code § 12651(a)(7) by knowingly making, using and/or causing to make or use false records and statements to conceal, avoid, or decrease their obligation to return to the Medi-Cal program the inflated the capitated payments they received under the Medicare and Medi-Cal contracts during and after 2004.

62.     Swoben is informed and believes, and upon such information and belief alleges, that as a result of SCAN's and Secure Horizons' concealments and use of false records and statements, Medi-Cal paid more than it would have if defendants had properly and truthfully billed and reported, and revealed and withdrawn the diagnosis codes that were not supported by their medical charts.

63.     As a result of their conduct, defendants are liable to California for three times the amount of damages sustained by California as a result of the false and fraudulent billing, reporting and concealment practices alleged above.

64.     As a result of their conduct, California Government Code § 12651(a)  provides that defendants are liable to California for civil penalties of up to $10,000 for each such false and fraudulent billing, reporting and concealment.

-13-

65.     Swoben is also entitled to recover his attorneys fees, costs and expenses from defendants pursuant to <u>California Government Code</u> § 12652(g)(8).

## FIFTH CLAIM FOR RELIEF

(Violation of 31 U.S.C. § 3729(a) against SCAN)

[PACE]

66.     Plaintiff realleges and incorporates by reference paragraphs 1 through 19, inclusive, of this complaint as though fully set forth at length.

67.     SCAN's Medi-Cal contract was initially for the period of July 1, 2001 through June 30, 2004, and was extended or renewed a number of times until about December 31, 2007.

68.     <u>California Welfare & Institutions Code</u> §14598(c) provides that the SCAN Medi-Cal contract could not be renewed after June 30, 2004.  Further, SCAN was ineligible to receive funds after June 30, 2004 under the Medi-Cal contract because SCAN was not a PACE[1] organization as defined under 42 C.F.R. 460.6 because SCAN did not have an agreement with the Government's Centers of Medicare and Medicaid Services (CMS) and California for participation in the PACE program.  Accordingly, SCAN's requests for capitation payments from Medi-Cal for the period July 1, 2004 through December 1, 2007 were fraudulent because SCAN was not a PACE organization.

69.     At all times mentioned, SCAN routinely and repeatedly violated 31 U.S.C. § 3729(a)(1) by knowingly presenting and/or causing to present to agents, contractors or employees of the Government false and fraudulent billings for payment and approval for the period July 1, 2004 through December 1, 2007.

70.     At all times mentioned, SCAN routinely and repeatedly violated 31 U.S.C. § 3729(a)(2) by knowingly making, using, and/or causing to make or use false records and statements to get false and excessive billings paid or approved under the Medi-Cal contract for the period July 1, 2004 through December 1, 2007.

---

[1]PACE means "Programs of All-Inclusive Care for the Elderly."  (*See,* 42 C.F.R. 460.6.)

THIRD AMENDED COMPLAINT

71. At all times mentioned, SCAN routinely and repeatedly violated 31 U.S.C. § 3729(a)(4) by improperly retaining and concealing the unauthorized capitated payments SCAN received under the Medi-Cal contract for the period July 1, 2004 through December 1, 2007.

72. At all times mentioned, SCAN routinely and repeatedly violated 31 U.S.C. § 3729(a)(7) by knowingly making, using and/or causing to make or use false records and statements to conceal, avoid, or decrease its obligation to return to the Medi-Cal program the unauthorized capitated payments SCAN received under the Medi-Cal contract for the period July 1, 2004 through December 1, 2007.

73. Swoben is informed and believes, and upon such information and belief alleges, that as a result of SCAN's concealments and use of false records and statements, Medi-Cal paid more than it would have if SCAN had properly and truthfully billed and reported, and revealed that it was ineligible to receive payments under the Medi-Cal contract because SCAN was not a PACE organization.

74. As a result of SCAN's conduct, SCAN is liable to the Government for three times the amount of damages sustained by the Government as a result of the false and fraudulent billing, reporting and concealment practices alleged above.

