1   LATHAM & WATKINS LLP
        David J. Schindler (Bar No. 130490)
2         *david.schindler@lw.com*
    355 South Grand Avenue, Suite 100
3   Los Angeles, California 90071-1560
    Telephone: +1.213.485.1234
4   Facsimile: +1.213.891.8763

5   LATHAM & WATKINS LLP
        Daniel Meron (appearing *pro hac vice*)
6         *daniel.meron@lw.com*
        Abid R. Qureshi (appearing *pro hac vice*)
7         *abid.qureshi@lw.com*
    555 Eleventh Street, NW, Suite 1000
8   Washington, DC 20004-1304
    Telephone: +1.202.637.2200
9   Facsimile: +1.202.637.2201

10  Attorneys for Defendants UnitedHealth
    Group Incorporated; UHC of California;
11  United HealthCare Services, Inc.; Optum,
    Inc.; OptumInsight, Inc.; UnitedHealthcare,
12  Inc.; and UHIC Holdings, Inc. (collectively,
    "United")

13

14              **UNITED STATES DISTRICT COURT**

15             **CENTRAL DISTRICT OF CALIFORNIA**

16

17  UNITED STATES OF AMERICA          CASE NO. CV 09-5013 JFW (JEMx)
    and STATE OF CALIFORNIA *ex rel.*
18  JAMES M. SWOBEN,                  Assigned to Hon. John F. Walter

19              Plaintiffs,           **UNITED'S NOTICE OF MOTION
                                      AND MOTION TO DISMISS
20          v.                        UNITED STATES' COMPLAINT-
                                      IN-PARTIAL-INTERVENTION;
21  SCAN HEALTH PLAN, *et al.*,       MEMORANDUM OF POINTS AND
                                      AUTHORITIES IN SUPPORT
22              Defendants.           THEREOF**

23                                    [*[Proposed] Order filed concurrently
                                      herewith*]
24
                                      Date:   September 18, 2017
25                                    Time:   1:30 p.m.
                                      Ctrm:   7A
26
                                      Pre-Trial: November 9, 2018
27                                    Trial:     November 27, 2018

28

LATHAM&WATKINS LLP
 ATTORNEYS AT LAW
  WASHINGTON, D.C.

TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on September 18, 2017, at 1:30 p.m., or as soon thereafter as the parties may be heard, in Courtroom 7A of the United States District Court, Central District of California, located at 350 W. 1st Street, Los Angeles, California 90012, Honorable John F. Walter presiding, Defendants UnitedHealth Group Incorporated, UHC of California, United HealthCare Services, Inc., Optum, Inc., OptumInsight, Inc., UnitedHealthcare, Inc., and UHIC Holdings, Inc. (collectively, "United") will, and hereby does, move the Court for dismissal of this action (the "Motion").

This Motion is and will be made on the grounds that (1) the Complaint-In-Intervention fails adequately to plead that the attestations that serve as the basis for the Government's false claims theory were knowingly false; (2) the Complaint-In-Intervention fails adequately to plead that the statements were material to the government's decision to pay; (3) the "reverse false claims act" theory in the Government's Fourth Claim for Relief (and, in part, its Third Claim for Relief) has been waived, as it was dismissed with prejudice by this Court and was not pursued by Relator Swoben on appeal; (4) any allegations predating May 1, 2007 are barred by the ten-year statute of repose; and (5) the Complaint-In-Intervention violates Fed. R. Civ. P. 9(b) by failing to identify with particularity the allegedly unlawful acts that each of the seven distinct defendants allegedly committed.

This Motion is based upon the accompanying Memorandum of Points and Authorities, the pleadings and other papers on file herein, and such argument and evidence as may be presented in connection with the hearing of this Motion.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on July 6, 2017.

1   Dated:  July 14, 2017

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM & WATKINS LLP

DAVID J. SCHINDLER
DANIEL MERON
ABID R. QURESHI


By /s/ David J. Schindler
    David J. Schindler
    Attorneys for Defendants
    UNITEDHEALTH GROUP
    INCORPORATED, UHC OF
    CALIFORNIA, UNITED HEALTHCARE
    SERVICES, INC., OPTUM, INC.,
    OPTUMINSIGHT, INC.,
    UNITEDHEALTHCARE, INC., UHIC
    HOLDINGS, INC.

1

# TABLE OF CONTENTS

2
INTRODUCTION ....................................................................................................... 1

3
BACKGROUND ....................................................................................................... 3

4
ARGUMENT ............................................................................................................. 7

5
I.     The Complaint Lacks The Necessary Allegation That United's
       Attestations Were "Knowingly" False .......................................................... 7
6

7
II.    The Complaint Also Fails Plausibly To Allege That The
       Challenged Conduct Was Material To The Government's
       Decision To Pay United ............................................................................... 11
8

9
III.   The Complaint's Reverse False Claims Theories Are Waived
       And May Not Be Revived ............................................................................ 12

10
IV.    DOJ's Claims Concerning Conduct That Occurred Before May
       1, 2007 Are Barred By The False Claims Act's Statute Of
11     Repose ......................................................................................................... 14

12
       A.     The False Claims Act's Statute Of Repose Bars DOJ's
              Claims Concerning Conduct That Occurred More Than
13            Ten Years Before DOJ Filed The Complaint ..................................... 14

14
       B.     DOJ Cannot Avoid The Statute Of Repose Through
              Invocation Of The Relation-Back Doctrine ...................................... 16
15

16            1.     Relation Back Does Not Apply To The Statute Of
                     Repose ..................................................................................... 16

17            2.     If It Did Apply, Relation Back Could Save, At
                     Most, Allegations About Conduct Occurring After
18                   March 13, 2007 ....................................................................... 18

19
V.     The Complaint Fails To Allege With Particularity The Roles Of
       Any Of The United Defendants In The Alleged Scheme To
20     Submit False Claims .................................................................................... 21

21
CONCLUSION ....................................................................................................... 24

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................9

*Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*,
  -- S. Ct. --, 2017 WL 2722415 (U.S. June 26, 2017) ......................................21

*City of Chicago v. Purdue Pharma L.P.*,
  211 F. Supp. 3d 1058 (N.D. Ill. 2016)........................................................11, 12

*CTS Corp. v. Waldburger*,
  134 S. Ct. 2175 (2014) ....................................................................17, 20, 21

*Destfino v. Reiswig*,
  630 F.3d 952 (9th Cir. 2011) ................................................................22

*Ebeid ex rel. United States v. Lungwitz*,
  616 F.3d 993 (9th Cir. 2010) ................................................................22

*Facebook, Inc. v. PowerVentures, Inc.*, No. 08-CV-05780-LHK,
  2017 WL 1650608 (N.D. Cal. May 2, 2017) ....................................................13

*Henderson v. Bolanda*,
  253 F.3d 928 (7th Cir. 2001) ................................................................19

*In re Apple Computer, Inc., Sec. Litig.*,
  243 F. Supp. 2d 1012 (N.D. Cal. 2002) ..........................................................8

*In re Int'l Rectifier Corp. Sec. Litig.*,
  No. CV 07-02544-JFW (VBKx), 2008 WL 4555794, (C.D. Cal.
  May 23, 2008)....................................................................................8

*Kesselring v. F/T Arctic Hero*,
  95 F.3d 23 (9th Cir. 1996) ..................................................................13

*Magnetsystems, Inc. v. Nikken, Inc.*,
  933 F.Supp. 944 (C.D. Cal. 1996)............................................................13

*Moore v. Indiana*,
  999 F.2d 1125 (7th Cir. 1993) ..............................................................20

*Moore v. Kayport Package Express, Inc.*,
  885 F.2d 531 (9th Cir. 1989)................................................................24

*Nat'l Credit Union Admin. Bd. v. RBS Sec., Inc.*,
   833 F.3d 1125 (9th Cir. 2016) ...................................................................... 20

*Newsome v. McCabe*,
   319 F.3d 301 (7th Cir. 2003) ................................................................. 13, 14

