LATHAM & WATKINS LLP
  David J. Schindler (Bar No. 130490)
  *david.schindler@lw.com*
355 South Grand Avenue, Suite 100
Los Angeles, California 90071-1560
Telephone: +1.213.485.1234
Facsimile: +1.213.891.8763

LATHAM & WATKINS LLP
  Daniel Meron (appearing *pro hac vice*)
  *daniel.meron@lw.com*
  Abid R. Qureshi (appearing *pro hac vice*)
  *abid.qureshi@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Telephone: +1.202.637.2200
Facsimile: +1.202.637.2201

Attorneys for Defendants UnitedHealth Group Incorporated; UHC of California; United HealthCare Services, Inc.; Optum, Inc.; OptumInsight, Inc.; UnitedHealthcare, Inc.; and UHIC Holdings, Inc. (collectively, "United")

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel*. JAMES M. SWOBEN,<br><br>Plaintiffs,<br><br>v.<br><br>SECURE HORIZONS, *et al.*,<br><br>Defendants. | CASE NO. CV 09-5013 JFW (JEMx)<br><br>Assigned to Hon. John F. Walter<br><br>**UNITED'S REPLY IN SUPPORT OF MOTION TO DISMISS UNITED STATES' COMPLAINT-IN-PARTIAL-INTERVENTION**<br><br>Date:    September 18, 2017<br>Time:    1:30 p.m.<br>Ctrm:    7A<br><br>Pre-Trial: November 9, 2018<br>Trial:    November 27, 2018 |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

REPLY IN SUPPORT OF
MOTION TO DISMISS
CV 09-5013 JFW (JEMx)

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

ARGUMENT .............................................................................................................. 1

I. The Ninth Circuit's Decision Does Not Preclude United From Raising Issues That Were Neither Pressed Nor Passed Upon By That Court ........................................................................................................ 1

II. DOJ's Complaint Lacks Adequate Allegations Concerning Knowledge And Materiality ............................................................................. 3

    A. DOJ's Complaint Does Not Adequately Allege That United Submitted Attestations That It Knew Were False ................. 3

    B. Even Now, DOJ Does Not Allege CMS Would Have Withheld Payment Had It Known About The Supposedly False Attestations .............................................................................. 6

III. DOJ Cannot Revive Reverse False Claims Counts This Court Dismissed ................................................................................................... 8

IV. The Statute Of Repose Bars Claims Concerning Conduct More Than Ten Years Prior To DOJ's Complaint .................................................. 9

V. DOJ's Complaint Lacks Particularized Allegations About The Separate Corporate Defendants Named In The Complaint ......................... 11

CONCLUSION ......................................................................................................... 12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

i

REPLY IN SUPPORT OF
MOTION TO DISMISS
CV 09-5013 JFW (JEMx)

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Cty. of Lake*,
 No. 14-CV-03934-TEH, 2014 WL 6467313 (N.D. Cal. Nov. 17, 2014) ................................................................................................. 2

*Babauta v. Babauta*,
 2013 WL 5430174 (Guam Aug. 20, 2013) ......................................... 2

*Baker v. Trans Union LLC*,
 No. CV07-8032-PCT-JAT, 2008 WL 2329099 (D. Ariz. June 4, 2008) ................................................................................................. 2

*United States ex rel. Brooks v. Trillium Cmty. Health Plan, Inc.*,
 No. 6:14-CV-01424-AA, 2016 WL 1725300 (D. Or. Apr. 29, 2016) ............................................................................................... 10

*United States ex rel. Campie v. Gilead Scis., Inc.*,
 862 F.3d 890 (9th Cir. 2017) ............................................................. 7

*Eichorn v. AT&T Corp.*,
 484 F.3d 644 (3d Cir. 2007) .............................................................. 2

*Hagood v. Sonoma Cty. Water Agency*,
 81 F.3d 1465 (9th Cir. 1996) ............................................................. 5

*In re Int'l Rectifier Corp. Sec. Litig.*,
 No. CV 07-02544-JFW (VBKx), 2008 WL 4555794 (C.D. Cal. May 23, 2008) ............................................................................ 5, 6

