UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   **CV 09-5013-JFW (JEMx)**                                    Date: October 5, 2017

Title:       United States of America, et al. -v- Scan Health Plan, et al.

**PRESENT:**

   **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

   Shannon Reilly                                   None Present
   Courtroom Deputy                                 Court Reporter

**ATTORNEYS PRESENT FOR PLAINTIFFS:**          **ATTORNEYS PRESENT FOR DEFENDANTS:**
            None                                              None

**PROCEEDINGS (IN CHAMBERS):**   ORDER GRANTING DEFENDANTS HEALTHCARE PARTNERS, LLC AND HEALTHCARE PARTNERS MEDICAL GROUP, INC.'S MOTION TO DISMISS FOURTH AMENDED COMPLAINT [filed 7/14/17; Docket No. 315]

On July 14, 2017, Defendants Healthcare Partners, LLC and Healthcare Partners Medical Group, Inc. (collectively, the "Healthcare Partners") filed a Motion to Dismiss Fourth Amended Complaint ("Motion").  On August 22, 2017, Plaintiff and *Qui Tam* Relator James M. Swoben ("Swoben") filed his Opposition.  On August 29, 2017, the Healthcare Partners filed a Reply.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument.  The matter was, therefore, removed from the Court's September 18, 2017 hearing calendar and the parties were given advance notice.  After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.      Factual and Procedural Background**

   **A.      Medicare System and CMS**

Medicare is a health insurance program administered by the Centers for Medicare & Medicaid Services ("CMS"), designed to provide access to health insurance for Americans aged 65 and older, people under age 65 with certain disabilities, and people of all ages with End-Stage Renal Disease (permanent kidney failure requiring dialysis or a kidney transplant).  Eligible Medicare beneficiaries are provided a choice of either signing up for traditional fee-for-service ("FFS") coverage under Medicare Part A (Hospital Insurance) and Part B (Medical Insurance), or selecting a private plan option under Part C, which is also known as "Medicare Advantage."  42

U.S.C. § 1395w-21(a).

Under the traditional FFS model, physicians and hospitals (known as "providers") who care for beneficiaries are reimbursed directly by the federal government. Under Medicare Advantage, a private insurer ("MA Plan") is responsible for providing the benefits that traditional Medicare offers and, in return, receives capitated, per-member-per-month ("PMPM") payments from the federal government. See 42 U.S.C. § 1395w-23(a)(1). Because MA Plans receive the same monthly payment regardless of the volume of services a beneficiary actually uses, the MA Plan assumes the risk a beneficiary's expenses may exceed the capitated payment for that month.

Between 2000 and 2007, the federal government developed a system for adjusting monthly payments to MA Plans to reflect, in part, the health status of their beneficiaries. See 42 U.S.C. § 1395w-23(a)(3). Through "risk adjustment," the federal government sought to ensure that MA Plans are "paid appropriately for their plan enrollees (that is, less for healthier enrollees and more for less healthy enrollees)." *Medicare Program: Establishment of the Medicare Advantage Program*, 70 Fed. Reg. 4588, 4657 (Jan. 28, 2005). To help accomplish this goal, risk adjusted capitated payments are partially based on beneficiary demographics and health status. See 42 U.S.C. § 1395w-2 23(a)(1)(C)(I); 42 C.F.R. § 422.308(c).

Risk adjusted capitated payments to MA Plans take into account the relative severity of patient conditions as compared to the average Medicare FFS beneficiary. 42 U.S.C. § 1395w-23(a)(1)(C)(I); 42 C.F.R. § 6 422.308(c)(l). Payments are adjusted by a "multiplier" (or "risk score") that enhances or lowers reimbursement to the MA Plan on a member-by-member basis depending on the member's relative expected health care expenditures under FFS Medicare as compared to the average FFS beneficiary under Medicare.[1] 42 C.F.R. § 422.308(c). Because MA Plans are compensated on a relative system, the contracts fundamentally presume that both the MA Plans and Medicare will filter and treat diagnostic information the same way.

