UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.     **CV 09-5013-JFW (JEMx)**                                     Date: October 5, 2017

Title:       United States of America, et al. *-v-* Scan Health Plan, et al.

**PRESENT:**

   **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

   Shannon Reilly                              None Present
   Courtroom Deputy                            Court Reporter


**ATTORNEYS PRESENT FOR PLAINTIFFS:**         **ATTORNEYS PRESENT FOR DEFENDANTS:**
              None                                           None

**PROCEEDINGS (IN CHAMBERS):**    ORDER GRANTING UNITED'S MOTION TO DISMISS UNITED STATES' COMPLAINT-IN-PARTIAL-INTERVENTION [filed 7/14/17; Docket No. 316]

   On July 14, 2017, Defendants UnitedHealth Group Incorporated; UHC of California; United HealthCare Services, Inc.; Optum, Inc.; OptumInsight, Inc.; UnitedHealthcare, Inc.; and UHIC Holdings, Inc. (collectively, the "United Defendants") filed a Motion to Dismiss United States' Complaint-in-Partial-Intervention ("Motion"). On August 22, 2017, the United States of America (the "Government") filed its Opposition. On August 29, 2017, the United Defendants filed a Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument. The matter was, therefore, removed from the Court's September 18, 2017 hearing calendar and the parties were given advance notice. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.     Factual and Procedural Background**

   **A.     Medicare System and CMS**

   Medicare is a health insurance program administered by the Centers for Medicare & Medicaid Services ("CMS"), designed to provide access to health insurance for Americans aged 65 and older, people under age 65 with certain disabilities, and people of all ages with End-Stage Renal Disease (permanent kidney failure requiring dialysis or a kidney transplant). Eligible Medicare beneficiaries are provided a choice of either signing up for traditional fee-for-service ("FFS") coverage under Medicare Part A (Hospital Insurance) and Part B (Medical Insurance), or selecting a private plan option under Part C, which is also known as "Medicare Advantage." 42 U.S.C. § 1395w-21(a).

Under the traditional FFS model, physicians and hospitals (known as "providers") who care for beneficiaries are reimbursed directly by the federal government. Under Medicare Advantage, a private insurer ("MA Plan") is responsible for providing the benefits that traditional Medicare offers and, in return, receives capitated, per-member-per-month ("PMPM") payments from the federal government. See 42 U.S.C. § 1395w-23(a)(1). Because MA Plans receive the same monthly payment regardless of the volume of services a beneficiary actually uses, the MA Plan assumes the risk a beneficiary's expenses may exceed the capitated payment for that month.

Between 2000 and 2007, the federal government developed a system for adjusting monthly payments to MA Plans to reflect, in part, the health status of their beneficiaries. See 42 U.S.C. § 1395w-23(a)(3). Through "risk adjustment," the federal government sought to ensure that MA Plans are "paid appropriately for their plan enrollees (that is, less for healthier enrollees and more for less healthy enrollees)." *Medicare Program: Establishment of the Medicare Advantage Program*, 70 Fed. Reg. 4588, 4657 (Jan. 28, 2005). To help accomplish this goal, risk adjusted capitated payments are partially based on beneficiary demographics and health status. See 42 U.S.C. § 1395w-2 23(a)(1)(C)(I); 42 C.F.R. § 422.308(c).

Risk adjusted capitated payments to MA Plans take into account the relative severity of patient conditions as compared to the average Medicare FFS beneficiary. 42 U.S.C. § 1395w-23(a)(1)(C)(I); 42 C.F.R. § 6 422.308(c)(l). Payments are adjusted by a "multiplier" (or "risk score") that enhances or lowers reimbursement to the MA Plan on a member-by-member basis depending on the member's relative expected health care expenditures under FFS Medicare as compared to the average FFS beneficiary under Medicare.[1] 42 C.F.R. § 422.308(c). Because MA Plans are compensated on a relative system, the contracts fundamentally presume that both the MA Plans and Medicare will filter and treat diagnostic information the same way.