75. As a result of SCAN's conduct, 31 U.S.C. § 3729(a) provides that SCAN is liable to the Government for civil penalties between $5,000 and $10,000 for each such false and fraudulent billing, reporting and concealment.

76. Swoben is also entitled to recover his attorneys fees, costs and expenses from the SCAN pursuant to 31 U.S.C. § 3730(d).

## SIXTH CLAIM FOR RELIEF

(Violation of <u>California Government Code</u> § 12651(a) against SCAN)

[PACE]

77. Plaintiff realleges and incorporates by reference paragraphs 1 through 19, inclusive, of this complaint as though fully set forth at length.

78. SCAN's Medi-Cal contract was initially for the period of July 1, 2001 through

-15-

THIRD AMENDED COMPLAINT

1   June 30, 2004, and was extended or renewed a number of times until about December 31,

2   2007.

3       79.    <u>California Welfare & Institutions Code</u> §14598(c) provides that the SCAN

4   Medi-Cal contract could not be renewed after June 30, 2004.  Further, SCAN was ineligible

5   to receive funds after June 30, 2004 under the Medi-Cal contract because SCAN was not a

6   PACE[2] organization as defined under 42 C.F.R. 460.6 because SCAN did not have an

7   agreement with the Government's Centers of Medicare and Medicaid Services (CMS) and

8   California for participation in the PACE program.  Accordingly, SCAN's requests for

9   capitation payments from Medi-Cal for the period July 1, 2004 through December 1, 2007

10  were fraudulent because SCAN misrepresented that it had complied with all applicable laws

11  and regulations in connection with such payments, even though SCAN was not a PACE

12  organization.

13      80.    At all times mentioned, SCAN routinely and repeatedly violated <u>California</u>

14  <u>Government Code</u> § 12651(a)(1) by knowingly presenting and/or causing to present to

15  California employees, agents and/or contractors false and fraudulent billings for payment and

16  approval for the period July 1, 2004 through December 1, 2007.

17      81.    At all times mentioned, SCAN routinely and repeatedly violated  <u>California</u>

18  <u>Government Code</u> § 12651(a)(2) by knowingly making, using, and/or causing to make or use

19  false records and statements to get false and excessive billings paid or approved under the

20  Medi-Cal contract for the period July 1, 2004 through December 1, 2007.

21      82.    At all times mentioned, SCAN routinely and repeatedly violated <u>California</u>

22  <u>Government Code</u> § 12651(a)(4) by improperly retaining and concealing the unauthorized

23  capitated payments SCAN received  under the Medi-Cal contract for the period July 1, 2004

24  through December 1, 2007.

25      83.    At all times mentioned, SCAN routinely and repeatedly violated <u>California</u>

26  <u>Government Code</u> § 12651(a)(7) by knowingly making, using and/or causing to make or use

27  false records and statements to conceal, avoid, or decrease its obligation to return to the Medi-

28

[2]PACE means "Programs of All-Inclusive Care for the Elderly."  (*See,* 42 C.F.R. 460.6.)

THIRD AMENDED COMPLAINT

Cal program the unauthorized capitated payments SCAN received under the Medi-Cal contract for the period July 1, 2004 through December 1, 2007.

84.    Swoben is informed and believes, and upon such information and belief alleges, that as a result of SCAN's concealments and use of false records and statements, Medi-Cal paid more than it would have if SCAN had properly and truthfully billed and reported, and revealed that it was ineligible to receive payments under the Medi-Cal contract because SCAN was not a PACE organization.

85.    As a result of SCAN's conduct, SCAN is liable to California for three times the amount of damages sustained by California as a result of the false and fraudulent billing, reporting and concealment practices alleged above.

86.    As a result of SCAN's conduct, <u>California Government Code</u> § 12651(a) provides that SCAN is liable to California for civil penalties of up to $10,000 for each such false and fraudulent billing, reporting and concealment.