*Nordstrom, Inc. v. Chubb & Son, Inc.*,
   54 F.3d 1424 (9th Cir. 1995) ........................................................................ 8

*Quaak v. Dexia, S.A.*,
   445 F. Supp. 2d 130 (D. Mass. 2006) ......................................................... 18

*Roberts v. UBS AG*,
   No. CV F 12-0724 LJO SKO, 2013 WL 394701 (E.D. Cal, Jan. 30,
   2013) ............................................................................................................ 24

*Sec. Inv'r Prot. Corp. v. Vigman*,
   74 F.3d 932 (9th Cir. 1996) ........................................................................ 13

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*,
   365 F.3d 353 (5th Cir. 2004) ........................................................................ 8

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ................................................................. 22, 24

*TRW, Inc. v. Andrews*,
   534 U.S. 19 (2001) ...................................................................................... 17

*United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
   637 F.3d 1047 (9th Cir. 2011) .................................................................... 22

*United States ex rel. Dresser v. Qualium Corp.*, No. 5:12-cv-01745-
   BLF, 2016 WL 3880763, at *6 (N.D. Cal. July 18, 2016) .......................... 12

*United States ex rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211 (9th Cir.
   1996) ...................................................................................................... 15, 16

*United States ex rel. Lee v. Corinthian Colleges*,
   655 F.3d 984 (9th Cir. 2011) ................................................................... 3, 22

*United States ex rel. Lee v. Corinthian Colleges,* No. CV 07-1984
   PSG (MANx), 2012 WL 12878361 (C.D. Cal. Apr. 19, 2012) .................... 18

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

iii

MOTION TO DISMISS
CV 09-5013 JFW (JEMx)

*United States ex rel. Modglin v. DJO Global Inc.*,
   114 F. Supp. 3d 993 (C.D. Cal. 2015), *aff'd*, 2017 WL 745715
   (9th Cir. Feb. 27, 2017) ............................................................................. 9

*United States ex rel. Pecanic v. Sumitomo Elec. Interconnect Prods.*
   *Inc.*,
   No. 12-cv-0602-L (NLS), 2013 WL 774177 (S.D. Cal., Feb. 28,
   2013) ..................................................................................................... 23

*United States ex rel. Rockey v. Ear Inst. of Chicago, LLC*,
   92 F. Supp. 3d 804 (N.D. Ill. 2015) ........................................................ 9

*United States ex rel. Swoben v. United Healthcare Ins. Co.*,
   848 F.3d 1161 (9th Cir. 2016) ............................................... 5, 6, 13, 23

*United States v. Morrison*,
   529 U.S. 598 (2000) ............................................................................. 16

*United States v. Safran Grp., S.A.*,
   No. 15-CV-00746-LHK, 2017 WL 235197  (N.D. Cal. Jan. 19,
   2017) ..................................................................................................... 23

*United States v. Sci. Applications Int'l Corp.*,
   626 F.3d 1257 (D.C. Cir. 2010) ............................................................. 8

*United States v. State St. Bank & Trust Co.*,
   520 B.R. 29 (Bankr. D. Del. 2014) ...................................................... 14

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
   136 S. Ct. 1989 (2016) ..................................................................... 7, 11

*Wood ex rel. United States v. Applied Research Assocs., Inc.*,
   328 F. App'x 744 (2d Cir. 2009) ........................................................... 9

## STATUTES

15 U.S.C. § 78u-4(b)(2) ........................................................................... 9

31 U.S.C. § 3729(a)(1) ............................................................................. 7

31 U.S.C. § 3729(a)(1)(G) ........................................................................ 5

31 U.S.C. § 3729(a)(7) ........................................................................... 12

31 U.S.C. § 3729(b)(1) ............................................................................. 7

31 U.S.C. § 3731(b) ................................................................................. 15

31 U.S.C. § 3733(a)(C) ............................................................................ 10

31 U.S.C. §3731(c) ........................................................................... 16, 18

42 U.S.C. § 1395w-21 ............................................................................... 3

42 U.S.C. § 1395w-23(a)(1)(C)(i) ............................................................. 3

Pub. L. No. 111-21, § 4(b), 123 Stat. 1623 (2009) ................................ 17

## OTHER AUTHORITIES

False Claims Act Correction Act (S. 2041): Strengthening the
    Government's Most Effective Tool Against Fraud for the 21st
    Century: Hearing before the S. Comm. on the Judiciary, 110th
    Cong. 101 (2008) ............................................................................ 15, 17

H. Rep. No. 111-97 (2009) ...................................................................... 15

S. Rep. No. 110-507 (2008) ..................................................................... 15

## RULES

Fed. R. Civ. P. 9(b) ................................................................................. 21

## REGULATIONS

42 C.F.R. § 422.308(c) .............................................................................. 3

42 C.F.R. § 422.310 ................................................................................... 3

42 C.F.R. § 422.504(*l*) ...................................................................... passim

**INTRODUCTION**

The Department of Justice (DOJ) belatedly has entered a decade-long payment policy discussion between Medicare Advantage plans and the Centers for Medicare & Medicaid Services (CMS).  DOJ's entry ignores or misconstrues fundamental principles of the Medicare Advantage program.  DOJ's theory is that a Medicare Advantage (MA) plan must, in some circumstances, take affirmative steps to validate the accuracy of diagnostic data submitted to it by healthcare providers before passing that data along to the government, even though CMS itself—which is required by statute to pay plans based on an apples-to-apples comparison of the health status of the plan's members with those on "traditional" Medicare—makes *no* similar effort to validate provider-submitted diagnostic data concerning its own beneficiaries.  DOJ alleges that United's failure to perform certain data validation activities rendered false United's annual attestations that the *data* it submitted from providers were accurate to the best of its "knowledge, information, and belief," 42 C.F.R. § 422.504(*l*).

DOJ is flat wrong.  MA plans are not, and cannot be, required to undertake the affirmative steps DOJ suggests.  United does not address that central shortcoming here because, as this Court knows, the "legal underpinnings of the Government's arguments" already are pending in an Administrative Procedure Act (APA) suit United brought more than a year before DOJ intervened here. Statement of Decision Denying United States' Motion to Consolidate 4, ECF No. 295, and the APA court "will soon be hearing UnitedHealth's challenge" to those legal underpinnings. *Id*.

This Court need not await the APA court's decision, however, to dismiss DOJ's Complaint-In-Intervention ("Complaint") in its entirety.  That is because— independent of DOJ's flawed theory—its Complaint fails to state a claim for at

least five reasons.[1]

*First*, the Complaint fails to allege that the United officials who signed the attestations believed they were false.  The Complaint does not even mention who at United signed the relevant attestations.  After more than five years of investigation, including the depositions of individuals who signed many of those attestations, that is no accident.  Indeed, DOJ *cannot* make the necessary allegation, because it knows that the individuals who signed the attestations did not share DOJ's expansive view of the attestations' meaning.

*Second*, the Complaint fails to allege that United's attestations were material to the government's decision to pay.  That silence speaks loudly.  This case has been pending for nearly a decade, and DOJ has been investigating similar "one-way-look" theories against United for more than five years.  Yet DOJ does not claim (nor could it) that CMS *ever* has refused to make risk adjustment payments to United as a result.  This omission alone warrants dismissal of DOJ's claims.

*Third*, the Complaint attempts to revive a "reverse false claims" theory that has been waived.  This Court dismissed that theory, and Swoben did not appeal that determination, thereby waiving it.  In fact, when DOJ tried to present that theory in its *amicus* brief on appeal, the Ninth Circuit refused to address it because it already had been waived.  That waiver makes this Court's dismissal law of the case.  The Court thus should dismiss DOJ's reverse false claims theories.

*Fourth*, some of DOJ's claims are untimely.  The allegations in the Complaint concern conduct going back more than 12 years, but the False Claims Act contains a statute of repose providing that "*in no event*" may a claim be brought "more than 10 years after the date on which the violation is committed."