*United States ex rel. Kelly v. Serco*,
 846 F.3d 325 (9th Cir. 2017) ............................................................. 7

*United States ex rel. Kolchinsky v. Moody's Corp.*,
 No. 12cv1399, 2017 WL 825478 (S.D.N.Y. Mar. 2, 2017) ............... 7

*Mbaku v. Bank of Am., N.A.*,
 628 F. App'x 968 (10th Cir. 2015) .................................................... 2

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

ii

REPLY IN SUPPORT OF
MOTION TO DISMISS
CV 09-5013 JFW (JEMx)

*United States ex rel. Modglin v. DJO Global Inc.*,
  114 F. Supp. 3d 993 (C.D. Cal. 2015), *aff'd, United States v. DJO Global, Inc.*, 678 F. App'x 594 (9th Cir. 2017) .................................................. 4

*Newsome v. McCabe*,
  319 F.3d 301 (7th Cir. 2003) .......................................................................... 9

*Nordstrom, Inc. v. Chubb & Son, Inc.*,
  54 F.3d 1424 (9th Cir. 1995) .......................................................................... 4

*Petratos v. Genentech*,
  855 F.3d 481 (3d Cir. 2017) ........................................................................... 7

*United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*,
  794 F.3d 457 (5th Cir. 2015), *aff'd on unrelated issue*, 137 S. Ct. 436 (2016) ........................................................................................................ 4

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) ........................................................................ 12

*United States ex rel. Swoben v. United Healthcare Ins. Co.*,
  848 F.3d 1161 (9th Cir. 2016) ................................................................*passim*

*United States ex rel. Bledsoe Cmty. Health Sys., Inc.*,
  501 F.3d 493 (6th Cir. 2007) .......................................................................... 6

*United States v. SAIC.*,
  626 F.3d 1257 (D.C. Cir. 2010) ..................................................................... 4

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
  136 S. Ct. 1989 (2016) ............................................................................ 6, 7, 8

**Statutes**

31 U.S.C. § 3729(a)(1)(A), (B) .............................................................................. 4

31 U.S.C. § 3731(c) .............................................................................................. 10

42 U.S.C. § 1395w-23(a)(1)(C)(i) .......................................................................... 5

**Other Authorities**

42 C.F.R. § 422.504(*l*) ...................................................................................... 4, 9

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

iii

REPLY IN SUPPORT OF
MOTION TO DISMISS
CV 09-5013 JFW (JEMx)

## INTRODUCTION

DOJ fails to identify any allegation that the employees who signed the supposedly false attestations at the core of this case believed those attestations to be anything but true. DOJ also fails to identify any allegation that CMS would have refused to pay United's claims if it had known all the facts about those supposedly false attestations. And DOJ does not even *try* to show that the complaint includes within its four corners particularized allegations about each United defendant. DOJ avoids these issues (and others raised in United's motion) by arguing instead that the Ninth Circuit decided more than it did, and that ordinary principles of statutory interpretation, waiver, and pleading do not apply. In the end, DOJ fails to salvage its flawed complaint, which should be dismissed in its entirety.

## ARGUMENT

### I. The Ninth Circuit's Decision Does Not Preclude United From Raising Issues That Were Neither Pressed Nor Passed Upon By That Court

In 2013, United moved to dismiss Relator James Swoben's Third Amended Complaint (TAC). ECF No. 114. Swoben *conceded* in response that the TAC was inadequate, and he requested leave to amend (without attaching a proposed amended complaint). *See* ECF No. 115. This Court denied Swoben's request and dismissed the TAC. ECF No. 133 at 6, 10. Swoben appealed, presenting as his sole question whether this Court "commit[ted] legal error when it refused to allow Swoben to file a Fourth Amended Complaint." ECF No. 325, Exhibit 1 at 2. In remanding with instructions to permit Swoben to amend, the Ninth Circuit did not decide whether Swoben had adequately alleged that anyone at United had *knowingly* violated the FCA, whether any such violation had been *material*, or whether Swoben had adequately differentiated between the various related United entities. *See United States ex rel. Swoben v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1185 (9th Cir. 2016). Nor did the court decide whether an as-yet unfiled DOJ complaint might state a cognizable claim.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

1

REPLY IN SUPPORT OF
MOTION TO DISMISS
CV 09-5013 JFW (JEMx)

Nevertheless, DOJ's lead argument (at 5-8) is that the Ninth Circuit silently decided the sufficiency of allegations about knowledge, materiality, and individual corporate defendants' conduct in a DOJ complaint that *did not exist* at the time.