MA Plans do not themselves diagnose beneficiaries. Rather, MA Plans primarily receive diagnosis codes from providers (*e.g.*, physicians and medical groups). MA Plans also separately retain coding companies to perform retrospective reviews of medical records relating to certain "encounters" (*e.g.*, patient visits to a doctor or hospital) to determine if the providers had properly reported the diagnosis codes for that encounter. Where appropriate, additional diagnosis codes identified in these reviews are transmitted to Medicare.[2]

---

[1] Therefore, the more severe the diagnoses, the higher the risk scores, and, thus, the greater the capitated payments.

[2] A typical retrospective review will result in three categories of diagnosis codes: (1) diagnosis codes supported by properly documented medical charts that were already reported to Medicare shortly after healthcare services were performed on the patients; (2) new diagnosis codes supported by properly documented medical charts that were not previously reported to Medicare; and (3) diagnosis codes that were previously submitted to Medicare that are not supported by properly documented medical charts. Although a new diagnosis code for a patient encounter discovered during a retrospective review may be submitted to the federal government, any diagnosis codes discovered that were not supported by properly documented medical charts must be withdrawn. New diagnosis codes discovered during a retrospective review tend to

Medicare groups certain diagnosis codes associated with each beneficiary and groups them into hierarchical condition categories ("HCCs"), which are disease groupings that predict average health care spending. 42 C.F.R. § 422.2. HCCs are used to "risk adjust" MA payments. *Id.* Because these HCCs are disease groupings, a number of different diagnosis codes can be properly linked to the same HCC (*e.g.*, the codes for liver transplants, heart transplants, and lung transplants, among others, all link to the HCC: "Major Organ Transplant Status").

### B. CMS Audits

CMS performs periodic risk adjustment data validation audits ("RADV") during which it assesses whether diagnosis codes that have been submitted were properly documented. When CMS conducts RADV audits, it attempts to determine, separate and apart from whether the patient in fact has the underlying condition, whether the particular medical chart under review adequately documents that the patient was seen by a provider with an appropriate physician specialty, who took the appropriate actions to diagnose that particular condition during that particular encounter. CMS's regulations provide that so long as a particular diagnosis is adequately documented by a single medical record, the diagnosis will be deemed valid, even if other medical charts fail to properly document that diagnosis. *See, e.g,* 42 C.F.R. § 422.31 l(c)(2)(i)(C) (requires the submission of only one medical record for purposes of appealing the results of an RADV audit). Thus, if multiple providers submit the same diagnosis code for a patient, there would be no impact on the capitated payment due the MA Plan even if one of the diagnosis codes derived from a particular provider's records was later determined to lack adequate documentation.

### C. Procedural History

On July 13, 2009, Swoben filed his initial Complaint under seal, naming Defendants Scan Health Plan and Senior Care Action Network. On September 30, 2009, Swoben filed his First Amended Complaint, which added SCAN Group (SCAN Group, Scan Health Plan, and Senior Care Action Network are collectively referred to as the "SCAN Defendants") and United Healthcare Insurance Company, UnitedHealthCare Services Inc., UHIC, UnitedHealth Group, UnitedHealthCare, United Health, PacifiCare Health Plan Administrators, UHC of California (f/k/a PacifiCare of California), PacifiCare Life and Health Insurance Company, PacifiCare Health Systems (collectively, the "United Defendants")[3]. On October 19, 2010, Swoben filed his Second Amended Complaint. On November 23, 2011, Swoben filed his Third Amended Complaint, which added WellPoint, Aetna, Health Net, and the Healthcare Partners, including Healthcare Partners Independent Physician Association.[4]

On August 17, 2012, the SCAN Defendants, the United States, the State of California, and

---

increase the patients' risk scores, and, thus, increase capitated payments. Diagnosis codes that are not supported by properly documented medical charts tend to decrease the patients' risk scores, and, thus, lower capitated payments.

[3] The United Defendants includes Secured Horizons. However, Secured Horizons is a brand name and not a legal entity.

[4] In December 2012, the Healthcare Partners were acquired by DaVita Inc.