MA Plans do not themselves diagnose beneficiaries. Rather, MA Plans primarily receive diagnosis codes from providers (*e.g.*, physicians and medical groups). MA Plans also separately retain coding companies to perform retrospective reviews of medical records relating to certain "encounters" (*e.g.*, patient visits to a doctor or hospital) to determine if the providers had properly reported the diagnosis codes for that encounter. Where appropriate, additional diagnosis codes identified in these reviews are transmitted to Medicare.[2]

---

[1] Therefore, the more severe the diagnoses, the higher the risk scores, and, thus, the greater the capitated payments.

[2] A typical retrospective review will result in three categories of diagnosis codes: (1) diagnosis codes supported by properly documented medical charts that were already reported to Medicare shortly after healthcare services were performed on the patients; (2) new diagnosis codes supported by properly documented medical charts that were not previously reported to Medicare; and (3) diagnosis codes that were previously submitted to Medicare that are not supported by properly documented medical charts. Although a new diagnosis code for a patient encounter discovered during a retrospective review may be submitted to the federal government, any diagnosis codes discovered that were not supported by properly documented medical charts must be withdrawn. New diagnosis codes discovered during a retrospective review tend to increase the patients' risk scores, and, thus, increase capitated payments. Diagnosis codes that are not supported by properly documented medical charts tend to decrease the patients' risk

Medicare groups certain diagnosis codes associated with each beneficiary and groups them into hierarchical condition categories ("HCCs"), which are disease groupings that predict average health care spending. 42 C.F.R. § 422.2. HCCs are used to "risk adjust" MA payments. *Id*. Because these HCCs are disease groupings, a number of different diagnosis codes can be properly linked to the same HCC (*e.g.*, the codes for liver transplants, heart transplants, and lung transplants, among others, all link to the HCC: "Major Organ Transplant Status").

### B. CMS Audits

CMS performs periodic risk adjustment data validation audits ("RADV") during which it assesses whether diagnosis codes that have been submitted were properly documented. When CMS conducts RADV audits, it attempts to determine, separate and apart from whether the patient in fact has the underlying condition, whether the particular medical chart under review adequately documents that the patient was seen by a provider with an appropriate physician specialty, who took the appropriate actions to diagnose that particular condition during that particular encounter. CMS's regulations provide that so long as a particular diagnosis is adequately documented by a single medical record, the diagnosis will be deemed valid, even if other medical charts fail to properly document that diagnosis. *See, e.g,* 42 C.F.R. § 422.31 l(c)(2)(i)(C) (requires the submission of only one medical record for purposes of appealing the results of an RADV audit). Thus, if multiple providers submit the same diagnosis code for a patient, there would be no impact on the capitated payment due the MA Plan even if one of the diagnosis codes derived from a particular provider's records was later determined to lack adequate documentation.

### C. Procedural History

On July 13, 2009, Swoben filed his initial Complaint under seal, naming Defendants Scan Health Plan and Senior Care Action Network. On September 30, 2009, Swoben filed his First Amended Complaint, which added SCAN Group (SCAN Group, Scan Health Plan, and Senior Care Action Network are collectively referred to as the "SCAN Defendants") and United Healthcare Insurance Company, UnitedHealthCare Services Inc., UHIC, UnitedHealth Group, UnitedHealthCare, United Health, PacifiCare Health Plan Administrators, UHC of California (f/k/a PacifiCare of California), PacifiCare Life and Health Insurance Company, PacifiCare Health Systems (collectively, the "UnitedHealth Defendants")[3]. On October 19, 2010, Swoben filed his Second Amended Complaint. On November 23, 2011, Swoben filed his Third Amended Complaint, which added WellPoint, Aetna, Health Net, and Healthcare Partners, LLC, Healthcare Partners Medical Group, Inc., and Healthcare Partners Independent Physician Association (collectively, "Healthcare Partners").[4]

On August 17, 2012, the SCAN Defendants, the United States, the State of California, and Swoben reached a settlement, and this case was dismissed as to the SCAN Defendants. On or

---

scores, and, thus, lower capitated payments.