87.    Swoben is also entitled to recover his attorneys fees, costs and expenses from the SCAN pursuant to <u>California Government Code</u> § 12652(g)(8).

<u>SEVENTH CLAIM FOR RELIEF</u>

(Violation of 31 U.S.C. § 3729(a) against SCAN)

[False Diagnosis Reporting]

88.    Plaintiff realleges and incorporates by reference paragraphs 1 through 19, inclusive, of this complaint as though fully set forth at length.

89.    At all times relevant, SCAN was and/or operated a health maintenance organization that had HMO contracts with Medicare and Medi-Cal.  At all times relevant, SCAN, as did other HMOs, submitted diagnoses codes of its HMO patients to the Government and California.  The diagnosis codes were used to develop risk scores that were used to adjust the capitated payment rates paid by the Government and California.  The risk scores compensated an HMO with a population of patients with more severe illnesses than normal through higher capitation rates.  Likewise, an HMO with a population of patients with less

-17-

1  severe illnesses than normal would see a downward adjustment of its capitation rates because
2  it was servicing a healthier than normal population of patients.

3       90.    Under applicable Medicare and Medi-Cal regulations, HMOs can only submit
4  diagnosis codes to the Government and California, respectively, that are supported by properly
5  documented chart notes.

6       91.    During or about 2005, Medicare conducted a review of about 200 of SCAN's
7  2003 medical charts of its Medicare patients, and determined that about 40% (more than twice
8  the norm in the industry) of the reviewed chart notes did not support the 2003 diagnosis codes
9  previously supplied to Medicare. As a result, Medicare disallowed the diagnosis codes of the
10  200 reviewed charts that were not supported by properly documented chart notes.  During
11  2003, SCAN had more than 90,000 Medicare patients.

12       92.    The procedures utilized by SCAN to document chart notes and diagnoses, and
13  submit diagnosis codes to the Government and California remained the same between and
14  including 2003 and 2006. SCAN did not take any corrective action to reduce its error rate (the
15  percentage of submitted diagnosis codes unsupported by properly documented chart notes)
16  during that time.

17       93.    Based upon the results of Medicare 2005 review, Plaintiff is informed and
18  believes, and upon such information and belief alleges, that 40% of the 2004 and 2005
19  diagnosis codes SCAN submitted to the Government and California were not supported by
20  properly documented chart notes as SCAN utilized the same procedures to document chart
21  notes and submit diagnosis codes to the Government and California.  In spite of the
22  excessively high error rate, SCAN took no action to review the 2004 and 2005 diagnosis codes
23  submitted to the Government and California, and failed to either (a) ensure that the diagnosis
24  codes were supported by properly documented chart notes, or (b) withdraw the 2004 and 2005
25  diagnosis codes that were not supported by properly documented chart notes.

26       94.    Plaintiff is informed and believes, and upon such information and belief alleges,
27  that 40% of the diagnosis codes SCAN submitted to the Government and California for 2006
28  and beyond were not supported by properly documented chart notes as SCAN utilized the

-18-

THIRD AMENDED COMPLAINT

same procedures to document chart notes and submit diagnosis codes to the Government and California that were in place during 2003.

95.    As a result of SCAN's submission of diagnosis codes to the Government and California since 2004, 40% of which are invalid because they were not supported by properly documented chart notes, failure to ensure that the diagnosis codes were supported by properly documented chart notes, and failure to withdraw the 2004 and 2005 diagnosis codes that were not supported by properly documented chart notes, the Government and California were induced to and did pay capitation rates to SCAN that were excessively high.

96.    During each year in question, SCAN's authorized officer or representative submitted to the Government and California an attestation that SCAN had truthfully submitted all required information to the Government and California, respectively, and had complied with all applicable laws and Medicare and Medi-Cal regulations.