---

[1] The government has intervened in this case as to all of the claims brought against United, and its Complaint thus is the operative complaint as to United.  *See* ECF No. 270 at 2.  Swoben has represented to United that he is not pursuing any claims beyond those asserted by DOJ, and has agreed that there is no need for United to respond to Swoben's Fourth Amended Complaint.

1    All claims concerning conduct before May 1, 2007 thus must be dismissed.

2        *Fifth*, the Complaint fails to identify with particularity the acts each of the
3    seven distinct United corporate entities named as defendants allegedly committed.
4    The Complaint instead defines those defendants collectively as "UnitedHealth" at
5    the outset and then treats "UnitedHealth" as a single entity throughout.  Rule 9(b)
6    flatly prohibits that kind of pleading.  Where, as here, a plaintiff alleges that
7    multiple defendants have engaged in fraud, the plaintiff must "at a minimum
8    identify the role of each defendant in the alleged fraudulent scheme."  *United*
9    *States ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011).

10       For these reasons, the Court should dismiss the Complaint in its entirety.

11                                   **BACKGROUND**

12       This case concerns the submission of "risk adjustment data" used to
13   calculate government payments to Medicare Advantage (or MA) plans.  *See* 42
14   U.S.C. § 1395w-21 *et seq.*

15       Under Medicare Advantage, private plans agree to provide care for
16   Medicare-eligible individuals in exchange for fixed (or "capitated") monthly
17   payments from CMS.  The program's capitated structure encourages preventive
18   and primary care to reduce the need for more expensive forms of care, such as
19   emergency room visits or long-term hospitalizations.  And it also allows CMS to
20   shift risk to private companies.

21       Although capitated payments do not vary based on the level of services a
22   member actually uses, CMS adjusts its payments to reflect the comparative risk
23   that a plan's members will need more or less care than an average beneficiary in
24   "traditional" Medicare.  *See* 42 U.S.C. § 1395w-23(a)(1)(C)(i); 42 C.F.R.
25   § 422.308(c).  The adjustments are based on demographic factors (such as a
26   beneficiary's age and gender) and the health status of the MA plan members.
27   Health status is determined using diagnostic codes submitted by MA plans to
28   CMS.  MA plans, in turn, generally obtain those diagnostic codes from the medical

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

3

MOTION TO DISMISS
CV 09-5013 JFW (JEMx)

1    professionals who provide care to the plan members, and pay fees to those

2    professionals for the care they provide.  *See* 42 C.F.R. § 422.310.

3           In some instances, however, large provider groups negotiate contracts with

4    MA plans in which the provider group is—like the MA plan itself—paid on a

5    capitated, risk-adjusted basis in exchange for agreeing to provide certain care to the

6    plan's members.  Plan members are assigned to the capitated provider and are

7    generally required to receive much or all of their care from that provider.  The

8    claims against United in this case concern only United's alleged responsibility for

9    medical record reviews of patients belonging to one large, California-based

10   capitated provider group, HealthCare Partners (HCP).

11          Relator James Swoben originally filed this suit in 2009 and, as relevant here,

12   filed a Third Amended Complaint on November 23, 2011. (ECF No. 37)

13   (hereinafter "TAC").  Count 9 of the Third Amended Complaint sets forth the

14   factual basis for the claims on which DOJ now has intervened.  It alleges that, from

15   2008-11, United was involved in, paid for, and otherwise supported so-called "one-

16   way" chart reviews performed on behalf of HCP.  *See* TAC  ¶¶ 121-135, *United*

17   *States ex rel Swoben v. SCAN Health Plan, et al.*,  No. CV09-5013 JFW(JEMx)

18   (C.D. Cal.) (ECF No. 37).  Count 9 alleged that HCP had a motive to skew the data

19   it generated for its patients, and that it "conceived, planned and conducted" the

20   review of its patients' medical charts "along with United and the other defendant

21   HMOs." *Id.* ¶ 127.

22          On August 17, 2012, one group of defendants reached an unrelated

23   settlement with DOJ.   (ECF Nos. 45, 46.)  Five months later, DOJ declined to

24   intervene in the action against the remaining defendants, including United.  (ECF

25   No. 57.)  The case was then unsealed, and on July 30, 2013, this Court dismissed

26   Swoben's Third Amended Complaint with prejudice, holding that Swoben had

27   failed to plead his claim with the particularity Rule 9(b) requires.  (ECF No. 133.)

28          Swoben appealed.  The case was fully briefed by Swoben, United, and the

1   other defendants, but during oral argument the Ninth Circuit panel raised questions

2   largely unaddressed in the parties' briefs about the meaning of a certification that

3   MA plans must submit annually under 42 C.F.R. § 422.504(*l*).  After argument, the

4   Court of Appeals called for supplemental briefing addressing that regulation.  At

5   that point, nearly three years after this Court dismissed Swoben's claims, DOJ

6   weighed back into the case, arguing as an *amicus* that if United employed

7   "retrospective reviews" that looked for new codes but did not seek to identify

8   which (if any) of the previously submitted codes might have lacked support in the

9   medical records, those "one-way" reviews rendered United's § 422.504(*l*)

10  certifications false. *See* Brief for the United States as Amicus Curiae in Support of

11  Appellant at 2, 22, *United States ex rel. Swoben v. United Healthcare Ins. Co.*, 848

12  F.3d 1161 (9th Cir. 2016) (hereinafter "U.S. Amicus Br.").  DOJ also argued that

13  by allegedly designing its review process in a manner that would not identify

14  previously submitted diagnostic codes that lacked sufficient documentation in

15  medical charts, United had committed a so-called "reverse false claim" violation

16  by "knowingly and improperly avoid[ing] or decreas[ing] an obligation to pay or

17  transmit money" to the government.  *Id.* at 19 (quoting 31 U.S.C. § 3729(a)(1)(G)).

18       On August 10, 2016, the Ninth Circuit issued its decision.  *First*, with

19  respect to DOJ's "reverse false claims theory" under 31 U.S.C. §3729(a)(1)(G), the

20  Ninth Circuit held that the issue was waived because "Swoben . . . did not rely on

21  that provision in his opening and reply briefs," and DOJ's *amicus* submission

22  could not revive it.   *United States ex rel. Swoben v. United Healthcare Ins. Co.*,

23  848 F.3d 1161, 1172 n.6 (9th Cir. 2016).

24       *Second*, with respect to Swoben's false certification theory, the Ninth Circuit

25  reversed this Court's judgment on the grounds that Swoben's allegations could be

26  read to suggest that the certification required under Section 422.504(*l*) might be

27  false if United had "design[ed] retrospective reviews of enrollees' medical records

28  deliberately to avoid identifying erroneously submitted diagnosis codes that might

1   otherwise have been identified" and "for no other reason than to avoid reporting

2   that information to the government." *Id.* at 1175, 1176, 1169.   It remanded the

3   case to this Court to allow Swoben to pursue that limited theory. *Id.* at 1185.

4       In doing so, however, the Court stopped well short of DOJ's broad theory of

5   the case, under which use of one-sided retrospective reviews necessarily produces

6   false certifications.   The Ninth Circuit held that "merely" showing that United had

7   "passively forwarded to CMS unsupported diagnosis codes they received from

8   their medical providers" would "not necessarily result in false § 422.504(*l*)

9   certifications." *Id.* at 1173.   And it emphasized that "we do not suggest" that

10  conducting "one-sided retrospective reviews" would "necessarily" "result in false

11  certifications under 422.504(*l*)." *Id.* at 1175.

12      Following the Ninth Circuit's decision, DOJ reversed course on its previous

13  choice not to intervene.   On March 24, 2017, nearly eight years after Relator first

14  initiated the suit and more than four years after deciding not to intervene, DOJ

15  intervened in Relator's Fourth Amended Complaint against the United Defendants.