DOJ is wrong. It ignores that "a finding that amendment is not futile is not the same as finding that a complaint should not be dismissed for failure to state claim." *Allen v. Cty. of Lake,* No. 14-CV-03934-TEH, 2014 WL 6467313, at *2 (N.D. Cal. Nov. 17, 2014) For this reason, "granting leave to amend does not preclude [a] Defendant from filing a 12(b)(6) Motion to Dismiss," *Baker v. Trans Union LLC,* No. CV07-8032-PCT-JAT, 2008 WL 2329099, at *3 (D. Ariz. June 4, 2008), and does not prevent the court from granting a subsequent motion to dismiss, *Mbaku v. Bank of Am., N.A.*, 628 F. App'x 968, 976 (10th Cir. 2015).

Nor should it. The question in deciding whether to permit amendment is whether "the pleading could . . . *possibly* be cured by the allegation of other facts." *Swoben*, 848 F.3d at 1182 (emphasis added). When Swoben sought leave to amend, he did not attach a complete proposed amended complaint but instead described some additional allegations he would include and indicated that he planned to make other unspecified allegations, too. *See* MTD 19-20, ECF No. 316. Before this Court and the Ninth Circuit, United thus focused on arguments that Swoben could not possibly have cured through additional allegations, leaving for a potential later Rule 12(b)(6) motion other issues that would turn on the specific allegations he actually offered. The Ninth Circuit could not have passed on issues that United did not raise and that would depend on allegations that Swoben had explicitly indicated he intended to change.[1]

DOJ emphasizes (at 7) the Ninth Circuit's statements that Swoben had

---

[1] An appellee is "not required to raise all possible alternative grounds for affirmance to avoid waiving those grounds." *Eichorn v. AT&T Corp.*, 484 F.3d 644, 657-58 (3d Cir. 2007) (collecting cases). By contrast, *Babauta v. Babauta*, 2013 WL 5430174 (Guam Aug. 20, 2013), involved an *appellant*'s failure to raise an issue that had been decided against him in the trial court.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

2

REPLY IN SUPPORT OF
MOTION TO DISMISS
CV 09-5013 JFW (JEMx)

alleged "a cognizable legal theory" and "satisfie[d] Rule 9(b)" requirements as to United. 848 F.3d at 1176, 1181. But those statements only addressed the Ninth Circuit's rejection of the arguments United raised concerning Swoben's failure to identify specific instances of falsity. See id. at 1183. The Ninth Circuit did not purport to (and had no occasion to) address and reject every conceivable challenge to Swoben's not-yet-existing complaint. And it certainly did not address challenges to DOJ's subsequently filed complaint, which makes new and distinct allegations that are wholly outside the scope of the Ninth Circuit's decision. United's challenges thus are not remotely barred by the Ninth Circuit's decision.[2]

## II. DOJ's Complaint Lacks Adequate Allegations Concerning Knowledge And Materiality

DOJ devotes much of its opposition to the Ninth Circuit's discussion of whether and under what circumstances United's attestations might be rendered false. See, e.g., Opp'n 2-4, 9-10.[3] But that discussion of the *falsity* element of the claims presented here is irrelevant to this motion: While United would vigorously contest the falsity element at later stages of this case, United has not sought dismissal on that ground, and its motion does not depend on whether DOJ's falsity theory is right or wrong. The question now before this Court is whether, even if United's attestations were false, DOJ has adequately alleged that they were *knowingly* false and that the attestations were *material* to CMS's decision to pay.

### A. *DOJ's Complaint Does Not Adequately Allege That United Submitted Attestations That It Knew Were False*

The sole theory of falsity the Ninth Circuit allowed to proceed is that

---

[2] DOJ also ignores the fact that Optum, Inc. and OptumInsight, Inc. were added to the case only after DOJ intervened. Those defendants could not have previously asserted these arguments, and DOJ does not explain why they should be bound on issues the Ninth Circuit never addressed.