Swoben reached a settlement, and this case was dismissed as to the SCAN Defendants. On or about January 8, 2013, the United States and the State of California declined to intervene in the action against the remaining defendants. On January 8, 2013, the Court issued an order unsealing this action and directing Swoben to serve the Third Amended Complaint on the remaining defendants.

In June 2013, the remaining defendants filed motions to dismiss the Third Amended Complaint on the grounds that Swoben had failed to state his "up-coding" and "delivery of property" claims with the particularity required by Rule 9(b). Swoben did not oppose the pending motions to dismiss, but requested 30 days leave to file a Fourth Amended Complaint. In light of Swoben's response, the Court issued an Order to Show Cause ("OSC") requiring Swoben to file a declaration describing "in detail the proposed Fourth Amended Complaint and why such an amendment would not be futile or denied due to evidence of a lack of diligence or undue delay." In response to the OSC, Swoben's counsel filed a declaration, stating that he "intend[ed] to add allegations," but he failed to detail those allegations. On July 30, 2013, the Court granted the remaining defendants' motions to dismiss the Third Amended Complaint, with prejudice, on the grounds that Swoben had failed to plead his claims with the required specificity and that amendment would be futile. Swoben appealed, and, following the initial briefing and oral argument in the Ninth Circuit, the Government sought and obtained leave to file an *amicus curiae* brief supporting Swoben's position that he should have been permitted to file a Fourth Amended Complaint.

On August 10, 2016, the Ninth Circuit vacated this Court's judgment and remanded this action to this Court with instructions to allow Swoben to file his Fourth Amended Complaint.

On March 13, 2017, Swoben filed his Fourth Amended Complaint. *See* Docket No. 251. In the Fourth Amended Complaint, Swoben alleges a single claim for violation of the False Claim Act, and alleges that the remaining defendants violated the False Claims Act "during and after 2005." On March 16, 2017, the parties stipulated to allow the Government to intervene in this matter, and the Court approved the Stipulation. On May 1, 2017, the Government filed its Complaint-in-Partial-Intervention against the United Defendants only.[5] *See* Docket No. 296. In its Complaint-in-Partial-Intervention, the Government alleges claims for relief for: (1) false claims act: presentation of false or fraudulent claims, 31 U.S.C. § 3729(a)(1)(A) (formerly 31 U.S.C. § 3729(a)(1)); (2) false claims act: making or using false records or statements, 31 U.S.C. § 3729(a)(1)(B) (formerly 31 U.S.C. § 3729(a)(2)); (3) false claims act: conspiracy, 31 U.S.C. § 3729(a)(1)(C) (formerly 31 U.S.C. § 3729(a)(3)), (4) false claims act: reverse false claims, 31 U.S.C. § 3729(a)(1)(G) (formerly 31 U.S.C. § 3729(a)(7)); (5) restitution (unjust enrichment); and (6) payment by mistake. The Government alleges that the United Defendants were aware of the allegedly limited scope of the Healthcare Partners' chart reviews, and that this awareness made the United Defendants' own attestations under Section 422.504(*l*) false. The Government's Complaint-in-Partial-Intervention alleges claims going back to 2005.

## II.  Legal Standard

---

[5] The Government did not intervene as to the Healthcare Partners.

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. "A Rule 12(b)(6) dismissal is proper only where there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc.*, 922 F. Supp. 299, 304 (C.D. Cal. 1996) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)). However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965.

In addition, Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The heightened pleading requirements of Rule 9(b) are designed "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993). In order to provide this required notice, "the complaint must specify such facts as the times, dates, places, and benefits received, and other details of the alleged fraudulent activity." *Id.* at 672. Further, "a pleader must identify the individual who made the alleged representation and the content of the alleged representation." *Glen Holly Entertainment, Inc. v. Tektronix, Inc.,* 100 F. Supp. 2d 1086, 1094 (C.D. Cal. 1999).

In deciding a motion to dismiss, a court must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party. *See, e.g., Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *Summit Technology*, 922 F. Supp. at 304 (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) *cert. denied*, 454 U.S. 1031 (1981)).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990) (citations omitted). However, a court may consider material which is properly submitted as part of the complaint and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201 without converting the motion to dismiss into a motion for summary judgment. *See, e.g., id.*; *Branch v. Tunnel*, 14 F.3d 449, 454 (9th Cir. 1994).