[3] The UnitedHealth Defendants includes Secured Horizons. However, Secured Horizons is a brand name and not a legal entity.

[4] In December 2012, the Healthcare Partners were acquired by DaVita Inc.

about January 8, 2013, the United States and the State of California declined to intervene in the action against the remaining defendants. On January 8, 2013, the Court issued an order unsealing this action and directing Swoben to serve the Third Amended Complaint on the remaining defendants.

In June 2013, the remaining defendants filed motions to dismiss the Third Amended Complaint on the grounds that Swoben had failed to state his "up-coding" and "delivery of property" claims with the particularity required by Rule 9(b). Swoben did not oppose the pending motions to dismiss, but requested 30 days leave to file a Fourth Amended Complaint. In light of Swoben's response, the Court issued an Order to Show Cause ("OSC") requiring Swoben to file a declaration describing "in detail the proposed Fourth Amended Complaint and why such an amendment would not be futile or denied due to evidence of a lack of diligence or undue delay." In response to the OSC, Swoben's counsel filed a declaration, stating that he "intend[ed] to add allegations," but he failed to detail those allegations. On July 30, 2013, the Court granted the remaining defendants' motions to dismiss the Third Amended Complaint, with prejudice, on the grounds that Swoben had failed to plead his claims with the required specificity and that amendment would be futile. Swoben appealed, and, following the initial briefing and oral argument in the Ninth Circuit, the Government sought and obtained leave to file an *amicus curiae* brief supporting Swoben's position that he should have been permitted to file a Fourth Amended Complaint.

On August 10, 2016, the Ninth Circuit vacated this Court's judgment and remanded this action to this Court with instructions to allow Swoben to file his Fourth Amended Complaint.

On March 13, 2017, Swoben filed his Fourth Amended Complaint. See Docket No. 251. In the Fourth Amended Complaint, Swoben alleges a single claim for violation of the False Claim Act, and alleges that the remaining defendants violated the False Claims Act "during and after 2005." On March 16, 2017, the parties stipulated to allow the Government to intervene in this matter, and the Court approved the Stipulation. On May 1, 2017, the Government filed its Complaint-in-Partial-Intervention against the United Defendants only.[5] See Docket No. 296. In its Complaint-in-Partial-Intervention, the Government alleges claims for relief for: (1) false claims act: presentation of false or fraudulent claims, 31 U.S.C. § 3729(a)(1)(A) (formerly 31 U.S.C. § 3729(a)(1)); (2) false claims act: making or using false records or statements, 31 U.S.C. § 3729(a)(1)(B) (formerly 31 U.S.C. § 3729(a)(2)); (3) false claims act: conspiracy, 31 U.S.C. § 3729(a)(1)(C) (formerly 31 U.S.C. § 3729(a)(3)), (4) false claims act: reverse false claims, 31 U.S.C. § 3729(a)(1)(G) (formerly 31 U.S.C. § 3729(a)(7)); (5) restitution (unjust enrichment); and (6) payment by mistake. The Government alleges that the United Defendants were aware of the allegedly limited scope of the Healthcare Partners' chart reviews, and that this awareness made the United Defendants' own attestations under Section 422.504(*l*) false. The Government's Complaint-in-Partial-Intervention alleges claims going back to 2005.

## II.     Legal Standard

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. "A Rule 12(b)(6) dismissal is proper only where

---

[5] The Government did not intervene as to the Healthcare Partners.

there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc.*, 922 F. Supp. 299, 304 (C.D. Cal. 1996) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)). However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965.