97.    At all times mentioned, SCAN routinely and repeatedly violated 31 U.S.C. § 3729(a)(1) by knowingly presenting and/or causing to present to agents, contractors or employees of the Government false and fraudulent billings for payment and approval by Medicare and Medi-Cal for the period 2004 through and including 2007.

98.    At all times mentioned, SCAN routinely and repeatedly violated 31 U.S.C. § 3729(a)(2) by knowingly making, using, and/or causing to make or use false records and statements to get false and excessive billings paid or approved by Medicare and Medi-Cal for the period 2004 through and including 2007.

99.    At all times mentioned, SCAN routinely and repeatedly violated 31 U.S.C. § 3729(a)(4) by improperly retaining and concealing the excessive capitated payments SCAN received from Medicare and Medi-Cal for the period 2004 through and including 2007.

100.    At all times mentioned, SCAN routinely and repeatedly violated 31 U.S.C. § 3729(a)(7) by knowingly making, using and/or causing to make or use false records and statements to conceal, avoid, or decrease its obligation to return to the Medicare and Medi-Cal programs the excessive capitated payments SCAN received from the Government and California for the period 2004 through and including 2007.

THIRD AMENDED COMPLAINT

101.  As a result of SCAN's conduct, SCAN is liable to the Government for three times the amount of damages sustained by the Government as a result of the false and fraudulent billing, reporting and concealment practices alleged above.

102.  As a result of SCAN's conduct, 31 U.S.C. § 3729(a) provides that SCAN is liable to the Government for civil penalties between $5,000 and $10,000 for each such false and fraudulent billing, reporting and concealment.

103.  Swoben is also entitled to recover his attorneys fees, costs and expenses from the SCAN pursuant to 31 U.S.C. § 3730(d).

## EIGHTH CLAIM FOR RELIEF

(Violation of California Government Code § 12651(a) against SCAN)

[False Diagnosis Reporting]

104.  Plaintiff realleges and incorporates by reference paragraphs 1 through 19, inclusive, of this complaint as though fully set forth at length.

105.  At all times relevant, SCAN was and/or operated a health maintenance organization that had HMO contracts with Medicare and Medi-Cal. At all times relevant, SCAN, as did other HMOs, submitted diagnoses codes of its HMO patients to the Government and California. The diagnosis codes were used to develop risk scores that were used to adjust the capitated payment rates paid by the Government and California. The risk scores compensated an HMO with a population of patients with more severe illnesses than normal through higher capitation rates. Likewise, an HMO with a population of patients with less severe illnesses than normal would see a downward adjustment of its capitation rates because it was servicing a healthier than normal population of patients.

106.  Under applicable Medicare and Medi-Cal regulations, HMOs can only submit diagnosis codes to the Government and California, respectively, that are supported by properly documented chart notes.

107.  During or about 2005, Medicare conducted a review of about 200 of SCAN's 2003 medical charts of its Medicare patients, and determined that about 40% (more than twice

-20-

THIRD AMENDED COMPLAINT

the norm in the industry) of the reviewed chart notes did not support the 2003 diagnosis codes previously supplied to Medicare. As a result, Medicare disallowed the diagnosis codes of the 200 reviewed charts that were not supported by properly documented chart notes. During 2003, SCAN had more than 19,000 Medi-Cal patients.

108. The procedures utilized by SCAN to document chart notes and diagnoses, and submit diagnosis codes to the Government and California, remained the same between and including 2003 and 2006. SCAN did not take any corrective action to reduce its error rate (the percentage of submitted diagnosis codes unsupported by properly documented chart notes) during that time.

109. Based upon the results of Medicare 2005 review, Plaintiff is informed and believes, and upon such information and belief alleges, that 40% of the 2004 and 2005 diagnosis codes SCAN submitted to California were not supported by properly documented chart notes as SCAN utilized the same procedures to document chart notes and submit diagnosis codes to the Government and California. In spite of the excessively high error rate, SCAN took no action to review the 2004 and 2005 diagnosis codes submitted to California, and failed to either (a) ensure that the diagnosis codes were supported by properly documented chart notes, or (b) withdraw the 2004 and 2005 diagnosis codes that were not supported by properly documented chart notes.