16  (ECF No. 270)  DOJ then filed its Complaint (ECF No. 296), which is based on a

17  theory of liability materially broader than the one the Ninth Circuit contemplated.

18  Whereas the Ninth Circuit held that Swoben's claims against United could proceed

19  because he "alleges the defendants took affirmative steps to generate and report

20  skewed data," 848 F.3d at 1173, the Complaint largely shifts focus from the

21  conduct of the United Defendants to the conduct of HCP. *See* United States'

22  Complaint-in-Partial-Intervention and Demand for Jury Trial ¶¶ 87-107, *United*

23  *States ex rel. Swoben v. Secure Horizons,* CV 09-5013 JFW (JEMx) (C.D. Cal.

24  May 1, 2017) (ECF No. 296) ("DOJ Compl.").   The Complaint alleges that United

25  was aware of the allegedly limited scope of HCP's chart reviews, and that this

26  awareness made United's *own* certifications under Section 422.504(*l*) false. *See id.*

27  ¶¶ 107-08.   In addition, unlike Swoben's Third Amended Complaint, which limits

28  its claims regarding HCP to the 2008-2011 period, DOJ's Complaint presses

1   claims involving HCP going as far back as 2005.  *Id.* ¶ 62.

2                                **ARGUMENT**

3  **I.    The Complaint Lacks The Necessary Allegation That United's**
4         **Attestations Were "Knowingly" False**

5        A defendant is liable under the False Claims Act only if it acted
6   "knowingly."  *See* 31 U.S.C. § 3729(a)(1).  This requirement is "rigorous" and
7   "strict[ly] enforce[d]."  *Universal Health Servs., Inc. v. United States ex rel.*
8   *Escobar*, 136 S. Ct. 1989, 2002 (2016).  It is satisfied only if the defendant had
9   actual knowledge it was presenting false information or was deliberately ignorant
10  of or recklessly disregarded the falsity.  *See* 31 U.S.C. § 3729(b)(1).

11       Here, the Complaint alleges that United's Risk Adjustment Attestations were
12  false or fraudulent.  *See* DOJ Compl. ¶¶ 109–25.  It asserts that United was
13  involved in and aware of HCP's chart review activities and that, as a result, United
14  was obligated to undertake additional validation efforts to confirm that the
15  diagnosis codes it passed from HCP to CMS were supported by the underlying
16  medical charts.  The Complaint posits that United's failure to undertake those
17  efforts rendered false its certifications that the data it was submitting from
18  providers were accurate to the best of its "knowledge, information, and belief," 42
19  C.F.R. § 422.504(*l*).  *See, e.g.*, DOJ Compl. ¶ 9.

20       In order to allege that the attestations were *knowingly* false, therefore, the
21  Complaint must allege that United knew (or deliberately ignored or recklessly
22  disregarded) that the attestations included a representation that United had
23  undertaken additional diligence efforts that, in fact, it had not undertaken, or that
24  by certifying that its data was "accurate" United was certifying to a higher standard
25  of accuracy than is true of CMS's own data against which United's is compared.
26  The Complaint wholly fails to do so.

27       In particular, the Complaint fails to allege that the individuals who signed
28  the certifications believed they were false.  The United defendants are

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

7

MOTION TO DISMISS
CV 09-5013 JFW (JEMx)

corporations, and as this Court has held, "[f]or scienter to be attributed to [a corporation], Plaintiffs must sufficiently plead that at least one of [the corporation's] officers had the requisite scienter at the time they made the allegedly misleading statements." *In re Int'l Rectifier Corp. Sec. Litig.*, No. CV 07-02544-JFW (VBKx), 2008 WL 4555794, at *21 (C.D. Cal. May 23, 2008) (Walter, J.). Thus, "[a] defendant corporation is deemed to have the requisite scienter for fraud only if the individual corporate officer making the statement has the requisite level of scienter, *i.e.*, knows that the statement is false, or is at least deliberately reckless as to its falsity, at the time that he or she makes the statement." *Id.* (quoting *In re Apple Computer, Inc., Sec. Litig.*, 243 F. Supp. 2d 1012, 1023 (N.D. Cal. 2002)). The Complaint thus may not rely on the notion that a corporation has "collective scienter" separate from the scienter of any actual human. *See Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424, 1435 (9th Cir. 1995) ("there is no case law supporting an independent 'collective scienter' theory").[2]

This rule—that a complaint asserting claims based on false statements must plead the unlawful state of mind of the speaker—is applied frequently in the securities context, where the PSLRA requires plaintiffs to plead with particularity a defendant's state of mind. *See* 15 U.S.C. § 78u-4(b)(2). But the rule also applies

---

[2] *See also United States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1274 (D.C. Cir. 2010) ("[U]nder the FCA, 'collective knowledge' provides an inappropriate basis for proof of scienter because it effectively imposes liability, complete with treble damages and substantial civil penalties, for a type of loose constructive knowledge that is inconsistent with the Act's language, structure, and purpose."); *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 366 (5th Cir. 2004) ("For purposes of determining whether a statement made by the corporation was made by it with the requisite Rule 10(b) scienter we believe it appropriate to look to the state of mind of the individual corporate official or officials who make or issue the statement (or order or approve it or its making or issuance, or who furnish information or language for inclusion therein, or the like) rather than generally to the collective knowledge of all the corporation's officers and employees acquired in the course of their employment." (citing *Nordstrom, 54 F.3d at 1435*)).

1   to the False Claims Act.  In *United States ex rel. Modglin v. DJO Global Inc.,* for

2   instance, the court dismissed allegations "that defendants 'knew that they were

3   falsely and/or fraudulently claiming reimbursements' and 'knew [their devices]

4   were being unlawfully sold for unapproved off-label cervical use.'"  114 F. Supp.

5   3d 993, 1024 (C.D. Cal. 2015), *aff'd,* 2017 WL 745715 (9th Cir. Feb. 27, 2017).

6   The problem was that "[n]one of the facts relators plead[ed] . . . supported[ed] their

7   conclusory allegation that defendants knowingly submitted false claims," and

8   therefore, notwithstanding "that Rule 9(b) does not require particularized

9   allegations of knowledge," the complaint "f[e]ll short of plausibly pleading

10  scienter under Rule 8, *Twombly*, and *Iqbal*." *Id.*[3]  Thus, an FCA plaintiff suing a

11  corporate defendant must plead facts giving rise to a plausible inference that a

12  particular corporate officer had the necessary scienter.

13      Here, despite the fact that its FCA claims turn on the supposed falsity of the

14  Risk Adjustment Attestations and United's alleged knowledge of the specific

15  nature of HCP's chart reviews, DOJ does not even identify the corporate officers

16  who signed attestations—much less allege (as it must) that those individuals

17  believed the attestations to be false, or knew *any* of the facts relating to HCP's

18  medical record reviews.  *See* DOJ Compl. ¶ 107.

19      That silence is telling.  DOJ clearly knows who signed the attestations at

20  issue, and it has had eight years to investigate whether those individuals believed

21  them to be false, including through compelled depositions under 31 U.S.C.

22

23  _____
    [3] *See also* Ashcroft v. Iqbal, 556 U.S. 662, 686–87 (2009) ("Rule 9 merely excuses
24  a party from pleading [mental states] under an elevated pleading standard. It does
    not give him license  to evade the less rigid—though still operative—strictures of
25  Rule 8."); *Wood ex rel. United States v. Applied Research Assocs., Inc.,* 328 F.
    App'x  744, 747 (2d  Cir.  2009) ("[W]hile Rule 9(b) permits scienter to be
26  demonstrated by inference, this must not be mistaken for license to base claims of
    fraud on speculation and conclusory allegations."); *United States ex rel. Rockey v.*
27  *Ear Inst. of Chicago, LLC,* 92 F. Supp. 3d 804, 820 (N.D. Ill. 2015) (rejecting
    allegations  of  knowledge  under  the  FCA  that  were  "conclusory  and . . .
28  unsupported by any factual averments").