[3] The Ninth Circuit did not have briefing on (and did not purport to evaluate) the *validity* of the various regulatory provisions the government relied on there. That question is currently pending in United's APA case. See ECF No. 295 at 4-5.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

3

REPLY IN SUPPORT OF
MOTION TO DISMISS
CV 09-5013 JFW (JEMx)

United's attestations under 42 C.F.R. § 422.504(l) were false. But in order for DOJ to state a claim under the FCA, United must not only have submitted false attestations but must have done so "knowingly." 31 U.S.C. §3729(a)(1)(A), (B).

As United explained (at 7-8), a corporation cannot act "knowingly" unless a specific *employee* does so. See Nordstrom, Inc. v. Chubb & Son, Inc., 54 F.3d 1424, 1435 (9th Cir. 1995); United States v. SAIC., 626 F.3d 1257, 1274 (D.C. Cir. 2010). In order to plead its claims, therefore, DOJ was required to offer plausible allegations that the individuals required by law to submit attestations on United's behalf did so knowing the attestations were false. See United States ex rel. Modglin v. DJO Global Inc., 114 F. Supp. 3d 993, 1024 (C.D. Cal. 2015), aff'd, United States v. DJO Global, Inc., 678 F. App'x 594 (9th Cir. 2017). DOJ concedes that it has made no such allegation.

DOJ's primary response is to point to cases recognizing that a company may be liable under the FCA if it acts to "ensur[e] that signers of attestations are kept in the dark about company fraud." Opp'n 9 (citing United States ex rel. Harrison v. Westinghouse Savannah River Co., 352 F.3d 908, 919 (4th Cir. 2003); United States ex rel. Rigsby v. State Farm Fire & Cas. Co., 794 F.3d 457, 479 (5th Cir. 2015), aff'd on unrelated issue, 137 S. Ct. 436 (2016)). But this is not that kind of case. DOJ has nowhere alleged that anyone at United took action to shield the signatories from knowledge that would have shown those attestations were false. More fundamentally, the "ignorant certifier" cases that DOJ invokes all spoke to circumstances in which the certifier's belief that the certification was true reflected a lack of information. Here, by contrast, the certifiers' belief that the attestations were true did not primarily reflect a lack of information, but rather a genuine disagreement with the government about what the attestations meant. Unlike a deliberate or reckless ignorance of facts that establish falsity, that sort of disagreement over "a disputed legal question" renders a claim "neither deliberately ignorant nor recklessly disregardful." *Hagood v. Sonoma Cty. Water Agency*, 81

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

4

REPLY IN SUPPORT OF
MOTION TO DISMISS
CV 09-5013 JFW (JEMx)

F.3d 1465, 1478 (9th Cir. 1996) (citation omitted).

DOJ has long been aware of this basic disagreement, not only through depositions but also United's APA suit. United's view is that the relevant measure of accuracy for purposes of risk adjustment is a *comparative* one, rather than an absolute one. An MA plan's data is accurate, under that view, if it has the same level of accuracy as Medicare's own data, thereby ensuring "actuarial equivalence." 42 U.S.C. § 1395w-23(a)(1)(C)(i). DOJ, by contrast, has argued that MA plans should be held to an *absolute* measure of accuracy, under which a plan's attestation—that, to the best of its knowledge, its data is accurate—is false so long as the plan knows of the existence of some diagnosis codes that are unsupported by medical charts even though CMS's own data contains numerous similar discrepancies. That disagreement will be fully briefed and resolved in the pending APA case, *see* ECF No. 295 at 4-5, and is not presently at issue here. It is nevertheless relevant because it explains why DOJ has been unable to allege that any of the signers of the attestations *knowingly* submitted a false claim: DOJ is fully aware that those signatories disagreed with DOJ's interpretation, and that under *their* interpretations United's attestations were truthful.