Where a motion to dismiss is granted, a district court must decide whether to grant leave to amend. Generally, the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g., DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). However, a Court does not need to grant leave to amend in cases where the Court determines that permitting a plaintiff to amend would be an exercise in futility. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

**III. Discussion**

In their Motion, the Healthcare Partners argue that Swoben's claims based on conduct prior to March 13, 2007 are barred by the statute of repose. In addition, the Healthcare Partners argue that Swoben attempts to revive a "reverse false claims" theory that has been waived.

### A. Swoben Cannot Revive the Reverse False Claims Theory.

In his Fourth Amended Complaint, Swoben alleges a "reverse false claims" theory. However, that theory was dismissed with prejudice by this Court in its July 30, 2013 Order dismissing Swoben's Third Amended Complaint. Although Swoben appealed the dismissal of his affirmative False Claims Act claims, he did not appeal the dismissal of his reverse false claims theory. In fact, when the Government relied on the reverse false claims theory in its *amicus* brief before the Ninth Circuit, the Ninth Circuit refused to consider the issue because "Swoben . . . did not rely on that provision in his opening and reply briefs." *United States ex. rel. Swoben v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1172 n. 6 (9th Cir. 2016). Thus, the reverse false claims theory is not revived merely because the Ninth Circuit reversed this Court's prior Judgment on other grounds. "[A]n issue or factual argument waived at the trial level before a particular order is appealed, or subsequently waived on appeal, cannot be revived on remand. In essence, the party's waiver becomes law of the case." *Magnetsystems, Inc. v. Nikken, Inc.*, 933 F. Supp. 944, 949-50 (C.D. Cal. 1996); *see also Kesselring v. F/T Arctic Hero*, 95 F.3d 23, 24 (9th Cir. 1996) ("Since appellant failed to raise this issue in its first appeal, it is waived."); *Facebook, Inc. v. PowerVentures, Inc.*, 2017 WL 1650608, at *7 (N.D. Cal. May 2, 2017) ("[I]ssues that were previously resolved and were not raised on appeal are law of the case and are not subject to relitigation absent a motion for leave to file a motion for reconsideration." (*citing Sec. Inv'r Prot. Corp. v. Vigman*, 74 F.3d 932, 937 (9th Cir. 1996)).

Accordingly, the Healthcare Partners' Motion is granted, and Swoben's False Claims Act claim based on a reverse false claim theory is dismissed. Because amendment is futile, it is dismissed without leave to amend.

### B. The Claims Alleged by Swoben that Occurred Before March 13, 2007 Are Barred by the False Claims Act's Statute of Repose.

The False Claims Act states that a suit may not be brought:

(1) more than 6 years after the date on which the violation of section 3729 is committed, or

(2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed whichever occurs last.

31 U.S.C. §3731(b).

Thus, Section 3731(b) contains a two-tiered "statute of limitations," *United States ex rel.*

*Hyatt v. Northrop Corp.*, 91 F.3d 1211, 1218 (9th Cir. 1996), under which a claim must be brought within the later of six years from the date of the conduct on which it is based or three years from the date on which the responsible "official of the United States" knew or should have known of that conduct, 31 U.S.C. § 3731(b). The second deadline is a "statute of repose," *Hyatt*, 91 F.3d at 1218, under which "in no event" may a claim be brought "more than 10 years after the date on which the violation is committed," 31 U.S.C. §3731(b).

In 2008 and 2009, Congress considered collapsing these distinct deadlines into a single eight- or ten-year statute of limitations, without a separate repose period. *See, e.g.*, H. Rep. No. 111-97 at 14 (2009) (describing a bill that would have set "a uniform statute of limitations of 8 years for any claim brought under the False Claims Act"); S. Rep. No. 110-507 at 28 (2008) (describing a bill that would have "adopt[ed] a simple and straightforward 10-year statute of limitations that begins when the violation occurs"). However, following testimony about how the existing "10-year repose provision was meant as an ultimate cutoff date to protect defendants from . . . litigation of stale issues from the distant past" in a way that a statute of limitations might not, Congress retained the distinct limitations and repose provisions. False Claims Act Correction Act (S. 2041): Strengthening the Government's Most Effective Tool Against Fraud for the 21st Century: Hearing before the S. Comm. on the Judiciary, 110th Cong. 101 (2008) (statement of John T. Boese, Fried Frank Harris Shriver & Jacobson LLP) (hereinafter S. Hr'g 110-412).