In addition, Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The heightened pleading requirements of Rule 9(b) are designed "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993). In order to provide this required notice, "the complaint must specify such facts as the times, dates, places, and benefits received, and other details of the alleged fraudulent activity." *Id.* at 672. Further, "a pleader must identify the individual who made the alleged representation and the content of the alleged representation." *Glen Holly Entertainment, Inc. v. Tektronix, Inc.,* 100 F. Supp. 2d 1086, 1094 (C.D. Cal. 1999).

In deciding a motion to dismiss, a court must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party. *See, e.g., Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *Summit Technology*, 922 F. Supp. at 304 (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) *cert. denied*, 454 U.S. 1031 (1981)).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990) (citations omitted). However, a court may consider material which is properly submitted as part of the complaint and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201 without converting the motion to dismiss into a motion for summary judgment. *See, e.g., id.*; *Branch v. Tunnel*, 14 F.3d 449, 454 (9th Cir. 1994).

Where a motion to dismiss is granted, a district court must decide whether to grant leave to amend. Generally, the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g., DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). However, a Court does not need to grant leave to amend in cases where the Court determines that permitting a plaintiff to amend would be an exercise in futility. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

### III. Discussion

In their Motion, the United Defendants seek dismissal of the Government's Complaint-in-Partial-Intervention on five separate grounds.[6] First, the United Defendants argue that the Complaint-in-Partial-Intervention fails to allege that the individuals who signed the relevant attestations on behalf of the United Defendants knew those attestations were false. Second, the United Defendants argue that the Complaint-in-Partial-Intervention fails to allege that the United Defendants' attestations were material to the Government's decision to pay. Third, the United Defendants argue that the Complaint-in-Partial-Intervention fails to identify with particularity the acts of each of the seven distinct corporate entities that compromise the United Defendants and, instead, simply refer to those entities collectively as "UnitedHealth" throughout the Complaint–in-Partial-Intervention. Fourth, the United Defendants argue that the Complaint-in-Partial-Intervention attempts to revive a "reverse false claims" theory that has been waived. Fifth, the United Defendants argue that some of the Government's claims are untimely under the statute of repose.

#### A. The Government's Complaint-in-Partial-Intervention Lacks the Necessary Allegations that the United Defendants' Attestations Were "Knowingly" False.

To allege a claim for violation of the False Claims Act, the plaintiff must allege specific facts to demonstrate that: (1) the defendant made a false statement or engaged in a fraudulent course of conduct; (2) the defendant did so with the required scienter; (3) the statement or course of conduct was material; and (4) the statement or course of conduct caused the government to pay out money or forfeit moneys due. *United States v. Corinthian Colleges*, 655 F.3d 984, 992 (9th Cir. 2011).

Under the scienter requirement of the False Claims Act, a defendant is liable under the False Claims Act only if it acted "knowingly." *See* 31 U.S.C. § 3729(a)(1). The knowingly requirement is satisfied when the defendant had actual knowledge it was presenting false information or was deliberately ignorant of or recklessly disregarded the falsity. *See* 31 U.S.C. § 3729(b)(1). This requirement is "rigorous" and "strict[ly] enforce[d]." *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2002 (2016).

Generally, "[f]or scienter to be attributed to [a corporation], Plaintiffs must sufficiently plead that at least one of [the corporation's] officers had the requisite scienter at the time they made the allegedly misleading statements." *In re Int'l Rectifier Corp. Sec. Litig.*, 2008 WL 4555794, at *21 (C.D. Cal. May 23, 2008). Thus, "[a] defendant corporation is deemed to have the requisite scienter for fraud only if the individual corporate officer making the statement has the requisite level of scienter, *i.e.*, knows that the statement is false, or is at least deliberately reckless as to its

---

[6] The Government has intervened as to all of the claims brought against the United Defendants and, thus, the Government's Complaint-in-Partial-Intervention is the operative Complaint as to the United Defendants. Swoben has represented to the United Defendants that he is not pursing any claims against the United Defendants beyond those asserted by the Government, and has agreed that there is no need for the United Defendants to respond to Swoben's Fourth Amended Complaint.