110. Plaintiff is informed and believes, and upon such information and belief alleges, that 40% of the diagnosis codes SCAN submitted to California for 2006 and beyond were not supported by properly documented chart notes as SCAN utilized the same procedures to document chart notes and submit diagnosis codes to the Government and California that were in place during 2003.

111. As a result of SCAN's submission of diagnosis codes to the Government and California since 2004, 40% of which are invalid because they were not supported by properly documented chart notes, failure to ensure that the diagnosis codes were supported by properly documented chart notes, and failure to withdraw the 2004 and 2005 diagnosis codes that were not supported by properly documented chart notes, California was induced to and did pay

-21-

1    capitation rates to SCAN that were excessively high.

2       112.    During each year in question, SCAN's authorized officer or representative
3 submitted to the Government and California an attestation that SCAN had truthfully submitted
4 all required information to the Government and California, respectively, and had complied
5 with all applicable laws and Medicare and Medi-Cal regulations.

6       113.    At all times mentioned, SCAN routinely and repeatedly violated <u>California</u>
7 <u>Government Code</u> § 12651(a)(2) by knowingly making, using, and/or causing to make or use
8 false records and statements to get false and excessive billings paid or approved by Medi-Cal
9 for the 2004 through and including 2007.

10       114.    At all times mentioned, SCAN routinely and repeatedly violated <u>California</u>
11 <u>Government Code</u> § 12651(a)(4) by improperly retaining and concealing the excessive
12 capitated payments SCAN received from Medi-Cal for the period 2004 through and including
13 2007.

14       115.    At all times mentioned, SCAN routinely and repeatedly violated <u>California</u>
15 <u>Government Code</u> § 12651(a)(7) by knowingly making, using and/or causing to make or use
16 false records and statements to conceal, avoid, or decrease its obligation to return to the Medi-
17 Cal program the excessive capitated payments SCAN received from Medi-Cal for the period
18 2004 through and including 2007.

19       116.    Swoben is informed and believes, and upon such information and belief alleges,
20 that as a result of SCAN's concealments and use of false records and statements, Medi-Cal
21 paid more than it would have if SCAN had properly and truthfully disclosed the diagnoses
22 supported by properly documented chart notes.

23       117.    As a result of SCAN's conduct, SCAN is liable to California for three times the
24 amount of damages sustained by California as a result of the false and fraudulent billing,
25 reporting and concealment practices alleged above.

26       118.    As a result of SCAN's conduct, <u>California Government Code</u> § 12651(a)
27 provides that SCAN is liable to California for civil penalties of up to $10,000 for each such
28 false and fraudulent billing, reporting and concealment.

119.   Swoben is also entitled to recover his attorneys fees, costs and expenses from the SCAN pursuant to <u>California Government Code</u> § 12652(g)(8).

<u>NINTH CLAIM FOR RELIEF</u>

(Violation of 31 U.S.C. § 3729(a) against all defendants)

[Up-Coding]

120.   Plaintiff realleges and incorporates by reference paragraphs 1 through 19, inclusive, of this complaint as though fully set forth at length.

121.   At all times relevant, defendant HMOs, as did other HMOs, submitted diagnoses codes of their respective HMO patients to the Government and California.  The diagnosis codes were used to develop risk scores that were used to adjust the capitated payment rates paid by the Government and California.  The risk scores compensated an HMO with a population of patients with more severe illnesses than normal through higher capitation rates. Likewise, an HMO with a population of patients with less severe illnesses than normal would see a downward adjustment of its capitation rates because it was servicing a healthier than normal population of patients. Defendants were allowed an 18 month period in which to make retrospective corrections to their data submissions of the Government and California.