1   § 3733(a)(C).  And DOJ also has a theory about why those attestations were false.

2   DOJ's theory is that an officer's attestation that "*the data*" the MA plan submits

3   "are accurate, complete, and truthful," based on "best knowledge, information, and

4   belief," includes an implicit representation, not contained in the text, that the MA

5   plan has undertaken efforts to second-guess the diagnosis coding of medical

6   professionals who created that data and submitted it to the plan.  *See* 42 C.F.R.

7   § 422.504(*l*)(2) (emphasis added).  DOJ's theory is also that an officer's attestation

8   that the data is "accurate" means that there are no discrepancies between the

9   provider-created diagnosis codes and those professionals' medical records—even

10  though CMS's own data, against which a plan is compared, includes precisely

11  those same types of discrepancies.  But DOJ conspicuously does not allege that the

12  United officials who signed the attestations shared that understanding of the

13  attestations, or otherwise believed them to be false.  Presumably, that is because

14  DOJ knows—based on, among other things, its depositions of United officials who

15  signed many of the attestations—that those officials had a narrower understanding

16  of the scope of the representations they were making.  Their view of this "disputed

17  legal issue . . . is not enough" to establish liability under the False Claims Act.

18  *Hagood v. Sonoma County Water Agency*, 81 F.3d 1465, 1749 (9th Cir. 1996).

19      Instead, DOJ offers snippets of statements from an assortment of other

20  employees who are not alleged to have signed the attestations (and who in fact did

21  not).  This is insufficient.  Without factual allegations that plausibly suggest that

22  the United officials who signed the attestations believed that they were false (or

23  were willfully ignorant of or recklessly disregarded such falsity), DOJ's assertion

24  of scienter is just as fatally conclusory as the similar assertions in *Modglin*.

25  Especially in light of the Supreme Court's recent call for "strict enforcement" of

26  the FCA's "rigorous" scienter requirement, *Universal Health Servs.*, 136 S. Ct. at

27  2002, the Complaint should be dismissed.

28

## II. The Complaint Also Fails Plausibly To Allege That The Challenged Conduct Was Material To The Government's Decision To Pay United

The Complaint also fails to meet a second element of the False Claims Act: materiality.  The Supreme Court recently confirmed that the False Claims Act's "materiality standard is demanding." *Id.* at 2003.  Even where the government "would have the option to decline to pay if it knew of the defendant's noncompliance," or designates compliance with a particular requirement as a condition of payment, that is not "sufficient for a finding of materiality." *Id.*  A complaint must instead allege that the supposed violations "are so central . . . that the [government] *would not have paid these claims* had it known of these violations." *Id.* at 2004 (emphasis added).

The Complaint falls well short of that standard.  While it includes bare-bones assertions that United's conduct was "material," *see, e.g.*, DOJ Compl. ¶ 114 ("Defendants knowingly made, used, or caused to be made or used a false Risk Adjustment Attestation *material* to a false or fraudulent claim . . . ." (emphasis added)), it fails to allege (let alone plausibly or with particularity) that CMS would have refused to make risk adjustment payments to United if it had known the facts about United's involvement with HCP's chart review process.  In the year since *Universal Health Services* was decided, courts consistently have dismissed government complaints that alleged materiality in similarly conclusory terms. *See, e.g.*, *City of Chicago v. Purdue Pharma L.P.*, 211 F. Supp. 3d 1058, 1079 (N.D. Ill. 2016) ("[P]laintiff has not sufficiently alleged that defendants caused misrepresentations that were material as defined in *Universal Health* and therefore has not stated a claim for false statements or false claims."); *United States ex rel. Dresser v. Qualium Corp.*, No. 5:12-cv-01745-BLF, 2016 WL 3880763, at *6 (N.D. Cal. July 18, 2016) ("The Amended Complaint alleges in several places that the government would not have paid Defendants' claims had they known of Defendants' fraudulent conduct, but does not explain why. This does not meet

1  *Universal Health Services'* heightened materiality standard . . . .").

2  This deficiency is no mere pleading oversight. DOJ cannot plausibly

3  contend that CMS would have refused to pay United's claims if it had known the

4  facts in its Complaint. The government has known of Swoben's allegations for

5  eight years, and has investigated those allegations exhaustively.[4] Some of the

6  sources DOJ cites to show that United was on notice of the supposed falsity of its

7  claims were *CMS audits*. *See, e.g.*, DOJ Compl. ¶¶ 70, 73, 79. If those audits were

8  sufficient to put United on notice of the supposed falsity, then they were sufficient

9  to put CMS on notice as well. Yet CMS has never refused to make risk adjustment

10  payments to United. As one court recently explained, it is "difficult[ to]

11  understand[] how the [government] remained unaware that the claims were false

12  after the lawsuit was filed." *City of Chicago*, 211 F. Supp. 3d at 1079. DOJ

13  cannot plausibly allege that CMS would not pay United on these claims when it

14  knows full well that CMS *is* paying them.

15  **III. The Complaint's Reverse False Claims Theories Are Waived And May**
16  **Not Be Revived**

17  The Complaint also asserts a "reverse false claims" theory in Count 4 (and,

18  in part, the conspiracy claim in Count 3, DOJ Compl. ¶ 118), but that theory

19  clearly has been waived. This Court dismissed the reverse false claims theory with

20  prejudice in its 2013 decision. *See* TAC ¶ 133 (asserting claims under

21  § 3729(a)(7), the pre-2009 equivalent to § 3729(a)(1)(G)); Order Granting Motion

22  to Dismiss Relator's Third Amended Complaint 9 ("[T]he third and ninth claims

23  for relief in Swoben's Third Amended Complaint are dismissed without leave to

24  amend."). And although Swoben appealed the dismissal of his affirmative False

25  Claims Act counts, he did *not* appeal the dismissal of his reverse false claims

26

27  _____
[4] *See, e.g.*, Mem. In Supp. Of Mot. for Leave to Partially Intervene at 7 (ECF No.
28  243-1) (describing its "time- and resource-intensive" investigation).

1    theory.  *See Swoben*, 848 F.3d 1172 n.6 (noting that "Swoben . . . did not rely on

2    that provision in his opening and reply briefs").

3        Indeed, the Ninth Circuit already has held that this theory was waived.

4    There, DOJ raised the theory in its *amicus* brief, *see* U.S. Amicus Br. at 18-22, but

5    United noted that Swoben had waived any appeal on his reverse false claims theory

6    by failing to include it in either his opening or reply briefs.  The Ninth Circuit

7    expressly refused to consider the issue because it had not been raised in Swoben's

8    briefs.  *See Swoben*, 848 F.3d 1172 n.6.

9        Nor may this waived theory be revived on remand merely because the Court

10   of Appeals reversed this Court's prior judgment on other grounds.  "[A]n issue or

11   factual argument waived at the trial level before a particular order is appealed, or

12   subsequently waived on appeal, cannot be revived on remand.  In essence, the

13   party's waiver becomes law of the case." *Magnetsystems, Inc. v. Nikken, Inc.*, 933

14   F. Supp. 944, 949-50 (C.D. Cal. 1996); *see also Kesselring v. F/T Arctic Hero*, 95

15   F.3d 23, 24 (9th Cir. 1996) ("Since appellant failed to raise this issue in its first

16   appeal, it is waived.").[5]

17       This "law of the case" rule applies equally to post-remand intervenors.  In

18   *Newsome v. McCabe*, for example, the Seventh Circuit rejected an attempt by a

19   government intervenor to relitigate an issue the court previously resolved on

20   interlocutory appeal.  319 F.3d 301, 303 (7th Cir. 2003).  There, the Seventh

21   Circuit previously had concluded that two police officers were not entitled to

22   qualified immunity in a Section 1983 case.  *Id.* at 302.  On remand, the City of

23   Chicago "intervened to protect its interests."  *Id.*  A jury returned a verdict against

24   the officers, and on appeal, Chicago argued for "official immunity."  *Id.* at 303.