DOJ's argument that it need not allege that the signers themselves believed that the attestations were false, so long as it can find a single employee with the requisite knowledge, makes no sense. Under DOJ's view, even if every United officer who signed an attestation believed it to be true, United would still have knowingly made a false statement if a single non-speaking United employee (of United's hundreds of thousands of employees) had a different interpretation of the attestations. That is absurd. As this Court has recognized, a "defendant corporation is deemed to have the requisite scienter for fraud only if the individual corporate officer making the statement has the requisite level of scienter." *In re Int'l Rectifier Corp. Sec. Litig.,* No. CV 07-02544-JFW (VBKx), 2008 WL

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

5

REPLY IN SUPPORT OF
MOTION TO DISMISS
CV 09-5013 JFW (JEMx)

4555794, at *21 (C.D. Cal. May 23, 2008) (citation omitted).[4]

In any event, even if it were sufficient that someone *other* than the signatories believed the attestations were false, DOJ has not pled even that: despite five years investigating, it nowhere identifies anyone at United who knew all the facts that DOJ alleges rendered the attestations false and who shared DOJ's interpretation of those attestations.[5]

**B. Even Now, DOJ Does Not Allege CMS Would Have Withheld Payment Had It Known About The Supposedly False Attestations**

DOJ also fails to allege plausibly that the supposed falsity was material. As United noted (at 11), DOJ does not allege that CMS would have withheld payment had it known the truth about the supposedly false attestations.

Under *Universal Health Servs., Inc. v. United States ex rel. Escobar,* 136 S. Ct. 1989 (2016), the absence of that allegation is fatal to DOJ's claims. The Court there held that "[u]nder any understanding of the concept, materiality 'look[s] to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation.'" *Id.* at 2002 (citation omitted). In order to establish that a false claim or statement was material to the decision to pay, a complaint thus must allege that if it "had not been made, the party complaining of fraud would not have taken the action alleged to have been induced by the misrepresentation." *Id.* at 2003 n.5 (citation omitted). Here, those actions are the risk adjustment payments to United, and DOJ must therefore plead that CMS "would not have taken" those

---

[4] DOJ argues (at 13) that *Rectifier* is distinguishable because, as United itself noted, it applied the heightened pleading standard of the PSLRA. The significance of that case is not its application of a particular pleading standard, however, but rather its recognition that under generally applicable principles of substantive agency law, a corporation's scienter with respect to a given statement is determined by examining the scienter of the individual who made it.

[5] DOJ relies on *United States ex rel. Bledsoe Cmty. Health Sys., Inc.,* 501 F.3d 493 (6th Cir. 2007), for the proposition that a complaint need not identify specific individuals *at all* and can allege generally that the company acted knowingly. *Bledsoe*, however, did not involve the FCA's "knowingly" element.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

6

REPLY IN SUPPORT OF
MOTION TO DISMISS
CV 09-5013 JFW (JEMx)

actions, *id.*—*i.e.*, that CMS would not have paid. [6]

DOJ's failure to plead that fact (or even assert it in its brief) is no inadvertent omission: It *cannot* plead that. The government has known about United's understanding of the meaning of its attestations for years. Yet CMS never has refused payment due to this legal disagreement over whether the accuracy of United's data is to be assessed in comparative or absolute terms.

DOJ offers two responses. First, it points to allegations that CMS would not have paid (or would have demanded the return of) amounts associated with specific diagnosis codes if it had known that those *specific codes* were inaccurate.

---

[6] The plaintiffs in *Escobar* alleged that "the Medicaid program would not have paid the[ claims at issue] had it known of the[] violations" alleged." *Id.* at 2004. Even so, the Court remanded for a determination of whether the complaint "adequately pleaded" materiality. *Id.* DOJ claims that "United significantly misrepresent[ed] *Escobar*'s materiality standard," Opp'n 16 n.10, but the Court's disposition of the case confirms that a plaintiff must *at least* allege that the government would not have paid to meet the "demanding" materiality requirement.