In this case, Swoben filed his Fourth Amended Complaint on March 13, 2017. Therefore, under Section 3731(b), any claims based on violations that were committed before March 13, 2007 are time-barred by the ten year statute of repose. In addition, Swoben cannot rely on the relation back doctrine contained in Rule 15(c). If a subsequent complaint alleges new claims that are "distinct in time and place" and excluded from a prior complaint, there is no relation back. *Oja v. United States Army Corps of Eng'rs*, 440 F.3d 1122, 1134-35 (9th Cir. 2006) (holding that each act of disclosure is a distinct violation of the Privacy Act which triggers the statutory limitations period, precluding relation back); *Quaak v. Dexia, S.A.*, 445 F. Supp. 2d 130, 138 (D. Mass. 2006) ("Cases are legion which refuse to allow relation back when the new allegations go beyond the time-frame of the original complaint"). This rule is particularly applicable in cases arising under the False Claims Act, because each alleged false claim is an individual violation of the False Claims Act that gives rise to a separate statutory remedy. *United States ex rel. Lee v. Corinthian Colls.*, 2012 WL 12878361, at *4 (C.D. Cal. Apr. 19, 2012); *United States ex rel. Bauchwitz v. Holloman*, 671 F. Supp. 2d 674, 687 (E.D. Pa. 2009) ("[W]here there are multiple false claims . . . the statute of limitations for each claim runs from the date each claim accrued."). Thus, courts refuse to allow relation back where the amendment alleges violations of the False Claims Act over a more expansive time period than what was alleged in the previous complaint. *See, e.g., Lee*, 2012 WL 12878361, at *4 ("any false certifications that occurred before 2005 are independent acts of fraud and not part of the same 'conduct, transaction, or occurrence' as the allegations in the original complaint, which only claimed fraud from 2005 and later"); *United States ex rel. Richardson v. Bristol-Myers Squibb Co.*, 2009 WL 5186847, at *18 n.16 (D. Mass. Sept. 19, 2009) ("Courts have routinely refused to allow an amendment to relate back where, as here, it alleges a more expansive time period.").

In his Third Amended Complaint, Swoben alleged a scheme by the defendants to allegedly violate the False Claims Act beginning in 2008. *See*, Third Amended Complaint, ¶ 124 ("During or after June 2008," HCP "utilized software, HCC Manager, to evaluate claims data and reviewed the

medical charts of more than 125,000 of HealthCare Partners' patients with severe illnesses"); ¶ 128 ("During or about 2008–2011, HealthCare Partners and defendant HMOs submitted to the Government and California the diagnosis codes determined by HealthCare Partners' reviews, knowing that the effect of such submissions would only increase the number of diagnoses, and thus artificially inflate their respective risk scores and capitated payments").  In his Fourth Amended Complaint, Swoben alleges a scheme by the defendant to allegedly violate the False Claims Act beginning in 2005.  However, under the relation back doctrine, Swoben cannot "relate back" to claims allegedly occurring 2005, 2006, or 2007, because those claims go beyond the time frame of the Third Amended Complaint.

Accordingly, the Healthcare Defendants' Motion is granted, and Swoben's Fourth Amended Complaint is dismissed with respect to any claims occurring before March 13, 2007.  Because amendment is futile, those claims are dismissed without leave to amend.

## IV. Conclusion

For all the foregoing reasons, the Healthcare Defendants' Motion is **GRANTED**.  All claims occurring before March 13, 2007 that are alleged in Swoben's Fourth Amended Complaint are **DISMISSED without leave to amend**.  In addition, the "reverse false claims" theory alleged in Swoben's False Claims Act claim is **DISMISSED without leave to amend.**

IT IS SO ORDERED.