falsity, at the time that he or she makes the statement." *Id.* (*quoting In re Apple Computer, Inc., Sec. Litig.*, 243 F. Supp. 2d 1012, 1023 (N.D. Cal. 2002)). A complaint may not rely on the notion that a corporation has "collective scienter" separate from the scienter of any actual human. *See, e.g., Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424, 1435 (9th Cir. 1995) (holding that "there is no case law supporting an independent 'collective scienter' theory"). This rule – that a complaint asserting claims based on false statements must plead the unlawful state of mind of the speaker – applies to claims alleged under the False Claims Act. *United States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1274 (D.C. Cir. 2010) ("[U]nder the FCA, 'collective knowledge' provides an inappropriate basis for proof of scienter because it effectively imposes liability, complete with treble damages and substantial civil penalties, for a type of loose constructive knowledge that is inconsistent with the Act's language, structure, and purpose"); *United States ex rel. Modglin v. DJO Global Inc.*, 114 F. Supp. 3d 993, 1024 (C.D. Cal. 2015) (dismissing allegations "that defendants 'knew that they were falsely and/or fraudulently claiming reimbursements' and 'knew [their devices] were being unlawfully sold for unapproved off-label cervical use'" because "[n]one of the facts relators plead[ed] . . . supported[ed] their conclusory allegation that defendants knowingly submitted false claims," and therefore, notwithstanding "that Rule 9(b) does not require particularized allegations of knowledge," the complaint "f[e]ll short of plausibly pleading scienter under Rule 8, *Twombly*, and *Iqbal*"), *aff'd*, 2017 WL 745715 (9th Cir. Feb. 27, 2017).

In this case, the Complaint-in-Partial-Intervention alleges that the United Defendants' Risk Adjustment Attestations were false or fraudulent. It asserts that the United Defendants were involved in and aware of the Healthcare Partners' chart review activities and, thus, the United Defendants were obligated to undertake additional validation efforts to confirm that the Healthcare Partners' diagnosis codes were supported by the underlying medical charts. The Complaint-in-Partial-Intervention also alleges that because of the United Defendants' failure to undertake those efforts, the attestations that the data submitted from providers was accurate to the best of the United Defendants' "knowledge, information, and belief" were false. 42 C.F.R. § 422.504(*l*). However, the Complaint-in-Partial-Intervention fails to identify the corporate officers who signed the attestations or allege that those individuals knew or should have known that the attestations were false. Although the Government argues in its Opposition that a company may be liable under the False Claims Act if that company acts to "ensur[e] that signers of attestations are kept in the dark about company fraud," the Government has not alleged that anyone at the United Defendants undertook any action to shield the signatories of the attestations from gaining the necessary knowledge that would have demonstrated that they were false. Moreover, even though the Government argues that it is sufficient for someone other than the signatories to have known the attestations were false, the Government has failed to identify anyone at the United Defendants who possessed the requisite knowledge.

Accordingly, the United Defendants' Motion is granted, and the Government's Complaint-in-Partial-Intervention is dismissed. However, in light of the Ninth Circuit's liberal policy favoring amendments, it is dismissed with leave to amend.

    **B.**    **The Government's Complaint-in-Partial-Intervention Fails to Allege that the**

**Challenged Conduct was Material to the Government's Decision to Pay the United Defendants.**

Under the False Claims Act, a defendant's alleged noncompliance must be material. In other words, the complaint must allege that the violations at issue "are so central . . . that the [Government] would not have paid these claims had it known of these violations." *Id.* at 2004; *see also id.* at 2003 n. 5 (holding that a complaint must allege that if the false claim or statement "had not been made, the party complaining of the fraud would not have taken the action alleged to have been induced by the misrepresentation"). Thus, "[a] misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment." *Universal Health Services*, 136 S.Ct. at 2003 (holding that "[u]nder any understanding of the concept, materiality 'look[s] to the effect on the likely or actual behavior of the recipient of the alleged misrepresentations'").