122.   Under applicable Medicare and Medi-Cal regulations, defendants can only submit diagnosis codes to the Government and California, respectively, that are supported by properly documented chart notes.

123.   HealthCare Partners is a medical group that provided medical services to the HMO patients of, and under various contracts with, defendant HMOs. Defendant HMOs utilized the diagnosis codes of its various contracted healthcare providers, such as and including HealthCare Partners, to develop risk scores that were used to adjust the capitated payment rates paid by the Government and California to defendant HMOs.

124.   During or after June 2008, HealthCare Partners utilized software, HCC Manager, to evaluate claims data and reviewed the medical charts of more than 125,000 of HealthCare Partners' patients with severe illnesses. Healthcare partners used the data for prospective care,

THIRD AMENDED COMPLAINT

1  as well as retrospective review of its Medicare and Medi-Cal patients' medical charts for
2  previous years' submissions.

3      125.   HealthCare Partners conducted its review of the medical charts of thousands of
4  its patients, determined the diagnosis codes that were supported by proper documentation of
5  the reviewed medical charts, and provided their results to the defendant HMOs. HealthCare
6  Partners' review resulted in (a) diagnosis codes that were supported by proper documentation
7  of the reviewed medical charts that had been previously submitted to the Government and
8  California, and (b) new diagnosis codes that were supported by proper documentation of the
9  reviewed medical charts that had not been previously submitted to the Government and
10  California. The results of HealthCare Partners' review did not identify the diagnosis codes
11  unsupported by proper documentation of the reviewed medical charts that had been previously
12  submitted to the Government and California.

13      126.   HealthCare Partners and defendant HMOs made no effort to advise the
14  Government and California of the diagnosis codes for the reviewed medical charts that were
15  unsupported by proper documentation, and made no effort to withdraw from the Government
16  and California the previously submitted diagnosis codes that were unsupported by proper
17  documentation of the reviewed medical charts.

18      127.   HealthCare Partners and defendant HMOs improperly conceived, planned and
19  conducted the coding company's reviews by not causing the previously submitted diagnosis
20  codes that were unsupported by HealthCare Partners' reviews to be corrected and withdrawn
21  from the Government and California. Rather, the procedures and methods developed and used
22  were biased in favor of "up coding" the patients' diagnoses because the previously submitted
23  diagnoses that were not unsupported by HealthCare Partners' reviews were not corrected and
24  withdrawn from the Government and California. HealthCare Partners and defendant HMOs
25  did so with the knowledge and intent that HealthCare Partners' reviews would only increase,
26  and not decrease, the number of diagnoses, and thus their respective risk scores in order to
27  increase capitated payments paid by the Government and California.

28      128.   During or about 2008-2011, HealthCare Partners and defendant HMOs

-24-

THIRD AMENDED COMPLAINT

submitted to the Government and California the diagnosis codes determined by HealthCare Partners' reviews, knowing that the effect of such submissions would only increase the number of diagnoses, and thus artificially inflate their respective risk scores and capitated payments.

129.   As a result of the acts and concealments of HealthCare Partners and defendant HMOs, their respective capitated payments paid by the Government and California became inflated due to the artificially high risk scores.

130.   Further, the defendant HMOs had a duty to have compliance programs in place to monitor and detect attempts to artificially increase risk scores and capitated payments.

131.   At all times mentioned, HealthCare Partners and defendant HMOs routinely and repeatedly violated 31 U.S.C. § 3729(a)(2) by knowingly making, using, and/or causing to make or use false records and statements to get false and excessive billings paid or approved under the Medicare and Medi-Cal contracts during and after 2008.

132.   At all times mentioned, HealthCare Partners and defendant HMOs routinely and repeatedly violated 31 U.S.C. § 3729(a)(4) by improperly retaining and concealing the unsupported diagnosis codes and inflated risk scores that inflated the capitated payments they received  under the Medicare and Medi-Cal contracts during and after 2008.