25

26   [5] *See also Facebook, Inc. v. PowerVentures, Inc.*, No. 08-CV-05780-LHK, 2017

27   WL 1650608, at *7 (N.D. Cal. May 2, 2017) ("[I]ssues that were previously resolved and were not raised on appeal are law of the case and are not subject to relitigation absent a motion for leave to file a motion for reconsideration." (citing

28   *Sec. Inv'r Prot. Corp. v. Vigman*, 74 F.3d 932, 937 (9th Cir. 1996)).

Noting that "[m]any of Chicago's contentions [were] variations (or recapitulations) of arguments that [it] found unconvincing the last time around," the court held that those contentions were "barred by the law of the case." *Id.*[6]

The circumstances here compel the same result.  DOJ originally decided not to intervene in this suit against United, but "continued to monitor the action, including its progress on appeal."  Mem. In Supp. Of Mot. for Leave to Partially Intervene at 4 (ECF No. 243-1).  If it wished to preserve the reverse false claims theory, it could have intervened before this Court or after the case was appealed to the Ninth Circuit.  It did neither.  Instead, it waited until after oral argument to file an *amicus* brief addressing this issue for the first time in the appeal.  The Ninth Circuit appropriately refused to let DOJ do so.  This Court should do the same.

## IV.    DOJ's Claims Concerning Conduct That Occurred Before May 1, 2007 Are Barred By The False Claims Act's Statute Of Repose

### A.    The False Claims Act's Statute Of Repose Bars DOJ's Claims Concerning Conduct That Occurred More Than Ten Years Before DOJ Filed The Complaint

The False Claims Act states that a suit may not be brought:

> (1) more than 6 years after the date on which the violation of section 3729 is committed, or

> (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, *but in no event more than 10 years after the date on which the violation is committed*

whichever occurs last.

31 U.S.C. §3731(b) (emphasis added).

Section 3731(b) thus contains a pair of distinct limits.  The first is a two-

---

[6] *See also, e.g.*, *United States v. State St. Bank & Trust Co.*, 520 B.R. 29, 68 (Bankr. D. Del. 2014) (applying law-of-the-case doctrine to bar attempt by "intervening defendants . . . to re-litigate a previously decided legal issue").

1   tiered "statute of limitations," *United States ex rel. Hyatt v. Northrop Corp.*, 91

2   F.3d 1211, 1218 (9th Cir. 1996), under which a claim must be brought within the

3   later of six years from the date of the conduct on which it is based or three years

4   from the date on which the responsible "official of the United States" knew or

5   should have known of that conduct, 31 U.S.C. § 3731(b).  The second limit is a

6   "statute of repose," *Hyatt*, 91 F.3d at 1218, under which "in no event" may a claim

7   be brought "more than 10 years after the date on which the violation is

8   committed," 31 U.S.C. §3731(b).

9       The second limit, put simply, means what it says.  In fact, in 2008 and 2009,

10  Congress considered collapsing these distinct limits into a single eight- or ten-year

11  statute of limitations, without a separate repose period.  *See, e.g.*, H. Rep. No. 111-

12  97 at 14 (2009) (describing a bill that would have "set[] a uniform statute of

13  limitations of 8 years for any claim brought under the False Claims Act"); S. Rep.

14  No. 110-507 at 28 (2008) (describing a bill that would have "adopt[ed] a simple

15  and straightforward 10-year statute of limitations that begins when the violation

16  occurs").  But following testimony about how the existing "10-year repose

17  provision was meant as an ultimate cutoff date to protect defendants from . . .

18  litigation of stale issues from the distant past" in a way that a statute of limitations

19  might not, Congress retained the distinct limitations and repose provisions.  False

20  Claims Act Correction Act (S. 2041): Strengthening the Government's Most

21  Effective Tool Against Fraud for the 21st Century: Hearing before the S. Comm. on

22  the Judiciary, 110th Cong. 101 (2008) (statement of  John T. Boese, Fried Frank

23  Harris Shriver & Jacobson LLP) (*hereinafter* S. Hr'g 110-412).

24       Both of those provisions are relevant to this case, but for the time being,

25  United is relying only on the statute of repose, which easily may be applied to the

26  face of the Complaint.  DOJ filed its Complaint on May 1, 2017, and thus, under

27  Section 3731(b), any claims based on violations that were committed before May

28

1, 2007 are time-barred by the ten-year statute of repose.[7]

**B. DOJ Cannot Avoid The Statute Of Repose Through Invocation Of The Relation-Back Doctrine**

During the parties' meet and confer on July 6, 2017, DOJ argued that, despite its clear terms, the statute of repose does not prevent DOJ from bringing claims based on conduct that occurred more than ten years before it filed the Complaint. DOJ based that argument on a separate provision of the False Claims Act, which states that "[f]or statute of limitations purposes, any such Government pleading"—*i.e.*, a government complaint-in-intervention or amendment of a relator's complaint—"shall relate back to the filing date of the complaint of the person who originally brought the action, to the extent that the claim of the Government arises out of the conduct, transactions, or occurrences set forth, or attempted to be set forth, in the prior complaint of that person." 31 U.S.C. §3731(c).

For two separate reasons, however, that relation-back provision cannot save DOJ's claims.

*1. Relation Back Does Not Apply To The Statute Of Repose*

The most fundamental problem with DOJ's reliance on Section 3731(c) is that it is expressly limited to "statute of limitations purposes." 31 U.S.C. § 3731(c). As already described, the "in no event" provision is not a statute of limitations, but a "statute of repose" *Hyatt*, 91 F.3d at 1218. A statutory "enumeration presupposes something not enumerated." *United States v. Morrison,* 529 U.S. 598, 616 n.7 (2000). Here, the obvious thing not enumerated is the ten-year statute of repose Congress separately prescribed. *See also, e.g.*, *TRW, Inc. v. Andrews*, 534 U.S. 19, 29 (2001) ("Where Congress explicitly enumerates certain

---

[7] United believes that claims from later periods are time-barred as well under the statute of limitations. Because the applicability of the statute of limitations may depend on factual questions about when the government knew or should have known of its claims, however, United does not press that argument at this stage.

1    exceptions to a general prohibition, additional exceptions are not to be implied, in
2    the absence of evidence of a contrary legislative intent." (citation omitted)).

3         Legislative history confirms the point.  Congress added the relation-back
4    provision in 2009, as part of the same legislation in which it considered
5    consolidating the separate statutes of limitations and repose into a single ten-year
6    statute of limitations before rejecting that consolidation as insufficiently protective
7    of defendants' interests in repose.  *See* Fraud Enforcement & Recovery Act of
8    2009, Pub. L. No. 111-21, § 4(b), 123 Stat. 1623 (2009); *supra* at 15.  As one False
9    Claims Act expert testified during the Senate's consideration of those changes,
10   without a repose period, the relation-back provision would have forced defendants
11   "to defend themselves for actions that occurred 12, 15 or even 20 years ago,
12   depending on how long a *qui tam* case remains under seal."  S. Hr'g 110-412 at
13   102.  The fact that the case remains sealed while DOJ decides whether to intervene
14   would often mean that the defendant would not even *learn* of those claims until
15   more than a decade had passed.  *Id.*  By enumerating that relation back applies for
16   "statute of limitations purposes," and *not* enumerating that relation back applies for
17   other purposes (including statute of repose purposes), Congress addressed that
18   concern by leaving in place the statute of repose's "ultimate cutoff date."  *Id.*

19        That result is consistent with Congress's practice in other areas, where it has
20   created exceptions to statutes of limitations while leaving statutes of repose
21   untouched.  Indeed, the Supreme Court has held in analogous circumstances that
22   "the natural reading" of a provision that creates exceptions to a "statute of
23   limitations" is "that statutes of repose are excluded" from its reach.  *CTS Corp. v.*
24   *Waldburger*, 134 S. Ct. 2175, 2185-86 (2014) (holding that Congress's preemption
25   of a state "statute of limitations" in certain circumstances does not preempt a state
26   "statute of repose" found in the same paragraph of a state statute).  Accordingly,
27   while Section 3731(c) allows relation back "[f]or statute of limitations purposes,"
28   Congress authorized no such relation back for statute of *repose* purposes—and

1  relation back thus is unavailable to DOJ for purposes of preserving claims
2  regarding conduct before May 1, 2007.