DOJ also suggests that a statement is material so long as it "has 'a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property,'" *id.* (quoting *Escobar*, 136 S.Ct. at 2002), regardless of whether the statement would actually have been *likely* to influence the ultimate decision. But *Escobar* was quick to add that "[u]nder any understanding of the concept, materiality 'look[s] to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation.'" 136 S.Ct. at 2002 (citation omitted). In context, therefore, "natural tendency to . . . be capable of influencing" means that a statement is *likely* to affect the ultimate decision of whether to pay. Following *Escobar*, courts around the country consistently have interpreted the case that way. In *United States ex rel. Kelly v. Serco*, for example, the Ninth Circuit found as a matter of law that materiality was lacking where the government had continued to pay the defendant "despite their non-compliance with [the pertinent regulation]." 846 F.3d 325, 334 (9th Cir. 2017); *see also, e.g.*, *Petratos v. Genentech*, 855 F.3d 481, 490 (3d Cir. 2017); *United States ex rel. Kolchinsky v. Moody's Corp., No. 12cv1399*, 2017 WL 825478 (S.D.N.Y. Mar. 2, 2017). *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890 (9th Cir. 2017) did not hold otherwise. The Ninth Circuit there held that "the false claim or statement must be 'the sine qua non of receipt of state funding.'" *Id.* at 899 (citation omitted). Its reference to a "mere possibility that the government would be entitled to refuse payment," *id.* at 907, was not (as DOJ seems to suggest) the articulation of a "mere possibility" standard, which *Escobar* expressly rejected. See 136 S.Ct. at 2003. Rather, it was simply the Ninth Circuit's description of the (insufficient) claims in an earlier case, *Kelly*, that *Campie* distinguished on the grounds that the agency that allegedly knew of the fraud (FDA) in *Campie* was not an agency that paid the claims (the VA, Bureau of Prisons, and CMS), and that the defendant in *Campie* had become compliant by the time many of the payments were made.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

7

REPLY IN SUPPORT OF
MOTION TO DISMISS
CV 09-5013 JFW (JEMx)

*See* Opp'n 15. But that is beside the point, because—as DOJ itself emphasizes (at 14) and the Ninth Circuit held, 848 F.3d at 1183—the "false claims" here are the attestations, not the codes. *See also* Compl. ¶ 110, 114-15, ECF No. 296. It is thus the materiality of the attestations, not the codes, that DOJ must establish.

Second, as to the attestations themselves, DOJ's only argument (at 17) is that their submission was a condition of payment and thus that CMS would have been entitled to withhold payments if United had not submitted them. But that is the very argument the Supreme Court rejected in *Escobar*: "[a] misrepresentation cannot be deemed material merely because the Government designates compliance with a particular . . . requirement as a condition of payment." 136 S.Ct. 1989, 2003 (2016). "Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance." *Id.* Without any allegation—let alone a *plausible* allegation—that the government would not have paid the claims had it known all the facts about United's attestations, DOJ's complaint must be dismissed on this ground as well.

**III. DOJ Cannot Revive Reverse False Claims Counts This Court Dismissed**

United's motion to dismiss next explained (at 12) that the "reverse false claims" theory asserted in DOJ's complaint can no longer be properly asserted *in this case* because it was waived by Swoben on appeal. Notwithstanding the fact that this Court's dismissal of the reverse false claims theory has become law of the case, DOJ insists that it is entitled to re-insert those claims into this proceeding on remand for essentially two reasons. Neither is correct.

*First*, DOJ argues (at 18-19) that because Swoben filed a notice of appeal from this Court's entire judgment, he cannot have waived the reverse false claims arguments. But Swoben's waiver occurred not in his notice of appeal but in his failure to brief the reverse false claims issues before the Ninth Circuit. MTD at 12. Nor is DOJ correct that the reverse false claims issues were inextricably intertwined with the traditional false claims arguments that Swoben did raise on

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

8

REPLY IN SUPPORT OF
MOTION TO DISMISS
CV 09-5013 JFW (JEMx)

appeal. *See* Opp'n 20. However interchangeable the theories may be in some cases, here the Ninth Circuit's decision about the traditional False Claims Act counts focused specifically on the content of the attestations and emphasized that "[u]nder Swoben's theory, . . . the false claims are the allegedly false § 422.504(*l*) certifications, not the erroneously reported diagnosis codes." *Swoben*, 848 F.3d at 1183. Indeed, that also was the basis for its holding that "Swoben need not identify specific diagnosis codes that should have been withdrawn." *Id.* Under the reverse false claims theory DOJ asserts now, Swoben would have needed to identify those specific diagnosis codes because it is the individual alleged overpayments—rather than the allegedly false statements in the attestations—that form the basis for liability. *See* Opp'n 2 n.2.