In this case, the Government's Complaint-in-Partial-Intervention includes only conclusory allegations that the United Defendants' conduct was material, and fails to allege that CMS would have refused to make risk adjustment payments to the United Defendants if it had known the facts about the United Defendants' alleged involvement with the Healthcare Partners' chart review process. *See, e.g.,* Complaint-in-Partial-Intervention, ¶ 114 ("Defendants knowingly made, used, or caused to be made or used a false Risk Adjustment Attestation material to a false or fraudulent claim"). However, such conclusory allegations are insufficient to allege materiality under the False Claims Act in light of *Universal Health Services*. *See, e.g., City of Chicago v. Purdue Pharma L.P.*, 211 F. Supp. 3d 1058, 1079 (N.D. Ill. 2016) ("[P]laintiff has not sufficiently alleged that defendants caused misrepresentations that were material as defined in *Universal Health* and therefore has not stated a claim for false statements or false claims"); *United States ex rel. Dresser v. Qualium Corp.*, 2016 WL 3880763, at *6 (N.D. Cal. July 18, 2016) ("The Amended Complaint alleges in several places that the government would not have paid Defendants' claims had they known of Defendants' fraudulent conduct, but does not explain why. This does not meet *Universal Health Services'* heightened materiality standard").

Accordingly, the United Defendants' Motion is granted, and the Government's Complaint-in-Partial-Intervention is dismissed. However, in light of the Ninth Circuit's liberal policy favoring amendments, it is dismissed with leave to amend.

C. **The Government's Complaint-in-Partial-Intervention Fails to Allege With Particularity the Roles of Any of the United Defendants in the Alleged Scheme to Submit False Claims.**

Because claims under the False Claims Act sound in fraud, they must meet Rule 9(b)'s heightened pleading requirement. Rule 9(b)'s heightened pleading requirement demands that the allegations regarding the purported fraud be specific enough to give the parties being accused of the fraudulent conduct notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation and internal quotations omitted). To meet this standard, the plaintiff must identify with "particularity" the "'who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637

F.3d 1047, 1055 (9th Cir. 2011) (*quoting Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)). With respect to complaints that make allegations against multiple defendants, the Ninth Circuit has explained, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted). The plaintiff "must, at a minimum identify the role of each defendant in the alleged fraudulent scheme." *Lee*, 655 F.3d at 998. This requirement is necessary to "inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz*, 476 F.3d at 764-65 (citation omitted). Moreover, the rule is the same when the defendants are related corporate entities. *See, e.g., United States ex rel. Pecanic v. Sumitomo Elec. Interconnect Prods. Inc.*, 2013 WL 774177, at *5 (S.D. Cal., Feb. 28, 2013) (holding that plaintiffs may not "commingle" defendants, whether related entities or not, but rather must clearly "demonstrate that each entity is liable for its own role in the submission of false claims or statements"); see also United States v. Safran Grp., S.A., 2017 WL 235197, at *8 (N.D. Cal. Jan. 19, 2017) (holding that "FCA claims cannot be imputed from one party to the other based purely on a parent-subsidiary relationship" and that Relators' "generalized allegations made against the three 'Defendants' . . . make it impossible" to determine which defendant or defendants made false statements and certifications).