133.   At all times mentioned, HealthCare Partners and defendant HMOs routinely and repeatedly violated 31 U.S.C. § 3729(a)(7) by knowingly making, using and/or causing to make or use false records and statements to conceal, avoid, or decrease its obligation to return to the Medicare and Medi-Cal programs the inflated capitated payments they received during and after 2008.

134.   Swoben is informed and believes, and upon such information and belief alleges, that as a result of the concealments and use of false records and statements, Medicare and Medi-Cal paid more than they would have if  HealthCare Partners and defendant HMOs had properly and truthfully billed and reported, and revealed and withdrawn the diagnosis codes that were not supported by their medical charts.

135.   As a result of their conduct, defendants are liable to the Government for three times the amount of damages sustained by the Government as a result of the false and

-25-

1 | fraudulent billing, reporting and concealment practices alleged above.

2 | 136.   As a result of defendants' conduct, 31 U.S.C. § 3729(a) provides that defendants
3 | are liable to the Government for civil penalties between $5,000 and $10,000 for each such
4 | false and fraudulent billing, reporting and concealment.

5 | 137.   Swoben is also entitled to recover his attorneys fees, costs and expenses from
6 | defendants pursuant to 31 U.S.C. § 3730(d).

7 |

8 | **TENTH CLAIM FOR RELIEF**

9 | (Violation of <u>California Government Code</u> § 12651(a) against all defendants)

10 | [Up-Coding]

11 | 138.   Plaintiff realleges and incorporates by reference paragraphs 1 through 19,
12 | inclusive, and 121 through 137, inclusive, of this complaint as though fully set forth at length.

13 | 139.   At all times mentioned, HealthCare Partners and defendant HMOs routinely and
14 | repeatedly violated <u>California Government Code</u> § 12651(a)(1) by knowingly presenting
15 | and/or causing to present to California employees, agents and/or contractors false and
16 | fraudulent billings for payment and approval during and after 2008.

17 | 140.   At all times mentioned, HealthCare Partners and defendant HMOs routinely and
18 | repeatedly violated <u>California Government Code</u> § 12651(a)(2) by knowingly making, using,
19 | and/or causing to make or use false records and statements to get false and excessive billings
20 | paid or approved under the Medi-Cal contract during and after 2008.

21 | 141.   At all times mentioned, HealthCare Partners and defendant HMOs routinely and
22 | repeatedly violated <u>California Government Code</u> § 12651(a)(4) by improperly retaining and
23 | concealing the unsupported diagnosis codes and inflated risk scores that inflated the capitated
24 | payments they received  under the Medi-Cal contract during and after 2008.

25 | 142.   At all times mentioned, HealthCare Partners and defendant HMOs routinely and
26 | repeatedly violated <u>California Government Code</u> § 12651(a)(7) by knowingly making, using
27 | and/or causing to make or use false records and statements to conceal, avoid, or decrease their
28 | obligation to return to the Medi-Cal program the inflated the capitated payments they received

THIRD AMENDED COMPLAINT

1    under the Medicare and Medi-Cal contracts during and after 2008.

2        143.   Swoben is informed and believes, and upon such information and belief alleges,

3    that as a result of HealthCare Partners' and defendant HMOs' concealments and use of false

4    records and statements, Medi-Cal paid more than it would have if defendants had properly and

5    truthfully billed and reported, and revealed and withdrawn the diagnosis codes that were not

6    supported by their medical charts.

7        144.   As a result of their conduct, defendants are liable to California for three times

8    the amount of damages sustained by California as a result of the false and fraudulent billing,

9    reporting and concealment practices alleged above.

10        145.   As a result of their conduct, <u>California Government Code</u> § 12651(a) provides

11    that defendants are liable to California for civil penalties of up to $10,000 for each such false

12    and fraudulent billing, reporting and concealment.