3
               2.     *If It Did Apply, Relation Back Could Save, At Most, Allegations*
4                     *About Conduct Occurring After March 13, 2007*

5        Even if Section 3731(c) did apply to the statute of repose, a material portion
6  of DOJ's allegations still would be untimely.  As noted, Section 3731(c) provides
7  that relation back extends only to "the filing date of the complaint of the person
8  who originally brought the action."  Here, that date was March 13, 2017, when
9  Swoben filed his Fourth Amended Complaint.  Although Swoben had filed earlier
10 complaints as well, the Fourth Amended Complaint was the first to make
11 allegations about United's involvement with HCP chart reviews *during the 2005-*
12 *2007 time period*.  As noted above, his Third Amended Complaint had contained
13 allegations about United's involvement with HCP chart reviews beginning in 2008.
14 Section 3731(c), however, expressly provides that DOJ's complaint may relate
15 back only "to the extent that the claim of the Government arises out of the conduct,
16 transactions, or occurrences set forth, or attempted to be set forth, in the prior
17 complaint of that person."  Because the Third Amended Complaint did not address
18 United's relationship with HealthCare Partners in the 2005-2007 period, DOJ's
19 claims about that period cannot relate back to it.  *See, e.g., Quaak v. Dexia, S.A.,*
20 *445 F. Supp. 2d 130, 138 (D. Mass. 2006)* ("Cases are legion which refuse to allow
21 relation back when the new allegations go beyond the time-frame of the original
22 complaint."); *United States ex rel. Lee v. Corinthian Colleges,* No. CV 07-1984
23 *PSG (MANx), 2012 WL 12878361, at \*4 (C.D. Cal. Apr. 19, 2012)* (holding that
24 there was no relation back where claims were added that pre-dated those in the
25 original complaint, which "only claimed fraud from 2005 and later").  Because any
26 relation back would extend only to the March 13, 2007 filing date of Swoben's
27 Fourth Amended Complaint, Section 3731(c) could *at most* save DOJ's claims
28 beginning on March 13, 2007.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

18

The fact that Swoben's earlier complaints did not include allegations about United's relationship with HCP before 2008 is relevant in a second way, as well: It means that Swoben's *own* allegations about conduct from 2005 until March 13, 2007 were untimely when he filed them, because they had taken place outside of the ten-year repose period.  The timeliness of those claims is not directly at issue here, because DOJ's intervention means that, as to United, the only operative complaint is the Complaint-In-Intervention.  *See supra* n.1.  But because relation-back cannot save a claim where the earlier complaint *itself* was untimely, the fact that Swoben's claims were also untimely is relevant to assessing DOJ's relation-back argument.  *See, e.g.*, *Henderson v. Bolanda*, 253 F.3d 928, 931 (7th Cir. 2001) ("[I]n order to benefit from Rule 15(c)'s relation back doctrine, the original complaint must have been timely filed.").

Nor may DOJ avoid that result by arguing that the timeliness of Swoben's Fourth Amended Complaint should be calculated using the fiction that it was filed on July 8, 2013, when Swoben first sought leave to file a Fourth Amended Complaint (without attaching any such complaint), or on July 12, 2013, when Swoben's attorney—in response to an order to show cause why sanctions should not be imposed—filed a declaration that described "the current draft of our proposed Fourth Amended Complaint."  Decl. of William K. Hanagami in Resp. to July 9, 2013 Order to Show Cause at 2 (ECF No. 118).   Neither submission constituted the filing of a Fourth Amended Complaint.  For one thing, the very fact that Swoben was arguing that he "should be granted leave to amend his complaint," Relator's Opp'n to Mot. To Dismiss TAC at 6 (ECF No. 115) (capitalization removed), reflects his recognition that *until* leave was granted, a new complaint could not be filed.  Swoben's other filings at the time likewise demonstrated his understanding that he was not filing an amended complaint, but rather asking for leave to do so in the future:  His July 8, 2013 filing "respectfully request[ed] 30 days leave to file his Fourth Amended Complaint" because of "the

1    summer vacation schedule of counsel," and noted that he "intends to seek leave to

2    partially file the Fourth Amended Complaint under seal." *Id.* at 7.  Indeed, even in

3    response to this Court's Order to Show Cause, Swoben's attorney filed only the

4    "current draft" of his "proposed Fourth Amended Complaint" to which he noted he

5    "intend[ed] to add allegations" that "ha[d] not yet [been] completed" as of the

6    filing.  ECF No. 118 at 2 & n.1.  He did *not* ask that the affidavit be filed as an

7    operative complaint in the case—a step that would have foreclosed him from

8    making his intended amendments.  There is thus no basis now to claim that the

9    filing of a motion for leave to amend, and an attorney affidavit in response to a

10   show-cause order, should be treated as the filing of a Fourth Amended Complaint

11   that had yet to be completed at the time.

12       Even if Swoben had taken the more conventional path of submitting a

13   proposed Fourth Amended Complaint with his motion for leave to amend,

14   moreover, his claims would still be untimely under the statute of repose.  Some

15   courts have held that "the submission of a motion for leave to amend, properly

16   accompanied by the proposed amended complaint that provides notice of the

17   substance of those amendments, tolls the statute of limitations." *Moore v. Indiana,*

18   *999 F.2d 1125, 1131 (7th Cir. 1993).*  But as discussed above, the ten-year period

19   on which United is relying here is a statute of *repose*, not a statute of limitations.

20   As the Supreme Court has explained, "[s]tatutes of limitations, *but not statutes of*

21   *repose*, are subject to equitable tolling." *CTS Corp.*, 134 S. Ct. at 2183; *Nat'l*

22   *Credit Union Admin. Bd. v. RBS Sec., Inc.*, 833 F.3d 1125, 1129 (9th Cir. 2016)

23   (discussing how "[u]nlike a statute of limitations, which begins to run when a

24   claim accrues and may be subject to equitable tolling, 'a statute of repose bars any

25   suit that is brought after a specified time since the defendant acted . . . , even if this

26   period ends before the plaintiff has suffered a resulting injury'" (quoting *CTS*

27   *Corp.*, 134 S. Ct. at 2182)).  Just last month the Supreme Court held that the

28   "purpose and effect of a statute of repose . . . is to override customary tolling rules

1   arising from the equitable powers of courts." *Cal. Pub. Emps.' Ret. Sys. v. ANZ*

2   *Sec., Inc.*, -- S. Ct. --, 2017 WL 2722415, at *9 (U.S. June 26, 2017) (quoting *CTS*

3   *Corp.*, 134 S. Ct. at 2813).   There, as here, Congress had provided that "[i]n no

4   event" would liability be permitted after the repose period, and the Court held that

5   "[t]his instruction admits of no exception and on its face creates a fixed bar against

6   future liability." *Id.* at *7.

7       That "absolute bar on a defendant's temporal liability" applies "even in

8   cases of extraordinary circumstances beyond a plaintiff's control," because "a

9   statute of repose is a judgment that defendants should be free from liability after

10  the legislatively determined period of time, beyond which the liability will no

11  longer exist and will not be tolled for any reason." *CTS Corp.*, 134 S. Ct. at 2183

12  (citation and internal quotation marks omitted).   Accordingly, even if Swoben's

13  motion for leave to amend and his attorney's subsequent description of an

14  incomplete draft of his proposed Fourth Amended Complaint could have tolled the

15  statute of *limitations* (a proposition United may address in a future motion, after

16  completion of discovery), it could not toll the statute of repose.