*Second*, DOJ argues (at 19) that this Court's earlier dismissal of the reverse false claims theory cannot constrain DOJ because it was entered without prejudice to the United States and because Swoben could not waive DOJ's claims without consent of the attorney general. But both of those facts mean only that if DOJ had filed a new suit, it would have been free to bring these claims in that new suit. Having chosen to instead intervene in this suit (in order, presumably, to take advantage of the relation-back provision for statute of limitations purposes), DOJ is bound by the litigating decisions of the relator whom it allowed to proceed on its behalf. *See Newsome v. McCabe*, 319 F.3d 301, 303 (7th Cir. 2003) (holding law of the case resulting from earlier decision applicable to government intervenor).[7]

### IV. The Statute Of Repose Bars Claims Concerning Conduct More Than Ten Years Prior To DOJ's Complaint

Next, United explained (at 14-21) that the FCA's ten-year statute of repose

---

[7] Section 3731(c)'s provision allowing DOJ to add additional claims does not suggest otherwise. Section 3731(c) ordinarily involves amendment before a court has addressed a defendant's claims. It does not purport to override doctrines, such as the law of the case, that speak to the effect of judicial decisions once entered, and DOJ identifies no case that has ever applied Section 3731(c) in that manner.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

9

REPLY IN SUPPORT OF
MOTION TO DISMISS
CV 09-5013 JFW (JEMx)

bars DOJ's claims concerning conduct that occurred more than ten years before DOJ filed its complaint. In response, DOJ argues (at 20) that because the statute of repose is located in Section 3731(b)(2), it does not apply where DOJ invokes the six-year statute of limitations in Section 3731(b)(1) and the relation-back provision in Section 3731(c). In DOJ's view, therefore, DOJ can investigate a case under seal indefinitely without a defendant's knowledge, then file a complaint-in-intervention decades after the fact simply because the relator's complaint was filed (under seal) within six years of the challenged conduct.

That reading ignores the very purpose of a statute of repose, which is to cut off liability absolutely after a fixed time. Congress mandated that "[i]n no event" may suit be brought more than 10 years after a violation following testimony specifically directed to the unfairness of the decades-long delays that DOJ's interpretation would allow. *See* MTD at 15, 17. It is thus no accident that DOJ cannot find a single case holding the statute of repose inapplicable whenever DOJ seeks relation back and invokes the six-year statute of limitations. To the contrary, courts have recognized that the six-year statute of limitations and ten-year statute of repose are distinct, and must both be satisfied. *See, e.g.*, United States ex rel. Brooks v. Trillium Cmty. Health Plan, Inc., No. 6:14-CV-01424-AA, 2016 WL 1725300, at *3 (D. Or. Apr. 29, 2016).

DOJ argues (at 21) that "[h]ad Congress intended to impose a ten-year limit on section (c)'s relation-back provision, it would have done so as it did in section (b)(2), but it did not." But Congress *did* impose such a limit by making relation back effective only "[f]or statute of limitations purposes." 31 U.S.C. §3731(c). DOJ ignores that specific textual limitation on the scope of relation back, which would be superfluous under DOJ's contrary reading.

In any event, even if DOJ were right that relation back under Section 3731(c) allows DOJ to reach back indefinitely, DOJ does not dispute that its complaint cannot relate back prior to the period alleged in the relator's complaint.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

10

REPLY IN SUPPORT OF
MOTION TO DISMISS
CV 09-5013 JFW (JEMx)