In this case, the Government's Complaint-in-Partial-Intervention is a classic "shotgun pleading" that wholly fails to state "clearly how each and every defendant is alleged to have violated plaintiffs' legal rights." *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011). Other than explaining the relationship between the various United Defendants in the opening paragraphs, the majority of the allegations in the Complaint-in-Partial-Intervention simply refer to the United Defendants as if they were a single collective entity. *See, e.g.*, Complaint-in-Partial-Intervention, ¶ 63 ("UnitedHealth knew that many provider-reported diagnoses submitted to the Medicare Program for risk adjustment payments were not supported by the beneficiaries' medical records and were invalid"); ¶ 88 ("UnitedHealth contracted with a vendor, TCS (The Coding Source), to perform retrospective chart reviews of capitated provider groups in California"); ¶ 93 ("UnitedHealth funded half the cost of chart reviews by TCS of UnitedHealth beneficiaries who received healthcare from HCP"); ¶ 108 ("UnitedHealth submitted a Risk Adjustment Attestation each year after the final risk adjustment submission deadline but before the final reconciliation payment"). Because the Government's Complaint-in-Partial-Intervention does not "identify the role of each defendant in the alleged fraudulent scheme," it fails to satisfy Rule 9(b). *Swartz*, 476 F.3d at 765 (*quoting Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989)).

Accordingly, the United Defendants' Motion is granted, and the Government's Complaint-in-Partial-Intervention is dismissed. However, in light of the Ninth Circuit's liberal policy favoring amendments, it is dismissed with leave to amend.

### D. The Government Cannot Revive the Reverse False Claims Theory.

In the fourth claim for relief (and part of the third claim for relief for conspiracy) of the Complaint-in-Partial-Intervention, the Government alleges a "reverse false claims" theory. However, that theory was dismissed with prejudice by this Court in its July 30, 2013 Order dismissing Swoben's Third Amended Complaint. Although Swoben appealed the dismissal of his affirmative False Claims Act claims, he did not appeal the dismissal of his reverse false claims theory. In fact, when the Government relied on the reverse false claims theory in its *amicus* brief

before the Ninth Circuit, the Ninth Circuit refused to consider the issue because "Swoben . . . did not rely on that provision in his opening and reply briefs." *United States ex. rel. Swoben v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1172 n. 6 (9th Cir. 2016). Thus, the reverse false claims theory is not revived merely because the Ninth Circuit reversed this Court's prior Judgment on other grounds. "[A]n issue or factual argument waived at the trial level before a particular order is appealed, or subsequently waived on appeal, cannot be revived on remand. In essence, the party's waiver becomes law of the case." *Magnetsystems, Inc. v. Nikken, Inc.*, 933 F. Supp. 944, 949-50 (C.D. Cal. 1996); *see also Kesselring v. F/T Arctic Hero*, 95 F.3d 23, 24 (9th Cir. 1996) ("Since appellant failed to raise this issue in its first appeal, it is waived."); *Facebook, Inc. v. PowerVentures, Inc.*, 2017 WL 1650608, at *7 (N.D. Cal. May 2, 2017) ("[I]ssues that were previously resolved and were not raised on appeal are law of the case and are not subject to relitigation absent a motion for leave to file a motion for reconsideration." (*citing Sec. Inv'r Prot. Corp. v. Vigman*, 74 F.3d 932, 937 (9th Cir. 1996)). Such law of the case applies to government intervenors. *See Newsome v. McCabe*, 319 F.3d 301, 303 (7th Cir. 2003) (holding that law of the case resulting from earlier decision applicable to government intervenor).

Accordingly, the United Defendants' Motion is granted, and the fourth claim for relief (and the related portion of the conspiracy claim in the third claim for relief) of the Government's Complaint-in-Partial-Intervention is dismissed. Because amendment is futile, it is dismissed without leave to amend.

**E.      The Claims Alleged by the Government that Occurred Before May 1, 2007 Are Barred by the False Claims Act's Statute of Repose.**

The False Claims Act states that a suit may not be brought:

(1) more than 6 years after the date on which the violation of section 3729 is committed, or

(2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed whichever occurs last.