13        146.   Swoben is also entitled to recover his attorneys fees, costs and expenses from

14    defendants pursuant to <u>California Government Code</u> § 12652(g)(8).

15

16                          <u>PRAYER FOR RELIEF</u>

17        WHEREFORE, Plaintiff and <u>Qui Tam</u> Relator James M. Swoben prays for relief as

18    follows:

19                FOR THE FIRST CLAIM FOR RELIEF

20       1.     Treble the Government's damages according to proof;

21       2.     Civil penalties according to proof;

22       3.     A relator's award of up to 30% of the amounts recovered by or on behalf of the

23    Government;

24              FOR THE SECOND CLAIM FOR RELIEF

25       4.     Treble the State of California's damages according to proof;

26       5.     Civil penalties according to proof;

27       6.     A relator's award of up to 50% of the amounts recovered by or on behalf of the

28    State of California;

FOR THE THIRD CLAIM FOR RELIEF

7.    Treble the Government's damages according to proof;

8.    Civil penalties according to proof;

9.    A relator's award of up to 30% of the amounts recovered by or on behalf of the Government;

FOR THE FOURTH CLAIM FOR RELIEF

10.   Treble the State of California's damages according to proof;

11.   Civil penalties according to proof;

12.   A relator's award of up to 50% of the amounts recovered by or on behalf of the State of California;

FOR THE FIFTH CLAIM FOR RELIEF

13.   Treble the Government's damages according to proof;

14.   Civil penalties according to proof;

15.   A relator's award of up to 30% of the amounts recovered by or on behalf of the Government;

FOR THE SIXTH CLAIM FOR RELIEF

16.   Treble the State of California's damages according to proof;

17.   Civil penalties according to proof;

18.   A relator's award of up to 50% of the amounts recovered by or on behalf of the State of California;

FOR THE SEVENTH CLAIM FOR RELIEF

19.   Treble the Government's damages according to proof;

20.   Civil penalties according to proof;

21.   A relator's award of up to 30% of the amounts recovered by or on behalf of the Government;

FOR THE EIGHTH CLAIM FOR RELIEF

22.   Treble the State of California's damages according to proof;

-28-

23. Civil penalties according to proof;

24. A relator's award of up to 50% of the amounts recovered by or on behalf of the State of California;

### FOR THE NINTH CLAIM FOR RELIEF

25. Treble the Government's damages according to proof;

26. Civil penalties according to proof;

27. A relator's award of up to 30% of the amounts recovered by or on behalf of the Government;

### FOR THE TENTH CLAIM FOR RELIEF

28. Treble the State of California's damages according to proof;

29. Civil penalties according to proof;

30. A relator's award of up to 50% of the amounts recovered by or on behalf of the State of California;

### FOR ALL CLAIMS FOR RELIEF

31. Attorneys fees, expenses, and costs; and

32. Such other and further relief as the Court deems just and proper.


ABRAM J. ZINBERG, ESQ.

THE HANAGAMI LAW FIRM
A Professional Corporation

Dated: November 23, 2011            By: _____
                                        William K. Hanagami
                                        Attorneys for Plaintiff and Qui Tam Relator,
                                        James M. Swoben

(Continued on next page)

-29-

THIRD AMENDED COMPLAINT

1

<u>REQUEST FOR JURY TRIAL</u>

2

Plaintiff and <u>Qui</u> <u>Tam</u> Relator James M. Swoben hereby requests a trial by jury.

3

4

ABRAM J. ZINBERG, ESQ.

5

THE HANAGAMI LAW FIRM
A Professional Corporation

6

7

Dated: November 23, 2011

8

By: _____
    William K. Hanagami
    Attorneys for Plaintiff and <u>Qui</u> <u>Tam</u> Relator,
    James M. Swoben

9

Complaint.P05.wpd

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-30-

THIRD AMENDED COMPLAINT