17  **V.    The Complaint Fails To Allege With Particularity The Roles Of Any Of**
18  **      The United Defendants In The Alleged Scheme To Submit False Claims.**

19      The final flaw in the Complaint is that its allegations are, without exception,

20  levied against "UnitedHealth" generally.  *See* DOJ Compl. at 1 (explaining that the

21  terms "UnitedHealth" and "UnitedHealth Defendants" are used to refer collectively

22  to seven distinct defendants).   Rule 9(b) bars a plaintiff—including DOJ—from

23  proceeding in that shotgun fashion where, as here, the claims at issue concern

24  "fraud or mistake." Fed. R. Civ. P. 9(b).   Instead, under Rule 9(b), the plaintiff

25  must identify with "particularity" the "'who, what, when, where, and how of the

26  misconduct charged,' as well as 'what is false or misleading about [the purportedly

27  fraudulent] statement, and why it is false.'" *United States ex rel. Cafasso v. Gen.*

28  *Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting *Ebeid ex rel.*

1    *United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)).

2         That Rule has clear implications for a complaint that makes allegations

3    against multiple defendants.  As the Ninth Circuit has explained, "Rule 9(b) does

4    not allow a complaint to merely lump multiple defendants together but 'require[s]

5    plaintiffs to differentiate their allegations when suing more than one defendant.'"

6    *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted).  The

7    plaintiff "must, at a minimum identify the role of each defendant in the alleged

8    fraudulent scheme."  *Lee*, 655 F.3d at 998.  This requirement is necessary to

9    "inform each defendant separately of the allegations surrounding his alleged

10   participation in the fraud."  *Swartz*, 476 F.3d at 764-65 (citation omitted).

11        The Complaint does not meet that standard with respect to any one of the

12   seven United defendants.  Instead, despite more than five years of investigation

13   and nearly six months of delay following the Ninth Circuit's decision to remand,

14   DOJ filed a classic "shotgun pleading" that wholly fails to "state[ ] clearly how

15   each and every defendant is alleged to have violated plaintiffs' legal rights."

16   *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011).  After a preliminary section

17   that identifies each "UnitedHealth Defendant" and the relationships between them,

18   *see* DOJ Compl. ¶¶ 15-22, every ensuing allegation in the Complaint relevant to

19   United refers to all UnitedHealth Defendants as if they were one collective entity.

20   *See, e.g.*, *id.* ¶ 63 ("*UnitedHealth* knew that many provider-reported diagnoses

21   submitted to the Medicare Program for risk adjustment payments were not

22   supported by the beneficiaries' medical records and were invalid." (emphasis

23   added)); *id.* ¶ 88 ("*UnitedHealth* contracted with a vendor, TCS (The Coding

24   Source), to perform retrospective chart reviews of capitated provider groups in

25   California." (emphasis added)); *id.* ¶ 93 ("*UnitedHealth* funded half the cost of

26   chart reviews by TCS of UnitedHealth beneficiaries who received healthcare from

27   HCP." (emphasis added)); *id.* ¶ 108 ("*UnitedHealth* submitted a Risk Adjustment

28   Attestation each year after the final risk adjustment submission deadline but before

1    the final reconciliation payment.") (emphasis added).

2        These and other collective allegations would have been acceptable if they

3    were "used to describe the actions of multiple defendants who are alleged to have

4    engaged in precisely the same conduct." *Swoben*, 848 F.3d at 1184. But that is not

5    what DOJ is attempting here. For example, the Complaint refers to "*a* Risk

6    Adjustment Attestation" that was submitted "each year," a singular rather than

7    plural reference that makes it clear that seven different UnitedHealth Defendants

8    (many of whom do not even own or offer Medicare Advantage plans) were not

9    *each* submitting Risk Adjustment Attestations. DOJ Compl. ¶ 108 (emphasis

10   added). Similarly, it is plainly not the case that each of the seven UnitedHealth

11   Defendants had contracted with The Coding Source or funded HCP's individual

12   chart review efforts.

13       The fact that the UnitedHealth Defendants are related corporate entities does

14   not change this rule. Courts in this circuit presume that all companies—including

15   parents and their wholly owned subsidiaries—have an existence separate from one

16   another. *See, e.g., United States ex rel. Pecanic v. Sumitomo Elec. Interconnect*

17   *Prods. Inc.*, No. 12-cv-0602-L (NLS), 2013 WL 774177, at *5 (S.D. Cal., Feb. 28,

18   2013). Plaintiffs may not "commingle" defendants, whether related entities or not,

19   but rather must clearly "demonstrate that each entity is liable for its own role in the

20   submission of false claims or statements." *Id*; *see also United States v. Safran*

21   *Grp., S.A.,* No. 15-CV-00746-LHK, 2017 WL 235197, at *8 (N.D. Cal. Jan. 19,

22   2017) (holding that "FCA claims cannot be imputed from one party to the other

23   based purely on a parent-subsidiary relationship" and that Relators' "generalized

24   allegations made against the three 'Defendants' . . . make it impossible" to

25   determine which defendant or defendants made false statements and

26

27

28

1    certifications).[8]

2        Because the Complaint does not "identify the role of each defendant in the

3    alleged fraudulent scheme," *Swartz*, 476 F.3d at 765 (quoting *Moore v. Kayport*

4    *Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989)), it fails to satisfy Rule

5    9(b) and should be dismissed.

## CONCLUSION

7        The Court should dismiss the Complaint in its entirety.  By the time DOJ

8    filed it, this case had been pending for eight years.  DOJ already had conducted

9    what it described as an "intensive" investigation.  And it had months and months

10   after the Ninth Circuit's remand to draft the Complaint.  If there really were

11   substance to DOJ's case, it should have been able to assemble a complaint that

12   pled its claims with the requisite particularity and plausibility.

13       But DOJ's Complaint fails those tests.  Most significantly, it fails properly to

14   plead two elemental aspects of its claims: That United knowingly submitted false

15   attestations, and that the government would have refused to pay United's claims if

16   it had known of the truth.  Those failings are not careless errors.  Rather, they

17   reflect the broader problem with DOJ's case, which is that it has attempted to turn

18   a well-known, good-faith disagreement about the meaning of regulatory and

19   statutory language into a False Claims Act suit.  The False Claims Act is not

20   intended to penalize such disagreements—and no wonder, therefore, that DOJ's

21   factual allegations do not line up with its required elements.

22       Beyond those overarching failings, the Complaint is deficient in several

23   additional ways as well.  It pleads legal theories this Court already dismissed, that

24   the relator litigating on the government's behalf failed to appeal, and that the Ninth

25

26   [8] *See also Roberts v. UBS AG,* No. CV F 12-0724 LJO SKO, 2013 WL 394701, at
27   *9 (E.D. Cal, Jan. 30, 2013) (finding that allegations "lump[ing] multiple
     defendants . . . offer[] little clarity as to the description and source of affirmative
28   misrepresentations or concealments").

1    Circuit already refused to revive.  It seeks to hold United accountable for alleged

2    conduct that occurred more than a decade before it was filed, directly contravening

3    Congress's establishment of an exception-free statute of repose.  And it does all of

4    this in a shotgun format that fails to set forth particularized allegations of

5    misconduct against any of the seven distinct defendants.

6           For these reasons, the Complaint should be dismissed.

7

8

9    Dated:  July 14, 2017                    LATHAM & WATKINS LLP

10                                            DAVID J. SCHINDLER
                                             DANIEL MERON
11                                            ABID R. QURESHI

12

13                                            By   /s/ David J. Schindler
                                             David J. Schindler
14                                            Attorneys for Defendants
                                             UNITEDHEALTH GROUP
15                                            INCORPORATED, UHC OF
                                             CALIFORNIA, UNITED HEALTHCARE
16                                            SERVICES, INC., OPTUM, INC.,
                                             OPTUMINSIGHT, INC.,
17                                            UNITEDHEALTHCARE, INC., UHIC
                                             HOLDINGS, INC.

18

19

20

21

22

23

24

25

26

27

28