Here, the prior Swoben complaints only pled relevant conduct beginning in 2008. DOJ's present theory is that United violated the FCA by funding and otherwise supporting chart reviews conducted by and on behalf of HCP, a so-called "capitated provider" that is paid a fixed amount based on the health status of its patients (and that retains the lion's share of the CMS payments for those patients). *See* Compl. ¶¶ 87-107 (describing allegations about United's involvement with HCP chart reviews and the incentives of capitated providers). That theory is quite obviously a continuation of the allegations in Count 9 of Swoben's Third Amended Complaint, which alleged that *beginning in 2008* "Healthcare Partners and [United] improperly conceived [and] planned" the manner in which "Healthcare Partners conducted its review of [its] medical charts." TAC ¶ 125, 127, ECF No. 31. The allegations contained in the Third Count of Swoben's SAC and TAC, by contrast, which DOJ points out date to 2005, concerned United's performance of its *own* chart reviews of its own patients. SAC, ¶ 38, ECF No. 23. Swoben's Count Three did not contain any allegations that United had conspired with HCP (or any other capitated provider) to support or pay for chart reviews performed by or on behalf of *those* providers for *their* patients; that allegation appeared for the first time in Count 9 of the TAC, concerning conduct that began in 2008.

## V. DOJ's Complaint Lacks Particularized Allegations About The Separate Corporate Defendants Named In The Complaint

Finally, United explained (at 21-24) that DOJ's complaint fails to offer particularized allegations about each of the distinct corporate entities named as a defendant. DOJ's primary response (at 23-24) is to invoke the Ninth Circuit's statement that "[t]here is no flaw in a pleading . . . where collective allegations are used to describe the actions of multiple defendants who are alleged to have engaged in precisely the same conduct." *Swoben*, 848 F.3d at 1184. Pointing to an Attestation that is not attached to or quoted in relevant part in the complaint, DOJ argues that all of the United entities other than Optum, Inc., and OptumInsight,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

11

REPLY IN SUPPORT OF
MOTION TO DISMISS
CV 09-5013 JFW (JEMx)

Inc., engaged in precisely the same conduct because "the Attestations show on their face that they were submitted on behalf of UnitedHealth Group as well as its … MA Plans."

As an initial matter, DOJ does not point to any case holding that a plaintiff can satisfy Rule 9(b) through documents that it first submits as an attachment to its opposition to a motion to dismiss. But more importantly, DOJ blatantly misrepresents the content of that attachment. The Attestation does *not* show that it is submitted "on behalf of UnitedHealth Group as well as its MAOs and MA Plans." Opp'n 24. It indicates that it is submitted "[o]n behalf of the UnitedHealth Group entities listed in Attachment 1." Opp'n 27, Ex. 1 Attachment 1, in turn, does not list defendants UnitedHealth Group, United HealthCare Services, Inc., UnitedHealthcare, Inc., or UHIC Holdings, Inc, but only the MA plan subsidiaries.

As to Optum, Inc., and OptumInsight, Inc., DOJ's only argument is to point (at 23) to a single paragraph in the complaint that names those two entities and says that they "shared the responsibility with other UnitedHealth entities for" reporting and returning overpayments. Compl. ¶ 18. DOJ then cites a handful of other paragraphs in the Complaint that it claims contained "detailed" allegations about the knowledge and responsibility of employees whom it asserts (though the Complaint does not allege) work at the Optum entities. But nowhere in the complaint is there any explanation of *why* either Optum entity would be legally responsible for identifying and returning other entities' overpayments to CMS. And without such an explanation, the Complaint does exactly what the Ninth Circuit has held impermissible: "merely lump multiple defendants together," rather than "differentiat[ing] allegations when suing more than one defendant." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

REPLY IN SUPPORT OF
MOTION TO DISMISS
CV 09-5013 JFW (JEMx)

| | | |
|---|---|---|
| 1 | | |
| 2 | Dated: August 29, 2017 | LATHAM & WATKINS LLP |
| 3 | | DAVID J. SCHINDLER |
| 4 | | DANIEL MERON<br>ABID R. QURESHI |
| 5 | | |
| 6 | | By /s/ David J. Schindler |
| 7 | | David J. Schindler<br>Attorneys for Defendants |
| 8 | | UNITEDHEALTH GROUP<br>INCORPORATED, UHC OF |
| 9 | | CALIFORNIA, UNITED HEALTHCARE<br>SERVICES, INC., OPTUM, INC., |
| 10 | | OPTUMINSIGHT, INC.,<br>UNITEDHEALTHCARE, INC., UHIC<br>HOLDINGS, INC. |

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

13

REPLY IN SUPPORT OF
MOTION TO DISMISS
CV 09-5013 JFW (JEMx)