31 U.S.C. §3731(b).

Thus, Section 3731(b) contains a two-tiered "statute of limitations," *United States ex rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211, 1218 (9th Cir. 1996), under which a claim must be brought within the later of six years from the date of the conduct on which it is based or three years from the date on which the responsible "official of the United States" knew or should have known of that conduct, 31 U.S.C. § 3731(b). The second deadline is a "statute of repose," *Hyatt*, 91 F.3d at 1218, under which "in no event" may a claim be brought "more than 10 years after the date on which the violation is  committed," 31 U.S.C. §3731(b).

In 2008 and 2009, Congress considered collapsing these distinct deadlines into a single eight- or ten-year statute of limitations, without a separate repose period. *See, e.g.*, H. Rep. No. 111-97 at 14 (2009) (describing a bill that would have set "a uniform statute of limitations of 8 years

for any claim brought under the False Claims Act"); S. Rep. No. 110-507 at 28 (2008) (describing a bill that would have "adopt[ed] a simple and straightforward 10-year statute of limitations that begins when the violation occurs"). However, following testimony about how the existing "10-year repose provision was meant as an ultimate cutoff date to protect defendants from . . . litigation of stale issues from the distant past" in a way that a statute of limitations might not, Congress retained the distinct limitations and repose provisions. False Claims Act Correction Act (S. 2041): Strengthening the Government's Most Effective Tool Against Fraud for the 21st Century: Hearing before the S. Comm. on the Judiciary, 110th Cong. 101 (2008) (statement of John T. Boese, Fried Frank Harris Shriver & Jacobson LLP) (hereinafter S. Hr'g 110-412).

In this case, the Government filed its Complaint-in-Partial-Intervention on May 1, 2017. Therefore, under Section 3731(b), any claims based on violations that were committed before May 1, 2007 are time-barred by the ten year statute of repose. In addition, the Government's cannot rely on the relation back doctrine contained in Section 3731(c) because Section 3731(c) is specifically limited to "statute of limitations purposes." 31 U.S.C. § 3731(c) (stating that "[f]or statute of limitations purposes, any such Government pleading," such as a complaint-in–intervention, "shall relate back to the filing date of the complaint of the person who originally brought the action, to the extent that claim of the Government arises out of the conduct, transactions, or occurrences set forth, or attempted to be set forth, in the prior complaint of that person"). In fact, Congress added the relation-back provision in 2009, as part of the same legislation in which it considered consolidating the separate statutes of limitations and repose into a single ten-year statute of limitations before rejecting that consolidation as insufficiently protective of defendants' interests in repose. *See* Fraud Enforcement & Recovery Act of 2009, Pub. L. No. 111-21, § 4(b), 123 Stat. 1623 (2009)  As one False Claims Act expert testified during the Senate's consideration of those changes, without a repose period, the relation-back provision would have forced defendants "to defend themselves for actions that occurred 12, 15 or even 20 years ago, depending on how long a qui tam case remains under seal." S. Hr'g 110-412 at 102.

Accordingly, the United Defendants' Motion is granted and the Government's Complaint-in-Partial-Intervention is dismissed with respect to any claims occurring before May 1, 2007. Because amendment is futile, those claims are dismissed without leave to amend.

### IV.   Conclusion

For all the foregoing reasons, the United Defendants' Motion is **GRANTED**. All claims occurring before May 1, 2007 that are alleged in the Government's Complaint-in-Partial-Intervention are **DISMISSED without leave to amend**. In addition, the "reverse false claims" theory alleged in the fourth claim for relief and in a portion of the third claim for relief are **DISMISSED without leave to amend.** The remainder of the Government's Complaint-in-Partial-Intervention – specifically, the first, second, fifth, and sixth claims for the relief and the remaining portion of the third claim for relief – is **DISMISSED with leave to amend**. If the Government intends to file an Amended Complaint-in-Partial-Intervention, the Government shall file an Amended Complaint-in-Partial-Intervention that conforms with this Order by October 13, 2017.

IT IS SO ORDERED.